# EXHIBIT 1

*State Court Documents*



# Union County
# Sixteenth Judicial Circuit
# Public Index



Union County Home Page    South Carolina Judicial Department Home Page    SC.GOV Home Page

Switch View

## Magie Worthy As Pr VS State Farm Fire And Casualty Company

| | | | | | |
|---|---|---|---|---|---|
| Case Number: | 2016CP4400384 | Court Agency: | Common Pleas | Filed Date: | 09/27/2016 |
| Case Type: | Common Pleas | Case Sub Type: | Breach of Cont 140 | File Type: | Mediator - Jury |
| Status: | Pending/ADR Sanctions | Assigned Judge: | Clerk Of Court C P, G S, And Family Court | | |
| Disposition: | | Disposition Date: | | Disposition Judge: | |
| Original Source Doc: | | Original Case #: | | | |
| Judgment Number: | | Court Roster: | | | |

Case Parties    Judgments    Tax Map Information    Associated Cases    Actions    Financials

| Name | Description | Type | Motion Roster | Begin Date | Completion Date | Documents |
|---|---|---|---|---|---|---|
| State Farm Fire And Casualty Company | Form 4 (Motion for Summary Judgment denied) | Order | | 09/18/2017-13:20 | | 📄 |
| State Farm Fire And Casualty Company | Exh A-F | Filing | | 09/18/2017-01:20 | | |
| State Farm Fire And Casualty Company | Memo/Memo in Support of Motion for Summary Judgment | Filing | | 09/11/2017-12:13 | | 📄 |
| State Farm Fire And Casualty Company | Motion/Determing Sufficiency of PLT Response | Motion | Motion Roster Sept. 18, 2017 @10:00 am | 09/07/2017-10:42 | 09/18/2017-11:01 | 📄 |
| Worthy As Pr, Magie | ADR/Notice of ADR | Action | | 08/29/2017-14:59 | | |
| McAngus, William Hugh Jr. | 9/18/2017_MOTION_Roster/Notice of Motions Roster Publication | Action | | 08/14/2017-15:44 | | |
| Norris, Charles R. | 9/18/2017_MOTION_Roster/Notice of Motions Roster Publication | Action | | 08/14/2017-15:44 | | |
| State Farm Fire And Casualty Company | Motion/Summary Judgment | Motion | Motion Roster Sept. 18, 2017 @10:00 am | 07/26/2017-11:24 | 09/18/2017-11:27 | 📄 |
| Worthy As Pr, Magie | Archived Document | Filing | | 05/30/2017-00:00 | | 📄 |
| Worthy As Pr, Magie | ADR/Alternative Dispute Resolution (Workflow) | Action | | 04/25/2017-14:36 | 08/29/2017-14:36 | |
| Norris, Charles R. | Protection July 24, 2017 - August 18, 2017 | Filing | | 03/23/2017-13:43 | | 📄 |
| Spearman, Brenda | Answer/Jury Trial Requested | Filing | | 10/28/2016-10:17 | | 📄 |
| State Farm Fire And Casualty Company | Answer/Jury Trial Requested | Filing | | 10/28/2016-10:17 | | 📄 |
| State Farm Fire And Casualty Company | Service/Acceptance Of Service (SC Dept of Insurance) | Filing | | 10/14/2016-10:11 | | 📄 |
| Spearman, Brenda | Service/Affidavit Of Service | Filing | | 10/14/2016-10:11 | | 📄 |
| Worthy As Pr, Magie | Summons & Complaint | Filing | | 09/27/2016-14:32 | | 📄 |

**STATE OF SOUTH CAROLINA**

**COUNTY OF** UNION

Magie Worthy as Personal Representative of the Estate of Tara Shavone Worth, and as Assignee of Victor Goode and Stephanie Goode

**Plaintiff(s)**

vs.

State Farm Fire and Casualty Company and Brenda Spearman

**Defendant(s)**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**IN THE COURT OF COMMON PLEAS**

**CIVIL ACTION COVERSHEET**

2016 **-CP-44-** 384

_____ -CP - _____ - _____

| | |
|---|---|
| Submitted By:  W. Hugh McAngus, Jr. | SC Bar #:  74941 |
| Address:  Chappell Smith & Arden | Telephone #:  803-929-3600 |
| P.O. Box 12330 | Fax #:  803-929-3604 |
| Columbia, SC 29211 | Other: |
| | E-mail:  hmcangus@csa-law.com |

**NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law.  This form is required for the use of the Clerk of Court for the purpose of docketing.  It must be filled out completely, signed, and dated.  A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint.**

## DOCKETING INFORMATION (Check all that apply)

***If Action is Judgment/Settlement do not complete***

☒ **JURY TRIAL** demanded in complaint.       ☐ **NON-JURY TRIAL** demanded in complaint.
☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☒ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION (Check One Box Below)

FILED FOR RECORD 2016 SEP 27 CLERK OF CCP SC

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Conversion (310) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Motor Vehicle Accident (320) | ☐ Condemnation (410) |
| ☐ General (130) | ☐ Medical Malpractice (220) | ☐ Premises Liability (330) | ☐ Foreclosure (420) |
| ☒ Breach of Contract (140) | Previous Notice of Intent Case # | ☐ Products Liability (340) | ☐ Mechanic's Lien (430) |
| ☐ Fraud/Bad Faith (150) | 20____-NI-____-____ | ☐ Personal Injury (350) | ☐ Partition (440) |
| ☐ Failure to Deliver/ Warranty (160) | ☐ Notice/ File Med Mal (230) | ☐ Wrongful Death (360) | ☐ Possession (450) |
| | ☐ Other (299) _____ | ☐ Assault/Battery (370) | ☐ Building Code Violation (460) |
| ☐ Employment Discrim (170) | | ☐ Slander/Libel (380) | ☐ Other (499) _____ |
| ☐ Employment (180) | | ☐ Other (399) _____ | |
| ☐ Other (199) _____ | | | |

| Inmate Petitions | Administrative Law/Relief | Judgments/Settlements | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Reinstate Drv. License (800) | ☐ Death Settlement (700) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Judicial Review (810) | ☐ Foreign Judgment (710) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Relief (820) | ☐ Magistrate's Judgment (720) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Permanent Injunction (830) | ☐ Minor Settlement (730) | ☐ Municipal (930) |
| | ☐ Forfeiture-Petition (840) | ☐ Transcript Judgment (740) | ☐ Probate Court (940) |
| | ☐ Forfeiture—Consent Order (850) | ☐ Lis Pendens (750) | ☐ SCDOT (950) |
| _____ | ☐ Other (899) | ☐ Transfer of Structured Settlement Payment  Rights Application (760) | ☐ Worker's Comp (960) |
| | | | ☐ Zoning Board (970) |
| | | | ☐ Public Service Comm. (990) |
| | | ☐ Confession of Judgment (770) | ☐ Employment Security Comm (991) |

| Special/Complex /Other | | Judgments/Settlements | Appeals |
|---|---|---|---|
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | ☐ Petition for Workers Compensation Settlement Approval (780) | |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) | | ☐ Other (999) |
| ☐ Medical (620) | ☐ Out-of-State Depositions (650) | ☐ Other (799) _____ | |
| ☐ Other (699) _____ | ☐ Motion to Quash Subpoena in an Out-of-County Action (660) | | _____ |
| ☐ Sexual Predator (510) | ☐ Pre-Suit Discovery (670) | | |
| ☐ Permanent Restraining Order (680) | | | |

**Submitting Party Signature:**

**Date:** 9/23/16

**Note:** Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

**Effective January 1, 2016,** Alternative Dispute Resolution (ADR) is mandatory in all counties, pursuant to Supreme Court Order dated November 12, 2015.

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**Pursuant to the ADR Rules, you are required to take the following action(s):**

1. The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs.

4. Cases are exempt from ADR only upon the following grounds:

    a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

    b. Requests for temporary relief;

    c. Appeals

    d. Post Conviction relief matters;

    e. Contempt of Court proceedings;

    f. Forfeiture proceedings brought by governmental entities;

    g. Mortgage foreclosures; and

    h. Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5. In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6. Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

**Please Note:     You must comply with the Supreme Court Rules regarding ADR.
Failure to do so may affect your case or may result in sanctions.**

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
COUNTY OF UNION ) CASE NO.: 2016-CP-_44_-_384_
)
Magie Worthy, as Personal Representative of )
the Estate of Tara Shavone Worthy, and as )
Assignee of Victor Goode and Stephanie )
Goode, )
) **SUMMONS**
Plaintiff, ) (Jury Trial Demanded)
)
vs. )
)
State Farm Fire and Casualty Company and )
Brenda Spearman, )
)
Defendants. )
)

*FILED FOR RECORD*
*2016 SEP 27 PM 2 32*
*CLERK OF COURT*
*UNION, SC*

**TO: STATE FARM FIRE and CASUALTY COMPANY and BRENDA SPEARMAN, THE DEFENDANTS, ABOVE-NAMED:**

YOU ARE HEREBY SUMMONED and required to answer the complaint herein, a copy

of which is herewith served upon you, and to serve a copy of your answer to said complaint upon

the subscriber, at his office at 1510 Calhoun Street, Columbia, South Carolina 29201, within

thirty (30) days after the service thereof, exclusive of the day of such service, and if you fail to

answer the complaint within the time aforesaid, judgment by default will be rendered against you

for the relief demanded in the complaint.

Chappell, Smith & Arden, P.A.

W. Hugh McAngus, Jr.
Attorney for the Plaintiff
Post Office Box 12330
Columbia, South Carolina 29211
(803) 929-3600

September 23, 2016

1

STATE OF SOUTH CAROLINA            )       IN THE COURT OF COMMON PLEAS
                                   )       CASE NO.: 2016-CP- 44 - 384
COUNTY OF UNION                    )
                                   )
Magie Worthy, as Personal Representative of )
the Estate of Tara Shavone Worthy, and as )
Assignee of Victor Goode and Stephanie )
Goode,                             )
                                   )
                                   )
       Plaintiff,                  )          **COMPLAINT**
                                   )          (Bad Faith)
                                   )          (Breach of Contract)
       vs.                         )          (Negligence)
                                   )          (Declaratory Judgment)
                                   )          (Negligent Misrepresentation)
State Farm Fire and Casualty Company and )    (Jury Trial Demanded)
Brenda Spearman,                   )
                                   )
                                   )
                                   )
       Defendants.                 )
_____   )

## SUMMARY OF THE CASE

This action includes claims of negligence, bad faith, breach of contract, negligent

misrepresentation and a declaratory judgment against State Farm Fire and Casualty Company

("State Farm") and Brenda Spearman for wrongful conduct in their mishandling of an insurance

claim and failure to defend a wrongful death lawsuit entitled Magie Worthy, as Personal

Representative of the Estate of Tara Shavone Worthy v. Victor Goode, Case No. 2015-CP-44-

118, which was filed in the Union County Court of Common Pleas. ("the Lawsuit", Exhibit 1).

The Lawsuit arises out of a December 12, 2014, motor vehicle collision which led to the

death of twenty-eight year old Tara Shavone Worthy.

Victor Goode was named the defendant in the underlying negligence lawsuit and was

properly served on April 16, 2015. Victor Goode was insured by State Farm through an

automobile insurance policy sold to Stephanie Goode by Brenda Spearman at the State Farm

1

Spearman Insurance Agency. Spearman is an authorized State Farm agent.

State Farm had a duty to investigate, defend, and settle the lawsuit and protect its insureds, which would include Victor Goode and Stephanie Goode. State Farm did not defend the lawsuit, Goode was not represented, and State Farm did not accept Plaintiff's demand to settle her claims for the $25,000.00 bodily injury limits afforded under its policy. Ultimately judgment was entered against Victor Goode in the amount of $2,000,000.00. (Exhibit 2, Confession of Judgment).

After judgment was entered against Victor Goode, he and Stephanie Goode assigned all rights, claims and causes of actions then possessed by them against any insurance company or agent for mishandling of the lawsuit in the underlying action. This action is being brought by assignee and judgment creditor Magie Worthy, Personal Representative of the Estate of Tara Shavone Worthy.

## THE COMPLAINT

NOW COMES THE PLAINTIFF complaining of the above-named Defendants, hereby alleging unto this Honorable Court as follows:

## JURISDICTION AND VENUE

1.    Plaintiff is a resident of Chester County, South Carolina.

2.    Defendant Brenda Spearman is a resident of the State of South Carolina and was at all times relevant hereto acting within the course and scope of her employment as an employee of Spearman Insurance Agency and as an agent for Defendant State Farm.

3.    Upon information and belief, the Defendant State Farm Fire and Casualty Company ("State Farm") is a corporation organized under the laws of the State of Illinois, with its principal place of business in Illinois.

2

4.      The underlying lawsuit that State Farm failed to defend was pending in Union County.  The judgment was entered in Union County.  The policy of insurance issued and breached by State Farm in this case insured an automobile garaged in Union County.  The underlying wreck that led to the Lawsuit occurred in Union County.

5.      This Court has personal jurisdiction over the parties hereto and subject matter jurisdiction over the causes of action set forth herein.  Venue is proper in Union County.

<u>**FOR A FIRST CAUSE OF ACTION**</u>
<u>**AS TO STATE FARM FIRE AND CASUALTY COMPANY**</u>
**(Bad Faith)**

6.      The allegations stated in Paragraphs 1 through 5 above are repeated and realleged as if fully set forth verbatim herein.

7.      Stephanie Goode had in force and effect a policy of automobile insurance underwritten by State Farm with a policy bearing number 513 7895-C26-40 insuring a 2006 Ford Mustang ("the Policy").  As initially written, the Policy was in force and effect on December 12, 2014 and had bodily injury limits of $25,000 per person and $50,000 per occurrence.

8.      The Policy was procured through the assistance of Stephanie Goode's general insurance agent, Brenda Spearman.

9.      On December 12, 2014, Victor Goode was a permissive user of the 2006 Ford Mustang when he negligently and recklessly caused a collision that resulted in the death of Tara Shavone Worthy.

10.     State Farm, by and through its agent Brenda Spearman, owed a duty of good faith and fair dealing to its insureds under the policy, as well as a duty to investigate and defend the claims made against its insureds arising out of the December 12, 2014 wreck.

11.     On May 20, 2015 Plaintiff made a timed settlement demand to State Farm

3

offering to resolve Plaintiff's wrongful death and survival claims arising out of the December 12, 2014, wreck within the $25,000.00 bodily injury limits of the Policy. (Exhibit 3, Demand to State Farm).

12.    Defendant State Farm breached its duty owed to its insureds by failing to accept the demand to settle Plaintiff's claims within the limits of the Policy.

13.    Defendant State Farm breached its duty owed to its insureds by failing to investigate or defend the underlying action, Case No. 2015-CP-44-118, filed by Plaintiff in this Court.

14.    As a direct and proximate result of Defendant State Farm's failure to investigate, defend, and settle the action, and as a direct and proximate result of its breach of its duty of good faith and fair dealing, judgment was entered against Victor Goode on March 2, 2016.

15.    Defendant State Farm acted by and through its exclusive State Farm agency, Spearman Insurance Agency and its employee and agent, Defendant Brenda Spearman, who acted within the course and scope of her employment and/or agency with all implied, inherent, apparent, and express authority so as to bind both Spearman Insurance Agency and State Farm and by her acts and/or omissions thereby making Defendant State Farm vicariously liable for the same under the principles and doctrines of non-delegable duty, corporate liability, apparent authority, agency, ostensible agency and/or respondeat superior.

**FOR A SECOND CAUSE OF ACTION**
**AS TO STATE FARM FIRE AND CASUALTY COMPANY**
(Breach of Contract)

16.    The allegations stated in Paragraphs 1 through 15 above are repeated and realleged as if fully set forth verbatim herein.

17.    Stephanie Goode and Defendants had a contract of insurance whereby Defendants

4

were not only obligated to insure Stephanie Goode and any permissive users of her covered autos against loss under the Policy, but were also obligated to investigate, defend, and indemnify any claims filed against Stephanie Goode or any permissive user of her covered automobiles.

18.    Stephanie Goode fully performed and delivered consideration under the contract by promptly and continuously paying Defendants' insurance premiums for their automobile insurance coverage.

19.    Defendants' failure to investigate, defend, and settle the aforesaid claim and Lawsuit against Victor Goode in this Court constitutes a failure to perform their obligation, and thus, a breach of contract by Defendants.

20.    As a direct and proximate result of this breach, Victor Goode has suffered serious actual and consequential damages of $2,000,000.00 in judgments entered against him, for which he is now personally liable.

21.    Magie Worthy holds a judgment and is a creditor in the amount of $2,000,000.00 plus interest against State Farm's insured Victor Goode.

### FOR A THIRD CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### (Negligence/Professional Negligence)

22.    The allegations stated in Paragraphs 1 through 21 above are repeated and realleged as if fully set forth verbatim herein

23.    Defendants owed Victor Goode and Stephanie Goode certain duties, to properly handle and defend claims brought against them, arising out of the special relationship and confidence of trust placed in them, and the covenant and duty of good faith and fair dealing implied as a matter of law in contracts of insurance.

5

24.     Defendants were negligent, reckless, grossly negligent, willful and wanton in their investigation and handling of the claims and Lawsuit brought against Victor Goode in one or more of the following particulars:

a.    In the failure and professional negligence of the Brenda Spearman and the Spearman Insurance Agency and its owner and employees to follow industry standards and its own policies of reporting claims brought to their attention by their insureds;

b.    In the failure and professional negligence of Brenda Spearman and the Spearman Insurance Agency to have proper safeguards in place to protect its insureds from the damages they suffered in this case due to failure to report a claim/lawsuit;

c.    In the failure and professional negligence of Brenda Spearman to advise Victor Goode and Stephanie Goode to hire counsel to answer the Complaint because State Farm would not be defending the lawsuit;

d.    In failing to investigate the lawsuit;

e.    In failing to provide a defense to the lawsuit or to advise their insureds that the claim was being denied, that the insureds needed to secure their own counsel and that State Farm was not going to hire counsel to file an Answer;

f.    In lulling Victor Goode into a belief that the claim against him was going to be investigated and defended by State Farm;

g.    In failing to protect Victor Goode from an excess judgment against him in the amount of $2,000,000.00 plus post judgment interest that is accruing daily;

h.    In failing to evaluate or properly evaluate the claim given the information then available;

i.    In failing to make any effort whatsoever to settle the claim within the Defendants' policy limits;

j.    Upon information and belief, in violating their own policies, procedures, and/or guidelines regarding the investigation and handling of liability claims;

k.    In failing to exercise the degree of care, caution, and good faith that a

reasonably prudent insurance carrier, manager or adjuster would exercise under the same or similar circumstances;

l.    In placing their own interests ahead of those of the insureds; and

m.    In failing to place the insureds' interests ahead of those of Defendants.

25.    By reason of Defendants' negligence, recklessness, gross negligence, willfulness, and wantonness, Victor Goode directly and proximately suffered actual damages.

26.    Plaintiff is entitled to a judgment against Defendants for the full amount of the judgments entered against Victor Goode, interest accruing on the judgments, and punitive damages.

### FOR A FOURTH CAUSE OF ACTION
### AS TO STATE FARM FIRE AND CASUALTY COMPANY
### (Declaratory Judgment and Attorneys' Fees)

27.    The allegations stated in Paragraphs 1 through 26 above are repeated and realleged as if fully set forth verbatim herein.

28.    Pursuant to the South Carolina Uniform Declaratory Judgment Act, Plaintiff seeks a declaration that:

(a)    State Farm failed to comply with its duties and obligations under the policy of insurance and that its insureds were harmed as a result of these breaches.

(b)    State Farm is liable for the entire amount of the judgments, plus post judgment interest as a result of State Farm's conduct.

(c)    Plaintiff as assignee is entitled to attorney's fees pursuant to S.C. Code Ann. § 38-59-40 (1976, as amended).

### FOR A FIFTH CAUSE OF ACTION
### AS TO ALL DEFENDANTS
### (Negligent Misrepresentation)

29.    The allegations stated in Paragraphs 1 through 28 above are repeated and

7

realleged as if fully set forth verbatim herein.

30.     Defendant Brenda Spearman made a false representation to Stephanie Goode that her State Farm policy was in force and effect as of December 12, 2014 and/or failed to inform Stephanie Goode that the Policy was not in force and effect as of December 12, 2014.

31.     Defendant Spearman had a pecuniary interest in the matter as she gave this information in the course of her employment, business and profession.

32.     Defendant Spearman owed a duty to communicate truthful information to Stephanie Goode and breached that duty by failing to do so.

33.     Stephanie Goode relied on Spearman's representation that the Policy was in force and effect as of December 12, 2014 and suffered damages as a result of her reliance on the representation.

34.     State Farm is vicariously liable for the negligent misrepresentations of its owner, agent and employee Brenda Spearman who was acting in the course and scope of her business when he made these negligent misrepresentations.

WHEREFORE, Plaintiff prays for a trial and for the following:

   i.      Judgment against Defendants, jointly and severally, for a declaratory judgment, and actual and punitive damages in an amount to be determined by a jury;

   ii.     For the costs of this action; and

   iii.    For such other and further relief as this court deems just and proper.


*[SIGNATURE BLOCK ON FOLLOWING PAGE]*

8

Chappell, Smith & Arden, P.A.

W. Hugh McAngus, Jr.
Attorney for the Plaintiff
Post Office Box 12330
Columbia, South Carolina 29211
(803) 929-3600

September 23, 2016

| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| COUNTY OF UNION | ) | |

Magie Worthy as Personal Representative of the Estate of Tara Shavone Worthy

**Plaintiff(s)**

**CIVIL ACTION COVERSHEET**

2015 ~~CP-44~~ *118*

-CP -

vs.

Victor William Goode

**Defendant(s)**

Submitted By: W. Hugh McAngus, Jr.
Address: P.O. Box 12330
Columbia, SC 29211

SC Bar #:        74941
Telephone #:   803-929-3600
Fax #:             803-929-3604
Other:
E-mail:          hmcangus@csa-law.com

FILED FOR RECORD
2015 MAR 17  AM 8 33
WILLIAM F. GAULT
CLERK OF COURT
UNION, SC

**NOTE:** The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION *(Check all that apply)*
### *If Action is Judgment/Settlement do not complete*

☒ **JURY TRIAL** demanded in complaint.     ☐ **NON-JURY TRIAL** demanded in complaint.
☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☒ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION *(Check One Box Below)*

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Assault/Slander/Libel (300) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Conversion (310) | ☐ Condemnation (410) |
| ☐ Employment (120) | ☐ Medical Malpractice (220) | ☐ Motor Vehicle Accident (320) | ☐ Foreclosure (420) |
| ☐ General (130) | Previous Notice of Intent Case # | ☐ Premises Liability (330) | ☐ Mechanic's Lien (430) |
| ☐ Breach of Contract (140) | 20____ -NI-____-_____ | ☐ Products Liability (340) | ☐ Partition (440) |
| ☐ Other (199) | ☐ Notice/ File Med Mal (230) | ☐ Personal Injury (350) | ☐ Possession (450) |
| | ☐ Other (299) | ☒ Wrongful Death (360) | ☐ Building Code Violation (460) |
| | | ☐ Other (399) | ☐ Other (499) |

| Inmate Petitions | Administrative Law/Relief | Judgments/Settlements | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Reinstate Drv. License (800) | ☐ Death Settlement (700) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Judicial Review (810) | ☐ Foreign Judgment (710) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Relief (820) | ☐ Magistrate's Judgment (720) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Permanent Injunction (830) | ☐ Minor Settlement (730) | ☐ Municipal (930) |
| | ☐ Forfeiture-Petition (840) | ☐ Transcript Judgment (740) | ☐ Probate Court (940) |
| | ☐ Forfeiture—Consent Order (850) | ☐ Lis Pendens (750) | ☐ SCDOT (950) |
| | ☐ Other (899) | ☐ Transfer of Structured Settlement Payment Rights Application (760) | ☐ Worker's Comp (960) |
| | | | ☐ Zoning Board (970) |
| | | | ☐ Public Service Comm. (990) |

| Special/Complex /Other | | | |
|---|---|---|---|
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | ☐ Petition for Workers Compensation Settlement Approval (780) | ☐ Employment Security Comm (991) |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) | | |
| ☐ Medical (620) | ☐ Out-of-State Depositions (650) | ☐ Confession of Judgment (770) | ☐ Other (999) |
| ☐ Other (699) | ☐ Motion to Quash Subpoena in an Out-of-County Action (660) | ☐ Other (799) | |
| | ☐ Sexual Predator (510) | | |

EXHIBIT
1

**Submitting Party Signature:** _____     **Date:**  3-13-15

**Note:** Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

SCCA / 234 (10/2014)                                    Page 1 of 2

## FOR MANDATED ADR COUNTIES ONLY

Aiken, Allendale, Anderson, Bamberg, Barnwell, Beaufort, Berkeley, Calhoun, Charleston, Cherokee, Clarendon, Colleton, Darlington, Dorchester, Florence, Georgetown, Greenville, Hampton, Horry, Jasper, Kershaw, Lee, Lexington, Marion, Oconee, Orangeburg, Pickens, Richland, Spartanburg, Sumter, Union, Williamsburg, and York

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**You are required to take the following action(s):**

1. The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs. (Medical malpractice mediation is mandatory statewide.)

4. Cases are exempt from ADR only upon the following grounds:

    a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

    b. Requests for temporary relief;

    c. Appeals

    d. Post Conviction relief matters;

    e. Contempt of Court proceedings;

    f. Forfeiture proceedings brought by governmental entities;

    g. Mortgage foreclosures; and

    h. Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5. In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6. Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

**Please Note:**    **You must comply with the Supreme Court Rules regarding ADR.**
**Failure to do so may affect your case or may result in sanctions.**

STATE OF SOUTH CAROLINA
COUNTY OF UNION

IN THE COURT OF COMMON PLEAS
CIVIL ACTION NO.:

2015 -CP-44-  _118_

Magie Worthy, as Personal
Representative of the Estate of Tara
Shavone Worthy,

Plaintiff,

vs.

Victor William Goode,

Defendant(.

**SUMMONS**
**(JURY TRIAL REQUESTED)**

2015 MAR 17 AM 8 33
WILLIAM F. NAULT
CLERK OF COURT
UNION, SC
FILED FOR RECORD

TO:    THE DEFENDANT, ABOVE-NAMED:

YOU ARE HEREBY SUMMONED and required to answer the complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to said complaint upon the subscriber, at his office at 1510 Calhoun Street, Columbia, South Carolina 29201, within thirty (30) days after the service thereof, exclusive of the day of such service, and if you fail to answer the complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the complaint.

CHAPPELL SMITH & ARDEN, P.A.

W. Hugh McAngus, Jr.
Attorney for the Plaintiff
Post Office Box 12330
Columbia, South Carolina 29211
(803) 929-3600

March 12, 2015

STATE OF SOUTH CAROLINA
COUNTY OF UNION

IN THE COURT OF COMMON PLEAS
CIVIL ACTION NO.:

Magie    Worthy,    as    Personal
Representative of the Estate of Tara
Shavone Worthy,

Plaintiff,

vs.

Victor William Goode

Defendant.

2015 CP-44- 118

2015 MAR 17 AM 8 33
WILLIAM F. GAULT
CLERK OF COURT
UNION, SC
FILED FOR RECORD

**COMPLAINT**

The Plaintiff would respectfully show unto the Court that:

1.    The Plaintiff is a citizen and resident of the County of Chester, State of South Carolina, and is the duly appointed Personal Representative of the Estate of Tara Shavone Worthy.

2.    Upon information and belief, the Defendant is a citizen and resident of the County of Spartanburg, State of South Carolina.

3.    Shortly after 11:30 a.m. on December 12, 2014, the Defendant was operating a 2006 Ford Mustang traveling east on S.C. 9 in Union County, South Carolina.

4.    Defendant was operating the vehicle in excess of the posted speed limit despite approaching a sharp curve.

5.    While traveling around a right hand curve and traveling more than 10 miles per hour over the posted speed limit, the Defendant crossed the center line, with the entire front end of his vehicle quickly moving into the west bound lane.

6.    At the same time and place mentioned, Tara Shavone Worthy was operating a 2013 Kia traveling west on S.C. 9 approaching the same curve.

7.    Defendant crossed the center line direlty into Tara Shavone Worthy's path of travel and caused a violent collision.

8.    As a result of the collision, Tara Shavone Worthy suffered extrement physical pain and suffering, mental anguish, shock, and fright before she died as a result of her injuries.

9.    As a result of the collision, Tara Shavonen's statutory heirs, which include Plaintiff and her father James Worthy, suffered the following injuries and damages:

    a)    pecuniary loss;

    b)    mental shock and suffering;

    c)    wounded feeling;

    d)    grief and sorrow;

    e)    loss of companionship;

    f)    loss of Tara Shavone Worthy's experience, knowledge and judgment; and,

    g)    funeral expenses.

10.    The injuries and damages incurred by Tara Shavone Worthy and the statutory heirs were directly and proximately caused by the Defendant's careless, negligent, grossly negligent, willful, wanton, reckless, and unlawful acts in one or more of the following particulars:

    a.    in failing to apply the brakes of the vehicle and/or maintain them in proper working condition;

    b.    in failing to steer or take other evasive action so as to avoid the collision;

    c.    in failing to keep a proper lookout;

    d.  in failing to yield as required by law;

    e.  in operating the vehicle too fast for existing conditions;

    f.  in crossing the center line of travel;

    g.  in operating a vehicle at a high rate of speed in the wrong lane; and,

    h.  in failing to observe the condition of traffic.

11.    The Defendant's careless, negligent, willful, wanton, reckless and unlawful acts were the direct and proximate cause of the collision and resulting injuries and damages to the Plaintiff.

12.    The Plaintiff is informed and believes that she is entitled to judgment against the Defendant for actual and punitive damages in an appropriate amount.

WHEREFORE, the Plaintiff prays for judgment against the Defendant for actual and punitive damages in an appropriate amount to be determined at trial, the costs of this action, and for such other and further relief as the Court may deem just and proper.

CHAPPELL, SMITH & ARDEN, P.A.

_____

W. Hugh McAngus, Jr.
Attorneys for Plaintiff
Post Office Box 12330
Columbia, South Carolina 29211
803/929-3600

March 12, 2015

FORM 4

STATE OF SOUTH CAROLINA                                      JUDGMENT IN A CIVIL CASE
COUNTY OF UNION
IN THE COURT OF COMMON PLEAS                                 CASE NO. 2015 CP-44-118

Magie Worthy as Personal Representative for the ~~FILED FOR RECORD~~ W. Goode
Estate of Tara Shavone Worthy

FILED FOR RECORD

2016 MAR 2 PM 1 58

CLERK OF COURT
UNION, SC

ROLL NO. 2015CP4400118

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Submitted by: W. Hugh Mcangus, Jr., Chappell, Smith & Arden, P.O. Box 12330, Columbia, SC 29211 | Attorney for: ☒ Plaintiff    ☐ Defendant<br>or<br>☐ Self-Represented Litigant |

## DISPOSITION TYPE (CHECK ONE)

☐ **JURY VERDICT.** This action came before the court for a trial by jury. The issues have been tried and a verdict rendered.

☐ **DECISION BY THE COURT.** This action came to trial or hearing before the court. The issues have been tried and heard and a decision rendered. ☐ See Page 2 for additional information.

☒ **ACTION DISMISSED** (*CHECK REASON*): ☐ Rule 12(b), SCRCP; ☐ Rule 41(a), SCRCP (Vol. Nonsuit); ☐ Rule 43(k), SCRCP (Settled); ☒ Other Confession of Judgment

☐ **ACTION STRICKEN** (*CHECK REASON*): ☐ Rule 40(j), SCRCP; ☐ Bankruptcy; ☐ Binding arbitration, subject to right to restore to confirm, vacate or modify arbitration award; ☐ Other

☐ **DISPOSITION OF APPEAL TO THE CIRCUIT COURT** (*CHECK APPLICABLE BOX*): ☐ Affirmed; ☐ Reversed; ☐ Remanded; ☐ Other
NOTE:   ATTORNEYS ARE RESPONSIBLE FOR NOTIFYING LOWER COURT, TRIBUNAL, OR ADMINISTRATIVE AGENCY OF THE CIRCUIT COURT RULING IN THIS APPEAL.

**IT IS ORDERED AND ADJUDGED:** ☒ See attached order (formal order to follow) ☐ Statement of Judgment by the Court:

## ORDER INFORMATION

This order ☒ ends ☐ does not end the case.
Additional Information for the Clerk : _____

---

### INFORMATION FOR THE JUDGMENT INDEX
Complete this section below when the judgment affects title to real or personal property or if any amount should be enrolled. If there is no judgment information, indicate "N/A" in one of the boxes below.

| Judgment in Favor of (List name(s) below) | Judgment Against (List name(s) below) | Judgment Amount To be Enrolled (List amount(s) below) |
|---|---|---|
| Magie Worthy, as PR of the Estate of Tara Shavone Worthy | Victor W. Goode | $2,000,000.00 |
| JUDGEMENT SIGNED AND | | $ |
| ENTERED UP 3-2-16 | | $ |

If applicable, describe the property, including tax map information and address, referenced in the order:

CLERK OF COURT

The judgment information above has been provided by the submitting party. Disputes concerning the amounts contained in this form may be addressed by way of motion pursuant to the SC Rules of Civil Procedure. Amounts to be computed such as interest or additional taxable costs not available at the time the current and final order are submitted to the judge may be provided to the clerk. Note: Title abstractors and researchers should refer to the official court order for judgment details.

Circuit Court Judge
SCRCP Form 4C (03/2013)


EXHIBIT
2

2753
Judge Code

3-2-16
Date

Page 1

*********************************

## FORM 4C INSTRUCTIONS—JUDGMENT IN A CIVIL CASE
### (Instructions for Information Only-Not to be filed with Form 4C)

1. Form 4C-Judgment in a Civil Case has been modified to add order information and enrollment instructions for the clerk of court. The purpose of Form 4 has not changed with the exception that judgment information is provided when applicable.

2. Please note that the Form 4C must be attached to all orders that include information to enroll in the judgment index. The clerk will not be responsible for reading the order to determine enrollment information.

   The attorney or prevailing party will prepare and attach the Form 4C when submitting the proposed order that includes judgment enrollment information for the judgment index. The judge will review and sign Form 4C when he or she signs an order that includes judgment enrollment information for the judgment index.

3. Form 4C is not required to be submitted to the Court with orders that do not include information to enroll in the judgment index. If the clerk receives such an order without Form 4C attached, the clerk should enter and process the order pursuant to Rule 58 and Rule 77(d), SC Rules of Civil Procedure (i.e., the clerk should serve notice of entry of the judgment by mail or provide the attorneys with copies of the signed order by other means).

4. The "Information for the Judgment Index" section should be completed when the judgment affects title to real or personal property or if any amount should be enrolled. In the "Judgment in Favor of" column, enter the name of the party to whom the judgment is awarded. In the "Judgment Against" column, enter the name of the person to whom the judgment is against. The judgment amount to be enrolled should be noted in the "Judgment Amount" column. As necessary, describe any property referenced in the order if it is to be enrolled in the judgment index. If there is no judgment information to enroll, indicate "N/A" in one of the boxes in this section of the form.

5. To enter information to accommodate multiple parties, additional Form 4Cs may be used as necessary. Additional space may be inserted on the form as necessary.

6. The section "For the Clerk of Court Office Use Only" should be completed by the clerk as it has been with the previous version of Form 4.

7. If the matter is on appeal to the Circuit Court, then the parties on the form should be changed from Plaintiff and Defendant to Appellant and Respondent.

8. If an arbitrator prepares an order after arbitration, the arbitrator should strike through "Circuit Court Judge" and indicate "Arbitrator" in the signature block.

9. If a Special Circuit Court Judge, Master in Equity, or Special Referee prepares an order after hearing a Circuit Court matter, then he or she should strike through the title "Circuit Court Judge" below the signature line and indicate the appropriate title.

10. When an Order of Foreclosure is filed, neither the parties or debt owed should be listed in the Information for the Judgment Index Section, unless the foreclosure order specifically requires entry of the full judgment amount before the foreclosure sale, pursuant to Section 29-3-650 of the SC Code.

11. If the deficiency judgment is waived in a Foreclosure action, indicate N/A in the "Judgment Amount To Be Enrolled" box.

12. Foreclosure actions should be ended by the Clerk of Court upon receipt of the Order of Foreclosure. Subsequent information, including deficiency judgments, can be added to the action after the case is ended. The Master in Equity should end the action in the MIE system upon the receipt of the Order of Foreclosure.

13. When judgment enrollment information is included in the Information for the Judgment Index Section (for example, when there is a deficiency judgment), only the parties who the judgment is for and against should be included in the Section. Subordinate parties and lienholders should not be included in the box if there is not a judgment amount specifically for or against them.

14. Form 4C is not required to be attached to Transcripts of Judgment and Confession of Judgment.

## For Clerk of Court Office Use Only

This judgment was entered on **2nd day of March, 2015**, and a copy mailed first class or placed in the appropriate attorney's box on **2nd Day of March, 2015**, to attorneys of record or to parties (when appearing pro se) as follows:

William Hugh McAngus Jr. 1510 Calhoun St.  Columbia, SC 29201

James P. Walsh PO Box 6728  Greenville, SC 29606
Victor W. Good, 424 Tommy White Road, Pauline, SC 29374

**ATTORNEY(S) FOR THE PLAINTIFF(S)**

**ATTORNEY(S) FOR THE DEFENDANT(S)**

Gary T. Frost, Attorney at Law, PO Box 731, Union, SC 29379

_June H. Miller_ / _Miller_

**Court Reporter**

June H. Miller - Clerk of Court

### ADDITIONAL INFORMATION REGARDING DECISION BY THE COURT AS REFERENCED ON PAGE 1.

This action came to trial or hearing before the court. The issues have been tried or heard and a decision rendered.

JUDGEMENT ROLL NO. 2015CP440018

FILED FOR RECORD

STATE OF SOUTH CAROLINA
COUNTY OF UNION

2016 MAR 2

CLERK OF COURT
UNION, SC

IN THE COURT OF COMMON PLEAS
CIVIL ACTION NO.: 2015-CP-44-118

Magie      Worthy, as Personal
Representative fo the Estate of Tara
Shavone Worthy,

                Plaintiff,

        vs.

Victor W. Goode,

                Defendant.

**CONFESSION OF JUDGMENT**

Pursuant to S.C. Code Ann. § 15-35-360, Defendant Victor W. Goode, after being duly sworn, hereby makes the following Confession of Judgment with regards to Plaintiff's Wrongful Death Claim (referenced in Paragraph 9 of the Plaintiff's Amended Complaint):

1.      I am over the age of 18 and otherwise competent to make this Confession of Judgment, which I do of my own free will and without any coercion or compensation;

2.      Judgment may be entered against me for Plaintiff's alleged wrongful death damages in the amount of $2,000,000.00; and I specifically authorize the entry of such judgment;

3.      The facts on which this money due arose are as follows:

a.      Shortly after 11:30 a.m. on December 12, 2014, I was operating a 2006 Ford Mustang traveling east on S.C. 9 in Union County, South Carolina;

b.      I was operating the vehicle in excess of the posted speed limit despite approaching a sharp curve;

c.      While traveling around a right hand curve and traveling more than over the posted speed limit, I crossed the center line, with the

entire front end of my vehicle quickly moving into the west bound lane;

d.    At the same time Tara Shavone Worthy was operating a 2013 Kia traveling west on S.C. 9 approaching the same curve;

e.    I crossed the center line directly into Tara Shavone Worthy's path of travel and caused a violent collision that killed Tara Shavone Worthy;

f.    This confession of judgment of $2,000,000 is justly due for the wrongful death damages suffered by Tara Shavone Worthy's parents.

4.    I recognize, in executing this Confession of Judgment, that this Judgment may be filed with the Clerk of Court, Register of Deeds, RMC, or similar entity in any county in which -- I own property and shall constitute thereby a lien against any such property. I agree to the entry of this Judgment without the need for any further legal proceedings whatsoever on the part the Plaintiff, Magie Worthy.

_____
Victor W. Goode

Dated: Jan. 25, 2016

Sworn to and subscribed before me
this, the 25 day of Jan, 2016.

_____
Notary Public

My Commission Expires: 1-26-19

JUDGEMENT SIGNED AND
ENTERED UP ___3-2-16___

CLERK OF COURT

Mark D. Chappell*
William L. Smith, II
ark T. Arden
Beau Busch
Daniel Vega
W. Hugh McAngus, Jr.**
Jacob D. Born***

Of Counsel:
Solomon, Budman & Stricker****



STATEWIDE PRACTICE

Post Office Box 12330
Columbia, SC 29211
Phone 803.929.3600
Fax 803.929.3604

www.csa-law.com

*Also licensed in DC
**Also licensed in NC
***Also licensed in GA
****Also licensed in GA, TN

May 20, 2015

Thelma Long
State Farm
P.O. Box 106145
Atlanta, GA 30348-6145
**VIA FAX: 1-888-870-0317**

Re:        Our Client:        Tara Shavone Worthy
           Insured:           Stephanie M. Goode
           Date of Accident:  12/12/2014
           Claim Number:      40574P112

Dear Thelma:

As you know, I have requested that State Farm provide me documentation to show that your alleged cancellation was properly affected. To date, you have been unwilling to do so. Please find enclosed an Affidavit from your insured stating that she made premium payments and never received not ice of cancellation. Also enclosed are bank statements from your insured showing premium payments. At worst, an actual dispute exists with regards to whether your policy was properly cancelled. Given that your policy was only a 25/50 policy and this is a death claim, your refusal to provide coverage or proof of proper cancellation puts your insured at a substantial risk of personal liability.

Please accept this letter as my client's demand for your full policy limits in exchange for a Covenant Not to Execute. This demand will expire if I do not receive a check for your full policy limits and a Covenant Not to Execute at my office by 4:00 pm on June 5, 2015.

If this demand is not met by the time stated above it will be withdrawn, and my client will proceed with the underlying wrongful death case and will file a Declaratory Judgment action over the coverage issue as well. She will then execute any judgment she receives against the personal assets of your insured.

**EXHIBIT**
tabbies
**3**

| AIKEN | CHARLESTON | COLUMBIA | FLORENCE | ROCK HILL |
|-------|------------|----------|----------|-----------|
| 322 Laurens Street, NW | One Poston Road | 1510 Calhoun Street | 181 S. Coit Street | 1770 India Hook Road |

I hope this matter can be resolved and your insured's personal liability for the large damages in this case can be limited.

Yours truly,

W. Hugh McAngus, Jr.
hmcangus@csa-law.com

/HM

Encl.

STATE OF SOUTH CAROLINA    )

                               )    **AFFIDAVIT**

COUNTY OF UNION           )

        PERSONALLY appeared before me, Stephanie Goode, who being duly sworn, deposes and states:

        I live at 130 Rowell Lane, Union, South Carolina 29379, which is the address State Farm has listed for us. I am the owner of the 2006 Ford involved in the accident which resulted in the death of Tara Shavone Worthy. The car was insured through State Farm. I never received a notice of cancellation from State Farm of the policy insuring this vehicle. According to the lien holder, they never received a notice of cancellation. The State Farm agent allowed us to make payments on the policy and the premium.

                                                         _Stephanie Goode_
                                                      Stephanie Goode

SWORN to before me this ___/___ day of ___/____, 2015.

_____
Notary Public for South Carolina
My commission expires _1-26-18_

## AFFIDAVIT OF SERVICE

State of South Carolina                County of Union                Common Pleas Court

Case Number: 2016-CP-44-384

Plaintiff:
**Magie Worthy as Personal Representative of the Estate of Tara Shavone Worth, and as Assignee of Victor Goode and Stephanie Goode**

vs.

Defendant:
**State Farm Fire and Casualty Company and Brenda Spearman**

For:
W. Hugh McAngus
Chappell, Smith & Arden
Po Box 12330
Columbia, SC 29211

Received by Chappell, Smith & Arden to be served on **Brenda Spearman, 171 Tupelo Dr., Greer, SC 29651.**

I, Lynn Smith, being duly sworn, depose and say that on the **8th day of October, 2016 at 10:34 am, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **Civil Action Coversheet, Summons, Complaint and Exhibits** to: Brenda Spearman at the address of: **171 Tupelo Dr., Greer, SC 29651,** in compliance with state statutes.

I certify that I am over the age of 18, have no interest in the above action, and am a Process Server in good standing in the judicial circuit in which the process was served.

Subscribed and Sworn to before me on the 10th day of October, 2016 by the affiant who is personally known to me.

_Tammy Wyatt_
NOTARY PUBLIC

_Lynn Smith_
Process Server

Chappell, Smith & Arden
Po Box 12330
Columbia, SC 29211
(803) 509-5834

Our Job Serial Number: UPL-2016001353

Copyright © 2005-2016 Database Services, Inc. - Process Server's Toolbox V7.1i

FILED FOR RECORD
2016 OCT 14 AM 10 11
CLERK OF COURT
UNION, SC



# South Carolina
# Department of Insurance

**NIKKI R. HALEY**
Governor

**RAYMOND G. FARMER**
Director

Capitol Center
1201 Main Street, Suite 1000
Columbia, South Carolina 29201

Mailing Address:
P.O. Box 100105, Columbia, S.C. 29202-3105
Telephone: (803) 737-6160

October 6, 2016

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
STATE FARM FIRE AND CASUALTY CO
c/o Corporation Service Company
1703 Laurel Street
Columbia, SC 29201-0000

Dear Sir:

On October 6, 2016, I accepted service of the attached Summons and Complaint on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to sdubois@doi.sc.gov**. When replying, please refer to File Number 163748, <u>Worthy Maggie v. Brenda Spearman , et al.</u>, 2016-CP-44-384.

By:

*[signature]*

David E. Belton
Senior Associate General Counsel
(803)737-6132

Sincerely Yours,

Raymond G. Farmer
Director
State of South Carolina
Department of Insurance

Attachment

CC:    W. Hugh  McAngus Jr.
       Chappell, Smith & Arden
       Post Office Box 12330
       Columbia, SC    29211

*[stamp: FILED FOR RECORD 2016 OCT 14 AM 10 11  CLERK OF COURT UNION, SC]*

STATE OF SOUTH CAROLINA            )
                                   )    IN THE COURT OF COMMON PLEAS
COUNTY OF UNION                    )    JUDICIAL CIRCUIT

Magie Worthy, as Personal          )    Civil Action No.  2016-CP-44-384
Representative of the Estate of Tara )
Shavone Worthy, and as Assignee of )
Victor Goode and Stephanie Goode,  )
                                   )
                    Plaintiff,     )           **ANSWER**
                                   )
        vs.                        )
                                   )    **Jury Trial Requested**
State Farm Fire and Casualty Company )
and Brenda Spearman,               )
                                   )
                    Defendant.     )
                                   )



The Defendants State Farm Fire and Casualty Company ("State Farm") and Brenda

Spearman answer the Plaintiff's Complaint as follows:

## FOR A FIRST DEFENSE

1.    Answering the "Summary of the Case" on pages 1 and 2 of the Complaint, the

Defendants admit that this lawsuit concerns the issue of insurance coverage for a claim by

Maggie Worthy against Victor Goode, that that lawsuit concerned a December 12, 2014

accident, that Worthy sued Goode in Civil Action No. 2015-CP-44-118, that State Farm did not

defend Worthy's lawsuit against Goode because no insurance policy was in effect at the time of

the accident, and that State Farm did not pay the policy limits because no policy was  in effect at

the time of  Goode's accident on December 12, 2014, but the Defendants are without knowledge

or information sufficient to form a belief as to the truth of the remaining allegations in the

"Summary of the Case" and deny those allegations, and the Defendants further deny any duty to

defend and settle the lawsuit against Victor Goode because no insurance coverage was in place at

the time of Goode's accident.

2.    Answering Paragraph number 1, the Defendants are without knowledge or information sufficient to form a belief as to the truth of this Paragraph and, therefore, Paragraph 1 is denied.

3.    Answering Paragraph 2, the Defendants admit Brenda Spearman is a resident of the State of South Carolina and that she is an agent for State Farm, but the remaining allegations in Paragraph 2 are denied.

4.    Paragraph 3 is admitted.

5.    Answering Paragraph 4, the Defendants refer to the underlying lawsuit and judgment in Union County, but the Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 4 and, therefore, those allegations are denied.

6.    Answering Paragraph 5, the Defendants would show that personal jurisdiction, subject matter jurisdiction and venue are matters of law to be determined by the Court and otherwise Paragraph 5 is denied.

7.    Answering Paragraph 6, the Defendants incorporate their answers to Paragraphs 1 through 5 as fully and effectually as if set forth verbatim.

8.    Answering Paragraph 7, the Defendants refer to the policy for the policy number, amounts of coverage and the insured vehicle and, to the extent the allegations in Paragraph 7 contradict the terms of the policy, Paragraph 7 is denied and the remaining allegations in Paragraph 7 are denied.

9.    Answering Paragraph 8, the Defendants admit that the policy was procured through Brenda Spearman's agency, but the remaining allegations in Paragraph 8 are denied.

10.   The Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 and, therefore, those allegations are denied.

11. Answering Paragraph 10, the Defendants deny that an agent owes a duty of good faith and fair dealing implied into an insurance policy to which the agent is not a party and the Defendants would further show that the existence of duties are matters of law to be determined by the Court and otherwise Paragraph 10 is denied.

12. Answering Paragraph 11, the Defendants refer to Exhibit 3 to the Complaint and, to the extent the allegations in Paragraph 11 contradict Exhibit 3 to the Complaint, Paragraph 11 is denied and otherwise Paragraph 11 is denied.

13. Paragraph 12 is denied.

14. Paragraph 13 is denied.

15. Paragraph 14 is denied.

16. Paragraph 15 is denied.

17. Answering Paragraph 16, the Defendants incorporate their answers to Paragraphs 1 through 15 as fully and effectually as if set forth verbatim.

18. Answering Paragraph 17, the Defendants refer to the contract of insurance for the contractual obligations set forth therein, the Defendants specifically deny any contract of insurance between Stephanie Goode and Brenda Spearman and the remaining allegations in Paragraph 17 are denied.

19. Paragraph 18 is denied.

20. Paragraph 19 is denied.

21. Paragraph 20 is denied.

22. Answering Paragraph 21, the Defendants refer to the confession of judgment which is Exhibit 2 to the Complaint and otherwise Paragraph 21 is denied.

23. Answering Paragraph 22, the Defendants incorporate their answers to Paragraphs 1 through 21 as fully and effectually as if set forth verbatim.

24. Answering Paragraph 23, the Defendants would show that any duties are matters of law to be determined by the Court and otherwise Paragraph 23 is denied.

25. Paragraph 24 and all subparagraphs thereof are denied.

26. Paragraph 25 is denied.

27. Paragraph 26 is denied.

28. Answering Paragraph 27, the Defendants will incorporate their answers to Paragraphs 1 through 26 as fully and effectually as if set forth verbatim.

29. Answering Paragraph 28, the Defendants deny that the Plaintiff is entitled to the Declaration referenced in Paragraph 28 and its subparagraphs.

30. Answering Paragraph 29, the Defendants incorporate their answers to Paragraphs 1 through 28 as fully and effectually as if set forth verbatim.

31. Paragraph 30 is denied.

32. Answering Paragraph 31, the Defendants admit only that Brenda Spearman had a pecuniary interest in policies of insurance procured through her agency, but otherwise Paragraph 31 is denied.

33. Answering Paragraph 32, the Defendants would show that the existence of any duty is a matter of law to be determined by the Court and the remaining allegations in Paragraph 32 are denied.

34. Paragraph 33 is denied.

35. Paragraph 34 is denied.

36. Except as is specifically admitted, each and every allegation in the Complaint and in the prayer of the Complaint is denied.

## FOR A SECOND DEFENSE

37. The Complaint fails to set forth facts sufficient to constitute a cause of action.

## FOR A THIRD DEFENSE

38. The Plaintiff's assignor was negligent, reckless, grossly negligent, willful and wanton in disregarding notices of payments needed to maintain the policy in effect, in failing to make payments to maintain coverage, in failing to take steps to defend the lawsuit against Victor Goode, in failing to accept an Offer of Judgment of $200,000 and in failing to cooperate with State Farm's investigation and this negligence, recklessness, gross negligence, willfulness and wantonness exceeded that of the Defendants and the Plaintiff is barred from any recovery by virtue of the comparative negligence of the Plaintiff's assignor.

## FOR A FOURTH DEFENSE

39. State Farm properly cancelled the policy of the Plaintiff's assignor prior to the accident and as a result the policy was not in effect at the time of the accident.

## FOR A FIFTH DEFENSE

40. Any award of punitive damages under the facts of this case would violate the constitutions of the United States and of the State of South Carolina.

## FOR A SIXTH DEFENSE

41. The Plaintiff's assignor failed to mitigate his damages by not accepting an Offer of Judgment of $200,000.

5

## **FOR A SEVENTH DEFENSE**

42. The Plaintiff made a claim against Auto Owners Insurance Company for uninsured motorist benefits.

43. This claim was conditioned upon there being no liability coverage for Victor Goode.

44. The Plaintiff accepted uninsured motorist benefits from Auto Owners.

45. The Plaintiff is now judicially estopped from claiming that liability coverage did exist for Victor Goode to cover his accident on December 12, 2014 with Tara Worthy.

WHEREFORE, having fully answered the Complaint, State Farm Fire and Casualty Company and Brenda Spearman demand that the Complaint be dismissed, with costs, and for such other and further relief as this Court may deem just and proper.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By:_____

Charles R. Norris
SC Bar No. 004238
E-Mail: charles.norris@nelsonmullins.com
151 Meeting Street / Sixth Floor
Post Office Box 1806 (29402-1806)
Charleston, SC 29401-2239
(843) 853-5200

Attorneys for Defendants

Charleston, South Carolina

October 26, 2016

## CERTIFICATE OF SERVICE

I, the undersigned Administrative Assistant of the law offices of Nelson Mullins Riley & Scarborough LLP, attorneys for Defendants, do hereby certify that I have served all counsel in this action with a copy of the pleading(s) herein below specified by mailing a copy of the same by United States Mail, postage prepaid, to the following address(es):

Pleadings:                **DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT**

Counsel Served:

> W. Hugh McAngus, Jr.
> Post Office Box 12330
> Columbia, SC 29211

*Attorneys for Plaintiff*

_____
Grace Hamill
Administrative Assistant

October 26, 2016

FILED FOR RECORD
2016 OCT 28 AM 10 17
CLERK OF COURT
UNION, SC

STATE OF SOUTH CAROLINA    )
                            )    IN THE COURT OF COMMON PLEAS
COUNTY OF UNION             )    JUDICIAL CIRCUIT

Magie Worthy, as Personal          )    Civil Action No.  2016-CP-44-384
Representative of the Estate of Tara )
Shavone Worthy, and as Assignee of  )
Victor Goode and Stephanie Goode,   )
                                    )        **ANSWER**
                    Plaintiff,      )
                                    )
        vs.                         )
                                    )    **Jury Trial Requested**
State Farm Fire and Casualty Company )
and Brenda Spearman,                )
                                    )
                    Defendant.      )
_____ )

The Defendants State Farm Fire and Casualty Company ("State Farm") and Brenda Spearman answer the Plaintiff's Complaint as follows:

### FOR A FIRST DEFENSE

1.    Answering the "Summary of the Case" on pages 1 and 2 of the Complaint, the Defendants admit that this lawsuit concerns the issue of insurance coverage for a claim by Maggie Worthy against Victor Goode, that that lawsuit concerned a December 12, 2014 accident, that Worthy sued Goode in Civil Action No. 2015-CP-44-118, that State Farm did not defend Worthy's lawsuit against Goode because no insurance policy was in effect at the time of the accident, and that State Farm did not pay the policy limits because no policy was in effect at the time of Goode's accident on December 12, 2014, but the Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the "Summary of the Case" and deny those allegations, and the Defendants further deny any duty to defend and settle the lawsuit against Victor Goode because no insurance coverage was in place at the time of Goode's accident.

2.    Answering Paragraph number 1, the Defendants are without knowledge or information sufficient to form a belief as to the truth of this Paragraph and, therefore, Paragraph 1 is denied.

3.    Answering Paragraph 2, the Defendants admit Brenda Spearman is a resident of the State of South Carolina and that she is an agent for State Farm, but the remaining allegations in Paragraph 2 are denied.

4.    Paragraph 3 is admitted.

5.    Answering Paragraph 4, the Defendants refer to the underlying lawsuit and judgment in Union County, but the Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 4 and, therefore, those allegations are denied.

6.    Answering Paragraph 5, the Defendants would show that personal jurisdiction, subject matter jurisdiction and venue are matters of law to be determined by the Court and otherwise Paragraph 5 is denied.

7.    Answering Paragraph 6, the Defendants incorporate their answers to Paragraphs 1 through 5 as fully and effectually as if set forth verbatim.

8.    Answering Paragraph 7, the Defendants refer to the policy for the policy number, amounts of coverage and the insured vehicle and, to the extent the allegations in Paragraph 7 contradict the terms of the policy, Paragraph 7 is denied and the remaining allegations in Paragraph 7 are denied.

9.    Answering Paragraph 8, the Defendants admit that the policy was procured through Brenda Spearman's agency, but the remaining allegations in Paragraph 8 are denied.

10.    The Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 and, therefore, those allegations are denied.

2

11.  Answering Paragraph 10, the Defendants deny that an agent owes a duty of good faith and fair dealing implied into an insurance policy to which the agent is not a party and the Defendants would further show that the existence of duties are matters of law to be determined by the Court and otherwise Paragraph 10 is denied.

12.  Answering Paragraph 11, the Defendants refer to Exhibit 3 to the Complaint and, to the extent the allegations in Paragraph 11 contradict Exhibit 3 to the Complaint, Paragraph 11 is denied and otherwise Paragraph 11 is denied.

13.  Paragraph 12 is denied.

14.  Paragraph 13 is denied.

15.  Paragraph 14 is denied.

16.  Paragraph 15 is denied.

17.  Answering Paragraph 16, the Defendants incorporate their answers to Paragraphs 1 through 15 as fully and effectually as if set forth verbatim.

18.  Answering Paragraph 17, the Defendants refer to the contract of insurance for the contractual obligations set forth therein, the Defendants specifically deny any contract of insurance between Stephanie Goode and Brenda Spearman and the remaining allegations in Paragraph 17 are denied.

19.  Paragraph 18 is denied.

20.  Paragraph 19 is denied.

21.  Paragraph 20 is denied.

22.  Answering Paragraph 21, the Defendants refer to the confession of judgment which is Exhibit 2 to the Complaint and otherwise Paragraph 21 is denied.

3

23. Answering Paragraph 22, the Defendants incorporate their answers to Paragraphs 1 through 21 as fully and effectually as if set forth verbatim.

24. Answering Paragraph 23, the Defendants would show that any duties are matters of law to be determined by the Court and otherwise Paragraph 23 is denied.

25. Paragraph 24 and all subparagraphs thereof are denied.

26. Paragraph 25 is denied.

27. Paragraph 26 is denied.

28. Answering Paragraph 27, the Defendants will incorporate their answers to Paragraphs 1 through 26 as fully and effectually as if set forth verbatim.

29. Answering Paragraph 28, the Defendants deny that the Plaintiff is entitled to the Declaration referenced in Paragraph 28 and its subparagraphs.

30. Answering Paragraph 29, the Defendants incorporate their answers to Paragraphs 1 through 28 as fully and effectually as if set forth verbatim.

31. Paragraph 30 is denied.

32. Answering Paragraph 31, the Defendants admit only that Brenda Spearman had a pecuniary interest in policies of insurance procured through her agency, but otherwise Paragraph 31 is denied.

33. Answering Paragraph 32, the Defendants would show that the existence of any duty is a matter of law to be determined by the Court and the remaining allegations in Paragraph 32 are denied.

34. Paragraph 33 is denied.

35. Paragraph 34 is denied.

36. Except as is specifically admitted, each and every allegation in the Complaint and in the prayer of the Complaint is denied.

### FOR A SECOND DEFENSE

37. The Complaint fails to set forth facts sufficient to constitute a cause of action.

### FOR A THIRD DEFENSE

38. The Plaintiff's assignor was negligent, reckless, grossly negligent, willful and wanton in disregarding notices of payments needed to maintain the policy in effect, in failing to make payments to maintain coverage, in failing to take steps to defend the lawsuit against Victor Goode, in failing to accept an Offer of Judgment of $200,000 and in failing to cooperate with State Farm's investigation and this negligence, recklessness, gross negligence, willfulness and wantonness exceeded that of the Defendants and the Plaintiff is barred from any recovery by virtue of the comparative negligence of the Plaintiff's assignor.

### FOR A FOURTH DEFENSE

39. State Farm properly cancelled the policy of the Plaintiff's assignor prior to the accident and as a result the policy was not in effect at the time of the accident.

### FOR A FIFTH DEFENSE

40. Any award of punitive damages under the facts of this case would violate the constitutions of the United States and of the State of South Carolina.

### FOR A SIXTH DEFENSE

41. The Plaintiff's assignor failed to mitigate his damages by not accepting an Offer of Judgment of $200,000.

5

## FOR A SEVENTH DEFENSE

42. The Plaintiff made a claim against Auto Owners Insurance Company for uninsured motorist benefits.

43. This claim was conditioned upon there being no liability coverage for Victor Goode.

44. The Plaintiff accepted uninsured motorist benefits from Auto Owners.

45. The Plaintiff is now judicially estopped from claiming that liability coverage did exist for Victor Goode to cover his accident on December 12, 2014 with Tara Worthy.

WHEREFORE, having fully answered the Complaint, State Farm Fire and Casualty Company and Brenda Spearman demand that the Complaint be dismissed, with costs, and for such other and further relief as this Court may deem just and proper.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By:_____
Charles R. Norris
SC Bar No. 004238
E-Mail: charles.norris@nelsonmullins.com
151 Meeting Street / Sixth Floor
Post Office Box 1806 (29402-1806)
Charleston, SC  29401-2239
(843) 853-5200

Attorneys for Defendants

Charleston, South Carolina

October 26, 2016

6

# CERTIFICATE OF SERVICE

I, the undersigned Administrative Assistant of the law offices of Nelson Mullins Riley & Scarborough LLP, attorneys for Defendants, do hereby certify that I have served all counsel in this action with a copy of the pleading(s) herein below specified by mailing a copy of the same by United States Mail, postage prepaid, to the following address(es):

Pleadings:                **DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT**

Counsel Served:

W. Hugh McAngus, Jr.
Post Office Box 12330
Columbia, SC 29211

*Attorneys for Plaintiff*

_____
Grace Hamill
Administrative Assistant

October 26, 2016

FILED FOR RECORD
2016 OCT 28   AM 10 17
CLERK OF COURT
UNION, SC

# Nelson
# Mullins

**Nelson Mullins Riley & Scarborough LLP**
Attorneys and Counselors at Law
151 Meeting Street / Sixth Floor / Charleston, SC 29401-2239
Tel: 843.853.5200  Fax: 843.534.4352
www.nelsonmullins.com

Charles R. Norris
Tel: 843.534.4303
Fax: 843.534.4352
charles.norris@nelsonmullins.com

March 21, 2017

**Via Electronic Mail**
The Honorable John C. Hayes, III
Moss Justice Center, 2nd Floor
1675-1H York Highway
York, SC 29745-7434

RE:    Magie Worthy, as Personal Representative of the Estate of Tara Shavone
       Worthy, and as Assignee of Victor Goode and Stephanie Goode v. State Farm
       Fire and Casualty Company and Brenda Spearman
       Civil Action No. 2016-CP-44-0384
       Corporate File No. 2016-19779-SC
       Our File No. 00500/03456

Dear Judge Hayes:

I am planning a family vacation out of state in late July and into August and would appreciate protection from Monday, July 24, 2017 through Friday, August 18, 2017. By copy of this letter to all other counsel of record I am notifying them of this request and am asking that they notify me immediately if they have any objection to this request for protection.

Judge Hayes, if a formal order of protection is needed please let me know and I will send one to the Court.

Very truly yours,

Charles R. Norris

CRN:gh

cc:    W. Hugh McAngus, Jr.

*With offices in California, Colorado, District of Columbia, Florida, Georgia, Massachusetts, New York, North Carolina, South Carolina, Tennessee, and West Virginia*

STATE OF SOUTH CAROLINA
COUNTY OF UNION

IN THE COURT OF COMMON PLEAS

## NOTICE OF ADR

Magie Worthy As Pr
Tara Shavone Worthy Estate of
Magie Worthy Assignee of

2016CP4400384

**PLAINTIFF(S)**

Filing Date: September 27, 2016

**Vs**

State Farm Fire And Casualty Company
Brenda Spearman

**DEFENDANT(S)**

Pursuant to the South Carolina Alternative Dispute Resolution Rules (SCADR), you are required to participate in the following methods of Alternative Dispute Resolution (ADR): mediation or arbitration (binding or non-binding); on or before 300 days from the date of filing of this action. The parties have a right to mutually agree upon the form of ADR and a neutral person(s) to conduct that ADR process. In the event the parties are unable to agree upon the form of ADR, the court hereby designates mediation as the default process of ADR. In the event the parties are unable to agree upon a mediator, the court hereby appoints

David Hill Keller, PO Box 9037, , Greenville, SC 29604-9037, Phone (864) 552-4622

to serve as mediator. In the event the aforementioned mediator has a conflict of interest or is unable to serve, the alternate mediator is

Scott Franklin Talley, 134 Oakland Avenue, , Spartanburg, SC 29302, Phone (864) 595-2966

The parties and/or their lawyers shall contact the court-appointed mediator directly regarding scheduling and payment of the court-mandated fee.

A Rule to Show Cause why sanctions should not be imposed may be issued in all cases that fail to file a Proof of ADR or Exemption form indicating evidence of participation in or exemption from an ADR process within 300 days from the date of filing of the action or 90 days from the date of this notice August 29, 2017.

Date: May 30, 2017

*Melanie L. Lawson /ilrw*

**CLERK OF COURT**

Notice of this Order was given by facsimile transmission, or if no fax number is shown, by first class mail or email to the attorneys of record on May 30, 2017

**Clerk's Initials** *MXX / ilrw*

**Plaintiff Attorney:**
William Hugh McAngus Jr.
PO Box 12330
Suite 300
Columbia, SC 29211

**Defendant Attorney:**
Charles R. Norris
PO Box 1806
Charleston, SC 29402

ADR Coordinator
Iris Whisnant
(864) 429-1630
(864) 429-1715
iwhisnant@countyofunion.com

CP18
SCADR 102 (11/2012)

| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| COUNTY OF UNION | ) | |

|  | ) | Civil Action No. 2016-CP-44-384 |
|---|---|---|
| Magie Worthy, as Personal Representative of the Estate of Tara Shavone Worthy, and as Assignee of Victor Goode and Stephanie Goode, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | **MOTION AND ORDER INFORMATION** |
| | ) | **FORM AND COVER SHEET** |
| vs. | ) | |
| State Farm Fire and Casualty Company and Brenda Spearman, | ) ) ) | |
| Defendants. | ) | |

| **Plaintiff's Counsel:** | **Defendant's Counsel:** |
|---|---|
| William Hugh McAngus Jr. | Charles R. Norris |
| Chappell Smith & Arden | Nelson Mullins Riley & Scarborough LLP |
| 1510 Calhoun St. | 151 Meeting Street, Suite 600 |
| Columbia, SC 29201 | Charleston, SC 29401 |
| Phone: (803) 929-3600 | Phone: (843) 853-5200 |
| Email: hmcangus@csa-law.com | Fax: (843) 534-4392 |
| | Email: charles.norris@nelsonmullins.com |

☒ **MOTION HEARING REQUESTED (attach written motion and complete SECTIONS I and III)**
☐ FORM MOTION, NO HEARING REQUESTED (complete SECTIONS II and III)
☐ PROPOSED ORDER/CONSENT ORDER (complete SECTIONS II and III)

**SECTION I: Hearing Information**

Nature of Motion: **MOTION FOR SUMMARY JUDGMENT**
Estimated Time Needed: 30 min.                Court Reporter Needed: ☒ Yes / ☐ No

**SECTION II: Motion Type**

☒ Written motion attached
☐ Form Motion—I hereby move for relief or action by the court as set forth in the attached proposed order.

_Ch. R. No_____          **July 24, 2017**
Signature of Attorney for ☐ Plaintiff/☒ Defendant          Date submitted

**SECTION III: Motion Fee**

☒ **PAID—AMOUNT: $25.00**
☐ EXEMPT:          ☐ Rule to Show Cause in Child or Spousal Support
(check reason)    ☐ Domestic Abuse or Abuse and Neglect
                  ☐ Indigent Status                         ☐ State Agency v. Indigent Party
                  ☐ Sexually Violent Predator Act           ☐ Post-Conviction Relief
                  ☐ Motion for Stay in Bankruptcy
                  ☐ Motion for Publication                  ☐ Motion for Execution (Rule 69, SCRCP)
                  ☐ Proposed order submitted at request of the court; or,
                    reduced to writing from motion made in open court per judge's instructions
                    Name of Court Reporter: _____
                  ☐ Other: _____

| **JUDGE'S SECTION** | |
|---|---|
| ☐ Motion Fee to be paid upon filing of the attached order. | JUDGE |
| ☐ Other: | CODE: _____  Date: _____ |

**CLERK'S VERIFICATION**

Collected by: S. Cousino
(print name)

☒ MOTION FEE COLLECTED: $25

DATE FILED
7-26-2017

FILED FOR RECORD
2017 JUL 26 AM 11 24
CLERK OF COURT
UNION SC

STATE OF SOUTH CAROLINA          )        IN THE COURT OF COMMON PLEAS
                                 )              JUDICIAL CIRCUIT
COUNTY OF UNION                  )

Magie Worthy, as Personal        )        Civil Action No.  2016-CP-44-384
Representative of the Estate of Tara )
Shavone Worthy, and as Assignee of )
Victor Goode and Stephanie Goode, )
                                 )
                    Plaintiff,   )        **DEFENDANTS' MOTION FOR**
                                 )        **SUMMARY JUDGMENT**
          vs.                    )
                                 )
State Farm Fire and Casualty Company )
and Brenda Spearman,             )
                                 )
                    Defendant.   )

Pursuant to SCRCP 56 the Defendants move for summary judgment on the following grounds:

1. As to the first cause of action alleging bad faith against State Farm Fire and Casualty Company (State Farm), State Farm is entitled to summary judgment because:

    a. At the time of the accident in question – December 12, 2014 – no contract of insurance existed between State Farm and Stephanie Goode because prior to that date the policy had been cancelled;

    b. State Farm had a reasonable basis for denying coverage for the December 12, 2014 accident.

2. As to the second cause of action alleging breach of contract against State Farm, no contract of insurance was in existence on the date of the accident – December 12, 2014 – because prior to that date the policy was cancelled. Because it is impossible to

breach a contract which is no longer in existence, State Farm is entitled to summary judgment on the Plaintiff's second cause of action alleging breach of contract.

3. As to the third cause of action alleging "negligence/professional negligence" against all Defendants, the Defendants are entitled to summary judgment because:

    a. No special relationship existed between Stephanie Goode or Victor Goode and either Defendant;

    b. The duty of good faith and fair dealing is inapplicable to one who is not a party to the contract of insurance such as, for example, an insurance agent. St. Paul Fire and Marine v. Carolina Bank and Trust, 310 S.E. 2d 163 (S.C. App. 1983);

    c. The Defendant Spearman had no duty to offer advice to either Stephanie or Victor Goode and, in any event, only Victor Goode has a judgment against him but he had no relationship with Brenda Spearman;

    d. The contract of insurance was cancelled prior to the accident for which Victor Goode sought insurance coverage;

    e. Neither Defendant made any representations to Victor Goode or to Stephanie Goode about coverage or defense of the lawsuit against Victor Goode and, in any event, Stephanie Goode had no damages to assign to the Plaintiff as she was not sued by the Estate of Tara Worthy.

4. State Farm is entitled to summary judgment on the fourth cause of action which seeks a declaratory judgment that State Farm is liable for the judgment against Victor Goode. The ground for this motion is that on the date of Victor Goode's accident –

December 12, 2014 – no policy of insurance existed to provide coverage for the December 12, 2014 accident because the policy had been cancelled.

5. The Defendants are entitled to summary judgment on the fifth cause of action alleging negligent misrepresentation because the Defendant Spearman made no misrepresentations to Stephanie Goode that the policy was in effect as of December 12, 2014, nor did the Defendant Spearman have an independent duty to inform Stephanie Goode that her insurance policy was cancelled. Additionally, no judgment has been entered against Stephanie Goode and, consequently, Stephanie Goode has no claim against State Farm to assign to the Plaintiff. Finally, there is no evidence of any representation by Spearman to Victor Goode, or even of any relationship between Spearman and Victor Goode.

This motion is based upon the depositions of Stephanie Goode, LaToya McBeth and Victor Goode and the exhibits to those depositions, upon the affidavit of Kelly Thomas attached as Exhibit A, upon the affidavit of Arlove Perkins-Lambert attached as Exhibit B, upon the affidavit of Thomas Bass attached as Exhibit C, upon the deposition of Magie Worthy and the exhibits to that deposition and upon the certified copy of the policy under which the Plaintiff seeks coverage attached as Exhibit D.

[SIGNATURE PAGE TO FOLLOW]

3

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: _____

Charles R. Norris
SC Bar No. 004238
E-Mail: charles.norris@nelsonmullins.com
151 Meeting Street / Sixth Floor
Post Office Box 1806 (29402-1806)
Charleston, SC  29401-2239
(843) 853-5200

Attorneys for Defendants

Charleston, South Carolina

July 24, 2017

4

CERTIFICATE OF SERVICE

I, the undersigned Administrative Assistant of the law offices of Nelson Mullins Riley & Scarborough LLP, attorneys for Defendants, do hereby certify that I have served all counsel in this action with a copy of the pleading(s) herein below specified by mailing a copy of the same by electronic mail to the following address(es):

Pleadings:             **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Counsel Served:

                    W. Hugh McAngus, Jr.
                    Post Office Box 12330
                    Columbia, SC 29211
                    hugh@csa-law.com

                    *Attorneys for Plaintiff*

                    Grace Hamill
                    Administrative Assistant

July 24, 2017

# Nelson
# Mullins

**Nelson Mullins Riley & Scarborough LLP**
Attorneys and Counselors at Law
151 Meeting Street / Sixth Floor / Charleston, SC 29401-2239
Tel: 843.853.5200 Fax: 843.720.4352
www.nelsonmullins.com

Charles R. Norris
Tel: 843.720.4303
Fax: 843.720.4352
charles.norris@nelsonmullins.com

July 24, 2017

The Honorable June Miller
Union County Clerk of Court
210 West Main Street
Union, SC 29379

RE:    Magie Worthy, as Personal Representative of the Estate of Tara Shavone
       Worthy, and as Assignee of Victor Goode and Stephanie Goode v. State Farm
       Fire and Casualty Company and Brenda Spearman
       Civil Action No. 2016-CP-44-0384
       Corporate File No. 2016-19779-SC
       Our File No. 00500/03456

Dear Ms. Miller:

Please find enclosed for filing the original and one (1) copy of the Defendants' Motion for
Summary Judgmnet in the above-referenced matter. We would appreciate your filing the original
and returning the clocked-in copy to our office via the self-addressed, postage paid envelope
provided. Please do not hesitate to contact me should you have any questions or concerns.

By copy of this letter to counsel for the Plaintiff we are serving him with a copy of the Motion
for Summary Judgment.

Very truly yours,

*CR. R. Norris*

Charles R. Norris

CRN:ghamill
Enclosure

cc:    W. Hugh McAngus, Jr. (*via e-mail w/ enclosure*)

# EXHIBIT A

STATE OF SOUTH CAROLINA            )
                                   )   IN THE COURT OF COMMON PLEAS
COUNTY OF UNION                    )   JUDICIAL CIRCUIT
                                   )
Magie Worthy, as Personal          )   Civil Action No. 2016-CP-44-384
Representative of the Estate of Tara )
Shavone Worthy, and as Assignee of )
Victor Goode and Stephanie Goode,  )
                                   )
                    Plaintiff,     )   **AFFIDAVIT OF KELLY D. THOMAS**
                                   )
        vs.                        )
                                   )
State Farm Fire and Casualty Company )
and Brenda Spearman,               )
                                   )
                    Defendant.     )

Personally appeared before me, Kelly D. Thomas, who, being duly sworn, deposes and says that:

1.    I am over the age of 21, I am of sound mind and I am personally knowledgeable about the contents of this affidavit.

2.    I am employed by State Farm Mutual Automobile Insurance Company ("State Farm") and I have been employed with State Farm since May 1988. My current position with State Farm is Technical Specialist. My employment as a Technical Specialist with State Farm involves servicing accounts for State Farm Payment Plan ("SFPP").

3.    SFPP is the billing department for State Farm (and also for policies issued by State Farm Fire & Casualty Company) for auto policies, fire policies, life policies and health policies. The SFPP is a method of billing the customer on a monthly basis. For auto policies, those customers not making payments under SFPP are required to pay the six month premium for insurance in advance of the six month period of coverage. The SFPP allows the customer to make these payments on a monthly basis.

4.    Payments through SFPP can be made by bank draft, by debit from an account or by electronic funds transfer.

5.    Latoya McBeth was an account holder under SFPP with Account Number 1305-6518-27.  Under this account payments were made through SFPP to pay premiums on three policies on three cars  - a 2008 Chevrolet, a 2008 Honda and a 2006 Ford.

6.    According to records of SFPP, on September 10, 2014 SFPP applied Latoya McBeth's payment of $319.29.  This payment was for insurance on the 2008 Chevrolet and the 2008 Honda. SFPP's records show a payment of $314.46 applied on October 6, 2014. This payment was also for insurance on the 2008 Chevrolet and the 2008 Honda.

7.    On October 7, 2014 the named insured, Stephanie Goode, requested that a third vehicle – a 2006 Ford – be added to the SFPP account.  This addition of the 2006 Ford resulted in an additional premium of $426.98.  This additional premium resulted in an amount due to SFPP for insurance on all three cars of $1,216.17.  As of October 28, 2014 these payments had not been made and on October 28, 2014 State Farm issued a past due notice to the named insured and to the account holder.

8.    On November 17, 2014 a payment of $535 was attempted but it was returned November 19, 2014 because the bank upon which this payment was made returned the payment to SFPP.  On November 20, 2014 another payment of $535 was made to replace the returned payment.

9.    The payment of $535 was processed on November 20, 2014.  This payment, however, still left an amount owed on the three policies of $650.60.

10.    Because the amount owed on the past due notice sent in late October 2014 - $1,720.60 – had not been paid, State Farm issued a cancellation notice on November 21, 2014.  This

2

cancellation notice was sent to both Latoya McBeth and to Stephanie Goode at 130 Rowell Lane in Union, South Carolina. A copy of these cancellation notices is attached as Exhibit A to this affidavit.

11. Cancellation notices are mailed to the insured and to the account holder with a return address. If the United States Postal Service does not deliver the cancellation notices and the cancellation notices are returned to State Farm, State Farm will have a record that the cancellation notices were returned. State Farm has no record that the cancellation notices mailed to Latoya McBeth and to Stephanie Goode on November 21, 2014 were returned by the U.S. Postal Service as not having been delivered.

12. From the date of the cancellation notice sent to Latoya McBeth and Stephanie Goode on November 21, 2014 to 12:01 a.m. on December 11, 2014, State Farm received no further payment from either Latoya McBeth or Stephanie Goode. Consequently, the policies on all three cars cancelled at 12:01 a.m. on December 11, 2014 as stated in the cancellation notices attached as Exhibit A.

13. On December 13, 2014 the records of SFPP show that someone went to the State Farm agent's office and made a payment of $656.60 to the agent. This payment was applied by SFPP on December 15, 2014. As a result of that payment, a reinstatement notice, a copy of which is attached as Exhibit B to this affidavit, was sent to Stephanie Goode. The reinstatement notice stated that there was no coverage between the date and time of cancellation which was December 11, 2014 at 12:01 a.m., and the date and time of reinstatement which was December 13, 2014. Consequently, there was no coverage in place on the 2006 Ford on December 12, 2014.

_____

KELLY D. THOMAS

Sworn to and subscribed before me

3

this 14 day of July, 2017.

Notary Public for _Tennessee_
My commission expires: 12/2/2018

VIVIAN T. JOHNSON
STATE
OF
TENNESSEE
NOTARY
PUBLIC
DeKALB COUNTY

**CANCELLATION NOTICE**    NON-PAYMENT OF PREMIUM

STATE FARM PAYMENT PLAN
PO Box 44110
Jacksonville FL 32231-4110

| ACCOUNT NUMBER | 1305-6518-27 |
| Monthly Account | |

4295    1305-6518-27    40
AT1    1915-FA21
004295  0023
MCBETH, LATOYA
130 ROWELL LN
UNION SC  29379-8086

| NOTICE SENT | DUE BEFORE | AMOUNT DUE |
|---|---|---|
| NOV 21, 2014 | DEC 1, 2014 | $650.60 |

THIS IS THE ONLY CANCELLATION NOTICE YOU WILL RECEIVE.

We noticed one or more of your payments has been late. Please pay this notice timely to avoid a lapse in coverage. As always, you can contact your agent with questions or to discuss additional billing and payment options at State Farm.

### POLICY CANCELLATION INFORMATION

State Farm Fire and Casualty Company

| NAME | POLICY NUMBER | DESCRIPTION | CANCEL DATE | BALANCE DUE |
|---|---|---|---|---|
| GOODE, STEPHANIE | 513 7895-C26-40 | 2006 FORD | DEC 11, 2014 | $1,017.50 |
| GOODE, STEPHANIE | 486 3049-B01-40 | 2008 HONDA | DEC 11, 2014 | $399.88 |
| GOODE, STEPAHNIE | 486 3048-B01-40 | 2008 CHEVROLET | DEC 11, 2014 | $483.14 |

We have not received the payments required to keep these policies in force. In accordance with the cancellation provisions, your policies identified in this notice are hereby canceled effective 12:01 A.M. standard time on the cancellation date specified due to non-payment of the premium.

This notice shall be void and ineffective if payment of the amount due is made to us, your agent, or the licensed premium service company, if any shown on this notice, on or before the effective date of cancellation shown above. Please forward the total amount due immediately. Payment by the cancellation date will provide uninterrupted coverage. If paid after that date and time, you will be informed whether your policy has been reinstated and if so, the exact date and time of reinstatement. There is no coverage between the date and time of cancellation and the date and time of reinstatement.

ACCOUNTHOLDER COPY

Brenda Spearman
864-279-1900

93 5598 7945

Account #    1305-6518-27
Prepared Date NOV 20 2014

IF YOU HAVE MOVED, PLEASE CONTACT YOUR AGENT.

| NAME | MCBETH, LATOYA |

ACCOUNT NUMBER    1305-6518-27 Monthly Account

PLEASE RETURN THIS PART WITH YOUR CHECK MADE PAYABLE TO STATE FARM.

| DUE BEFORE | AMOUNT DUE |
|---|---|
| DEC 11, 2014 | $650.60 |

Please disregard this notice if payment has been made. Payment required to continue your insurance has not been received. Please pay the full amount due. THIS IS THE ONLY CANCELLATION NOTICE YOU WILL RECEIVE.

2709412104
Insurance Support Center
P.O. Box 588002
North Metro, GA 30029-8002

EXHIBIT A

(o1s061so)    (o1b081ss)
Prepared NOV 20 2014    04593  00  1915-FA21    40  ACCOUNTHOLDER COPY

SFPP Cancel    $650.60    1210

A01

400434400065060    800130565182711327>

**FOR AUTOMOBILE INSURANCE POLICIES**
**IMPORTANT INFORMATION**

Other insurance may be available through your agent, through another insurer, or through the South Carolina Associated Auto Insurers Plan. Please see your State Farm agent or any licensed South Carolina insurance agent for details. The Department of Insurance can provide you with a buyer's guide regarding automobile insurance availability. To obtain a copy, call the Department toll free at 1-800-768-3467, 803-737-6160, or write to the South Carolina Department of Insurance, 1201 Main Street, Suite 1000, Columbia, SC 29201, or P.O. Box 100105, Columbia, South Carolina 292023105.

IMPORTANT NOTICE: Within fifteen days of receiving this notice, you or your attorney may request in writing that the director review this action to determine whether the insurer has complied with South Carolina laws in canceling or nonrenewing your policy. If this insurer has failed to comply with the cancellation or nonrenewal laws, the director may require that your policy be reinstated. However, the director is prohibited from making underwriting judgments. If this insurer has complied with the cancellation or nonrenewal laws, the director does not have the authority to overturn this action.

---

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

107649.1  05-18-2011  (s1508116)              *For Office Use Only*

STATE FARM PAYMENT PLAN
PO Box 44110
Jacksonville FL 32231-4110

AT1                4296        1305-6518-27    40
               004296  0023        1915-FA21
GOODE, STEPHANIE
130 ROWELL LN
UNION SC   29379-8086

**CANCELLATION NOTICE**    NON-PAYMENT OF PREMIUM

| ACCOUNT NUMBER | 1305-6518-27 | Page 1 |
|---|---|---|
| Monthly Account | | |

| NOTICE SENT | DUE BEFORE | AMOUNT DUE |
|---|---|---|
| NOV 21, 2014 | SEE BELOW | SEE BELOW |

THIS IS THE ONLY CANCELLATION NOTICE YOU WILL RECEIVE.
Note: A cancellation was also sent to the Payment
Plan accountholder who is responsible for
payment of this account. This is your notice
of cancellation.

## POLICY CANCELLATION INFORMATION

### State Farm Fire and Casualty Company

| NAME | POLICY NUMBER | DESCRIPTION | CANCEL DATE | BALANCE DUE |
|---|---|---|---|---|
| GOODE, STEPHANIE | 513 7895-C26-40 | 2006 FORD | DEC 11, 2014 | $1,017.50 |
| GOODE, STEPHANIE | 486 3049-B01-40 | 2008 HONDA | DEC 11, 2014 | $399.88 |
| GOODE, STEPAHNIE | 486 3048-B01-40 | 2008 CHEVROLET | DEC 11, 2014 | $483.14 |

We have not received the payments required to keep these policies in force. In accordance with the cancellation provisions, your policies identified in this notice are hereby canceled effective 12:01 A.M. standard time on the cancellation date specified due to non-payment of the premium.

This notice shall be void and ineffective if payment of the amount due is made to us, your agent, or the licensed premium service company, if any shown on this notice, on or before the effective date of cancellation shown above. Please forward the total amount due immediately. Payment by the cancellation date will provide uninterrupted coverage. If paid after that date and time, you will be informed whether your policy has been reinstated and if so, the exact date and time of reinstatement. There is no coverage between the date and time of cancellation and the date and time of reinstatement.

### POLICYHOLDER COPY

Brenda Spearman
864-279-1900

 93 5598 7946

Account #    1305-6518-27
Prepared Date  NOV 20 2014

IF YOU HAVE MOVED, PLEASE CONTACT YOUR AGENT.

NAME        GOODE, STEPHANIE

ACCOUNT NUMBER    1305-6518-27 Monthly Account

PLEASE RETURN THIS PART WITH YOUR
CHECK MADE PAYABLE TO STATE FARM.

| DUE BEFORE | AMOUNT DUE |
|---|---|

Please disregard this notice if payment has been
made. Payment required to continue your insurance
has not been received. Please pay the full amount
due. THIS IS THE ONLY CANCELLATION NOTICE
YOU WILL RECEIVE.

2709412104
Insurance Support Center
P.O. Box 588002
North Metro, GA 30029-8002

(01c061ac)

04594  00  1915-FA21    40  POLICYHOLDER COPY

Prepared NOV 20 2014

SFPP Cancel    SEE BELOW    1210

A02

**FOR AUTOMOBILE INSURANCE POLICIES**
**IMPORTANT INFORMATION**

Other insurance may be available through your agent, through another insurer, or through the South Carolina Associated Auto Insurers Plan. Please see your State Farm agent or any licensed South Carolina insurance agent for details. The Department of Insurance can provide you with a buyer's guide regarding automobile insurance availability. To obtain a copy, call the Department toll free at 1-800-768-3467, 803-737-6160, or write to the South Carolina Department of Insurance, 1201 Main Street, Suite 1000, Columbia, SC 29201, or P.O. Box 100105, Columbia, South Carolina 292028105.

IMPORTANT NOTICE: Within fifteen days of receiving this notice, you or your attorney may request in writing that the director review this action to determine whether the insurer has complied with South Carolina laws in canceling or nonrenewing your policy. If this insurer has failed to comply with the cancellation or nonrenewal laws, the director may require that your policy be reinstated. However, the director is prohibited from making underwriting judgments. If this insurer has complied with the cancellation or nonrenewal laws, the director does not have the authority to overturn this action.

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

107049.1 05-18-2011 (o1b081fs)                    *For Office Use Only*

o1y2014a

B01

**StateFarm** State Farm Fire and Casualty Company
11350 Johns Creek Parkway
Duluth GA 30098



AT1
089231  0015
GOODE, STEPHANIE
130 ROWELL LN
UNION SC  29379-8086

5Q7A -1915  A

IIₒIₗIₒIIIₒₒIIIₗₗIIIₗIₗIₗIₗIIIₗₒₒIᵢₚₑₘIᵢIIₗᵢIIₗIᵢIₗₚ

# REINSTATEMENT NOTICE

54347-5-A    Auto SFPP

| POLICY NUMBER | 513 7895-C26-40 |
|---|---|
| REINSTATEMENT DATE | DEC 13 2014 |
| NOTICE SENT | DEC 17 2014 |
| AMOUNT PAID | STATE FARM PAY PLAN |

Year    Make        Class
2005    FORD        1030141200
MUSTANG
VIN     1ZVFT80N955222217

*PLEASE KEEP FOR YOUR RECORDS*

Your policy is hereby reinstated effective DEC 13 2014 12:01
A.M. Standard Time.  Note that the Reinstatement Date is after
the DEC 11 2014 Cancellation Date.  Therefore there is no
coverage between the date and time of Cancellation and the
date and time of Reinstatement.

Agent:  BRENDA SPEARMAN
Telephone:  (864)279-1900

01828     121053.10 02-28-2014 (o1a0641g)

R99


EXHIBIT
B

# EXHIBIT B

STATE OF SOUTH CAROLINA        )        IN THE COURT OF COMMON PLEAS
                               )
COUNTY OF UNION                )
                               )
Magie Worthy, as Personal      )        Civil Action No.  2016-CP-44-384
Representative of the Estate of Tara   )
Shavone Worthy, and as Assignee of    )
Victor Goode and Stephanie Goode,     )
                               )
                    Plaintiff,  )        **AFFIDAVIT**
                               )
        vs.                    )
                               )
State Farm Fire and Casualty Company  )
and Brenda Spearman,           )
                               )
                    Defendant.  )

---

Personally appeared before me, Arlove Perkins-Lambert who, being duly sworn, deposes and says that:

1.     I am over the age of 21 and I am otherwise competent to make this Affidavit. All of the facts contained in this affidavit are true and correct and are within my personal knowledge.

2.     I am currently a PIM ("Printing Inserting and Mailing") Supervisor at the Insurance Support Center ("ISC") in Alpharetta, Georgia, ("East") for State Farm Insurance Companies ("State Farm") and have been in this position since May 12, 2014. The responsibilities of the PIM Center include printing, inserting and preparing customer notices for mailing, such as billings, policy issuances, policy renewals, policy expirations, and non-pay cancellations for State Farm Insurance Companies in selected states. As part of my job duties, I supervise the production assembly of these policyholder notices within the ISC East PIM Center.

3.    Customer notices for policyholders residing in the State of South Carolina are processed at the ISC East PIM site. Among these notices would be State Farm Payment Plan (SFPP) Non-Pay Cancellation Notices.

4.    Two SFPP Non-Pay Cancellation Notices were produced from Systems processing on Thursday, November 20, 2014, for Accountholder Latoya McBeth and Policyholder Stephanie Goode, both of 130 Roswell Lane, Union, SC 29379-8086, for SFPP Account 1305-6518-27 which was printed, inserted and sealed into a mailing envelope with First-Class Mail Permit Imprinted at ISC East PIM on Thursday, November 20, 2014, and released for mailing on Friday, November 21, 2014, in accordance with internal business practice procedures. These documents are attached as Exhibits #1 and #2.

5.    A video image of each SFPP Non-Pay Cancellation Notice sealed in its mailing envelope was captured as a part of the inserting process and itemized Certificate of Mailing, indicates the unique notice sequence numbers, #4295 & #4296, on the mailing date of November 21, 2014, for SFPP Account 1305-6518-27 addressed to Latoya McBeth and Stephanie Goode at 130 Roswell Lane, Union, SC 29379-8086 separately, were included in the batch job produced by Systems processing on Thursday, November 20, 2014, which was printed and inserted for mailing on Friday, November 21, 2014, is attached as Exhibits #3, #4, and #5 respectively.

6.    The Mailrun Summary Report, 27-00-0023, attached to this affidavit as Exhibit #6, for the November 20, 2014 process date, indicates that all 5,026 customer notices in the batch, including the SFPP Non-Pay Cancellation Notices for Latoya McBeth and Stephanie Goode, were properly processed according to internal business practice procedures, and these notices along with all mail processed, was surrendered to Pitney Bowes Presort Services on Friday,

November 21, 2014, for mail presorting and presentation to the United States Postal Service for

postal acceptance, processing and delivery.

ARLOVE PERKINS-LAMBERT

Sworn to and subscribed before me

this ___ 12 ___ day of July, 2017.

Michele Picklesimer

Notary Public for __ Georgia __

My commission expires: 7/19/17

3

STATE FARM PAYMENT PLAN
PO Box 44110
Jacksonville FL 32231-4110

4295    1305-6518-27    40
004295  0023    1915-FA21
AT1
MCBETH, LATOYA
130 ROWELL LN
UNION SC  29379-8086

**CANCELLATION NOTICE**    NON-PAYMENT OF PREMIUM

ACCOUNT NUMBER    1305-6518-27
Monthly Account

| NOTICE SENT | DUE BEFORE | AMOUNT DUE |
|---|---|---|
| NOV 21, 2014 | DEC 11, 2014 | $650.60 |

THIS IS THE ONLY CANCELLATION NOTICE YOU WILL RECEIVE.

We noticed one or more of your payments has been late.
Please pay this notice timely to avoid a lapse in coverage.
As always, you can contact your agent with questions or to
discuss additional billing and payment options at State Farm.

## POLICY CANCELLATION INFORMATION

### State Farm Fire and Casualty Company

| NAME / POLICY NUMBER | DESCRIPTION | CANCEL DATE | BALANCE DUE |
|---|---|---|---|
| GOODE, STEPHANIE 513 7895-C26-40 | 2006 FORD | DEC 11, 2014 | $1,017.50 |
| GOODE, STEPHANIE 486 3049-B01-40 | 2008 HONDA | DEC 11, 2014 | $399.88 |
| GOODE, STEPAHNIE 486 3048-B01-40 | 2008 CHEVROLET | DEC 11, 2014 | $483.14 |

We have not received the payments required to keep these policies in force.  In accordance with the cancellation provisions, your policies identified in this notice are hereby canceled effective 12:01 A.M. standard time on the cancellation date specified due to non-payment of the premium.

This notice shall be void and ineffective if payment of the amount due is made to us, your agent, or the licensed premium service company, if any shown on this notice, on or before the effective date of cancellation shown above.  Please forward the total amount due immediately.  Payment by the cancellation date will provide uninterrupted coverage.  If paid after that date and time, you will be informed whether your policy has been reinstated and if so, the exact date and time of reinstatement.  There is no coverage between the date and time of cancellation and the date and time of reinstatement.

ACCOUNTHOLDER COPY

Brenda Spearman
864-279-1900

93 5598 7945

Account #    1305-6518-27
Prepared Date  NOV 20 2014

IF YOU HAVE MOVED, PLEASE CONTACT YOUR AGENT.

NAME    MCBETH, LATOYA

ACCOUNT NUMBER    1305-6518-27 Monthly Account

PLEASE RETURN THIS PART WITH YOUR
CHECK MADE PAYABLE TO STATE FARM.

| DUE BEFORE | AMOUNT DUE |
|---|---|
| DEC 11, 2014 | $650.60 |

Please disregard this notice if payment has been
made. Payment required to continue your insurance
has not been received. Please pay the full amount
due. THIS IS THE ONLY CANCELLATION NOTICE
YOU WILL RECEIVE.

2709412104
Insurance Support Center
P.O. Box 588002
North Metro, GA 30029-8002

EXHIBIT
1

(o1a081ad)    (o1b081aa)

04593  00  1915-FA21   40  ACCOUNTHOLDER COPY

Prepared NOV 20 2014

SFPP Cancel    $650.60    1210

A01

400434400065060   800130565182711327>

**FOR AUTOMOBILE INSURANCE POLICIES**
**IMPORTANT INFORMATION**

Other insurance may be available through your agent, through another insurer, or through the South Carolina Associated Auto Insurers Plan. Please see your State Farm agent or any licensed South Carolina insurance agent for details. The Department of Insurance can provide you with a buyer's guide regarding automobile insurance availability. To obtain a copy, call the Department toll free at 1-800-768-3467, 803-737-6160, or write to the South Carolina Department of Insurance, 1201 Main Street, Suite 1000, Columbia, SC 29201, or P.O. Box 100105, Columbia, South Carolina 292026105.

IMPORTANT NOTICE: Within fifteen days of receiving this notice, you or your attorney may request in writing that the director review this action to determine whether the insurer has complied with South Carolina law in canceling or nonrenewing your policy. If this insurer has failed to comply with the cancellation or nonrenewal laws, the director may require that your policy be reinstated. However, the director is prohibited from making underwriting judgments. If this insurer has complied with the cancellation or nonrenewal laws, the director does not have the authority to overturn this action.

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

107649.1  05-18-2011  (010081ld)            *For Office Use Only*

STATE FARM PAYMENT PLAN
PO Box 44110
Jacksonville FL 32231-4110

4296    1305-6518-27    40
AT1    004296  0023    1915-FA21
GOODE, STEPHANIE
130 ROWELL LN
UNION SC  29379-8086

|·m|·l|·|·|·|·|·n|||·|l|·l·|·|·mm·|||·l|·|m|·l·|·|m·|·|·l·l·l·l·l·l·|m

**CANCELLATION NOTICE**    NON-PAYMENT OF PREMIUM

ACCOUNT NUMBER    1305-6518-27    Page 1
Monthly Account

| NOTICE SENT | DUE BEFORE | AMOUNT DUE |
|---|---|---|
| NOV 21, 2014 | SEE BELOW | SEE BELOW |

THIS IS THE ONLY CANCELLATION NOTICE YOU WILL RECEIVE.
**Note:** A cancellation was also sent to the Payment
Plan accountholder who is responsible for
payment of this account. This is your notice
of cancellation.

POLICY CANCELLATION INFORMATION

State Farm Fire and Casualty Company

| NAME | POLICY NUMBER | DESCRIPTION | CANCEL DATE | BALANCE DUE |
|---|---|---|---|---|
| GOODE, STEPHANIE | 513 7895-C26-40 | 2006 FORD | DEC 11, 2014 | $1,017.50 |
| GOODE, STEPHANIE | 486 3049-B01-40 | 2008 HONDA | DEC 11, 2014 | $399.88 |
| GOODE, STEPAHNIE | 486 3048-B01-40 | 2008 CHEVROLET | DEC 11, 2014 | $483.14 |

We have not received the payments required to keep these policies in force. In accordance with the cancellation provisions,
your policies identified in this notice are hereby canceled effective 12:01 A.M. standard time on the cancellation date specified
due to non-payment of the premium.

This notice shall be void and ineffective if payment of the amount due is made to us, your agent, or the licensed premium
service company, if any shown on this notice, on or before the effective date of cancellation shown above. Please forward the
total amount due immediately. Payment by the cancellation date will provide uninterrupted coverage. If paid after that date and
time, you will be informed whether your policy has been reinstated and if so, the exact date and time of reinstatement. There is
no coverage between the date and time of cancellation and the date and time of reinstatement.

POLICYHOLDER COPY

Brenda Spearman
864-279-1900    93 5598 7946    Account #    1305-6518-27
Prepared Date  NOV 20 2014

IF YOU HAVE MOVED, PLEASE CONTACT YOUR AGENT.    PLEASE RETURN THIS PART WITH YOUR
CHECK MADE PAYABLE TO STATE FARM.

NAME    GOODE, STEPHANIE    DUE BEFORE    AMOUNT DUE

ACCOUNT NUMBER    1305-6518-27 Monthly Account

Please disregard this notice if payment has been
made. Payment required to continue your insurance
has not been received. Please pay the full amount
due. THIS IS THE ONLY CANCELLATION NOTICE
YOU WILL RECEIVE.

2709412104
Insurance Support Center
P.O. Box 588002
North Metro, GA 30029-8002

|||·l·|m·l·|·|·l·|·l·|·m·l·|·|·l·|·l·|·l·|·l·|·l·|·m·|·|||·l

**EXHIBIT**
**2**

(01a001ac)

04594  00  1915-FA21    40  POLICYHOLDER COPY    SFPP Cancel    SEE BELOW    1210
Prepared NOV 20 2014

A02

**FOR AUTOMOBILE INSURANCE POLICIES**
**IMPORTANT INFORMATION**

Other insurance may be available through your agent, through another insurer, or through the South Carolina Associated Auto Insurers Plan. Please see your State Farm agent or any licensed South Carolina insurance agent for details. The Department of Insurance can provide you with a buyer's guide regarding automobile insurance availability. To obtain a copy, call the Department toll free at 1-800-768-3467, 803-737-6160, or write to the South Carolina Department of Insurance, 1201 Main Street, Suite 1000, Columbia, SC 29201, or P.O. Box 100105, Columbia, South Carolina 292023105.

IMPORTANT NOTICE: Within fifteen days of receiving this notice, you or your attorney may request in writing that the director review this action to determine whether the insurer has complied with South Carolina law in canceling or nonrenewing your policy. If this insurer has failed to comply with the cancellation or nonrenewal laws, the director may require that your policy be reinstated. However, the director is prohibited from making underwriting judgments. If this insurer has complied with the cancellation or nonrenewal laws, the director does not have the authority to overturn this action.

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

107549.1  05-18-2016  (c1b0811d)                    *For Office Use Only*

city2014a

801











STATE FARM INSURANCE COMPANIES    RWZPP015 80815/MAILRUN ID 0023    AFFIX STAMP
PO BOX 44110                      PS 3877 FACSIMILE - CERTIFICATE OF MAIL LIST
JACKSONVILLE FL 32231-4110        DATE - 11/21/2014

SFPP-GEORGIA-SOUTH CAROLINA
CANCELLATION NONPAY
PAGE 351

| ACCT NUMBER | NAME AND ADDRESS, STREET, P.O. ADDRESS | FEE | AFO CODE | AGT CD |
|---|---|---|---|---|
| 4285 | | | | |
| 4286 | | | | |
| 4287 | | | | |
| 4288 | | | | |
| 4289 | | | | |
| 4290 | | | | |
| 4291 | | | | |
| 4292 | | | | |
| 4293 | | | | |
| 4294 | | | | |
| 4295 1305-6518-27 | MCBETH, LATOYA 130 ROWELL LN UNION SC 29379-8086 | $0.47 | FA21 | 1915 |
| 4296 1305-6518-27 | GOODE, STEPHANIE 130 ROWELL LN UNION SC 29379-8086 | $0.47 | FA21 | 1915 |
| 4297 | | | | |

EXHIBIT 5
tabbies

STATE FARM INSURANCE COMPANIES    RWZPP015 S0B15/MAILRUN ID 0023    AFFIX STAMP
PO BOX 44110                      PS 3877 FACSIMILE - CERTIFICATE OF MAIL LIST
JACKSONVILLE FL 32231-4110        DATE - 11/21/2014

SFPP-GEORGIA-SOUTH CAROLINA
CANCELLATION NONPAY
PAGE 388

| ACCT NUMBER | NAME AND ADDRESS, STREET, P.O. ADDRESS | FEE | AFO CODE | AGT CD |
|---|---|---|---|---|
| 5026 | | | | |

TOTAL NUMBER OF CANCELLATION NOTICES ON LISTING  5,026

TOTAL POSTAL FEES:  $2,362.22

SIGNATURE OF MAILROOM EMPLOYEE _____

TOTAL NUMBER OF CANCELLATION NONPAY NOTICES RECEIVED BY POST OFFICE  5026

SIGNATURE OF POST OFFICE EMPLOYEE _____

EXHIBIT 5

NOV 21 2014
USPS-30304
$ 999.99°

NOV 21 2014
USPS-30304
$ 362.24°

NOV 21 2014
USPS-30304
$ 999 99°

# EXHIBIT C

AFFIDAVIT OF THOMAS BASS

STATE OF GEORGIA   )
                   )
COUNTY OF FULTON   )


Thomas Bass being duly sworn, deposes and says the following to be true under penalty of perjury:

      1.      I am the General Manager of Pitney Bowes Presort Services, Inc. (formerly known as PSI Group, Inc.), in Atlanta, Georgia (hereafter "PBPS"), a wholly owned subsidiary of Pitney Bowes Inc.  I am personally familiar with the practices and procedures utilized by PBPS in regard to the mail of State Farm Insurance Company picked up by PBPS at 5295 Buffington Road, Suite 100G, Atlanta, GA 30349.

      2.      PBPS is a presort service provider that picks up the mail of State Farm Insurance Company (hereafter "State Farm"), at 3000 Marconi Drive, Alpharetta, GA 30005, transports the mail to PBPS's facility identified in paragraph 1, and presorts the mail based upon zip code (and other factors) to earn bulk rate discounts meeting United States Postal Service (hereafter "USPS") rules and regulations for delivery to the USPS.

      3.      State Farm currently is and has been a client of PBPS, or its predecessor companies in Atlanta, since March 2003.

      4.      Before State Farm's mail is picked up by PBPS, it has been inserted into permit indicia envelopes, sealed, and placed into trays, by State Farm (excluding Saturdays, Sundays and Federal Holidays).

      5.      At the aforementioned State Farm location, PBPS receives a completed PBPS Customer Pickup Slip stating the amount of mail by pieces/trays, which Pickup Slip is signed by PBPS as a receipt acknowledgment with the mail at the aforementioned State Farm location each business day (Monday through Friday), and then the mail is transported to the aforementioned PBPS facility.

      6.      Upon arrival at PBPS's facility, State Farm's mail is taken to Receiving Quality Control where the trays of mail are spot checked to ensure that the proper postage, mail date, presort first class endorsement, and all requirements for first class mail are present.

      7.      After completing the Receiving Quality Control step, State Farm's mail is placed in a queue for production. A supervisor retrieves mail from the staging queue and brings to the sorting machines for production. During the production process, a machine reads the address, "sprays the bar code", and sorts the mail.

      8.      Having been sorted by zip code (and other factors), then placed in trays, the mail is sent to the Outbound Quality Control department, where it is checked to

ensure it has been properly sorted. The sorted mail is then placed in sleeves and banded for final distribution to the USPS.

9.      Upon completing the Outbound Quality Control process, the mail is staged for verification by a USPS clerk, who is on site at PBPS's facility.  The USPS clerk and PBPS prepare a form PS3600R receipt for the mail.

10.     Beginning at 7:30 p.m. on the same day the mail was picked up at State Farm, the USPS picks up the mail at PBPS's facility. At this time, the mail is in the care, custody and control of the USPS.

11.     A facsimile of this affidavit can be deemed as an original.

Sworn to before me this

13ᵗʰ day of July_____, 2017

_____
         Notary Public

OFFICIAL SEAL
SANDRA KAY DAVIS
Notary Public, Georgia
FULTON COUNTY
My Commission Expires
AUGUST 17, 2017

# EXHIBIT D



## Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Fire and Casualty Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number 513 7895-C26-40 including any endorsements, if applicable, for the policy term(s) September 26, 2014 to December 11, 2014 and insuring Stephanie Goode of 130 Rowell LN, Union SC 29379-8086 based on available records.

The policy was not in effect on the loss date of December 12, 2014.

The policy was cancelled effective December 11, 2014.

Shay Anderson
Underwriting Team Manager
Date: _10/21/16_

State of Georgia
County of Fulton

Subscribed and sworn to before me this _21st_ day of _October_, 20_16_.

OLIVIA JONES
NOTARY PUBLIC
Gwinnett County
State of Georgia
My Commission Expires June 22, 2019

Notary Public

My Commission Expires:

1004516

2000 143551 200 03-21-2012

11350 Johns Creek Parkway
Duluth GA 30098

91754-5-A          FIRE   OVL

## DECLARATIONS PAGE

PAGE 1 OF 2

NAMED INSURED

AT3
000852  0058
GOODE, STEPHANIE
130 ROWELL LN
UNION SC  29379-8086

40-1915-5Q7A     A

POLICY NUMBER   513 7895-C26-40
POLICY PERIOD SEP 26 2014 to MAR 26 2015
12:01 A.M. Standard Time

STATE FARM PAYMENT PLAN NUMBER
1305651827

AGENT

BRENDA SPEARMAN
1900 E BLACKSTOCK RD
ROEBUCK, SC 29376-2702

PHONE:(864)279-1900

**DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.**
**IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSED.**

### YOUR CAR

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID. NUMBER | CLASS |
|------|------|-------|------------|--------------------|-------|
| 2006 | FORD | MUSTANG | 2DR | 1ZVFT80N965222217 | 1030141200 |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
|---------|-------------------|----------|
| A | Liability Coverage | $604.23 |
|   | Bodily Injury Limits | |
|   | Each Person   Each Accident | |
|   | $25,000       $50,000 | |
|   | Property Damage Limit | |
|   | Each Accident | |
|   | $50,000 | |
| D | Comprehensive Coverage - $500 Deductible | $213.34 |
| G | Collision Coverage - $500 Deductible | $422.40 |
| H | Emergency Road Service Coverage | $4.68 |
| R1 | Car Rental and Travel Expenses Coverage | $19.11 |
|   | Limit - Car Rental Expense | |
|   | Each Day      Each Loss | |
|   | 80%           $500 | |
| U | Uninsured Motor Vehicle Coverage | $17.22 |
|   | Bodily Injury Limits | |
|   | Each Person   Each Accident | |
|   | $25,000       $50,000 | |
|   | Property Damage Limit | |
|   | Each Accident | |
|   | $25,000 | |

| Total premium for SEP 26 2014 to MAR 26 2015 | $1,280.98 | This is not a bill |
|---|---|---|

### IMPORTANT MESSAGES

New Policy Form

State Farm works hard to offer you the best combination of price, service, and protection.  The amount you pay for automobile insurance is determined by many factors such as the coverages you have, where you live, the kind of car you drive, how your car is used, who drives the car, and information from consumer reports.

Your premium was determined by the information on drivers, driving records, and other information you provided, as well as consumer report information, including: Number of collection agency filings, excluding medical and utility collections; Number of consumer initiated inquiries in the last 12 months with 30-day exceptions; Insufficient information on bank revolving accounts; Time Since Most Recent Account Delinquency.

Consumer report reference numbers: 14265191420202, 14265191220191

Credit information was obtained on: STEPHANIE GOODE

Please refer to the enclosed insert for additional information.

CONTINUED

See Reverse Side

01863/04353
5-3055.2 04-2009 (01a025h3)
I1 EXON    (01a025h4)

This policy is issued by the State Farm Fire and Casualty Company.

## Participating Policy

The named insured or named insureds shown on this Declarations Page are entitled to participate in a distribution of the earnings of the company as determined by our Board of Directors in accordance with the Company's Articles of Incorporation, as amended.

In Witness Whereof, the State Farm Fire and Casualty Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Secretary

President

11350 Johns Creek Parkway
Duluth GA 30098

NAMED INSURED

GOODE, STEPHANIE
130 ROWELL LN
UNION SC  29379-8086

000052  0058

40-1915-5Q7A    A

91754-5-A          FIRE   OVL

## DECLARATIONS PAGE

PAGE 2 OF 2

POLICY NUMBER   513 7895-C26-40

POLICY PERIOD SEP 26 2014 to MAR 26 2015
12:01 A.M. Standard Time

STATE FARM PAYMENT PLAN NUMBER
1305651827

**EXCEPTIONS, POLICY BOOKLET & ENDORSEMENTS (See policy booklet & individual endorsements for coverage details.)**

YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET -
FORM 9840A, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE
CREDITOR- FOUNDERS FEDERAL CREDIT UNION, 737 PLANTATION RD, LANCASTER SC
29720-5808.
6940A      AMENDATORY ENDORSEMENT.

Agent:    BRENDA SPEARMAN
Telephone: (864)279-1900
Prepared   OCT 09 2014      1915-A21

01864/04353

This policy is issued by the State Farm Fire and Casualty Company.

## Participating Policy

The named insured or named insureds shown on this Declarations Page are entitled to participate in a distribution of the earnings of the company as determined by our Board of Directors in accordance with the Company's Articles of Incorporation, as amended.

In Witness Whereof, the State Farm Fire and Casualty Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Secretary

President

PLEASE ATTACH TO YOUR POLICY BOOKLET

Policy Number: 513 7895-C25-40
Sheet 1 of 1

## 6940A AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

### 1. THIS POLICY

Item 5. is changed to read:

*Your* purchase of this policy may allow:

a. *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the *State Farm Companies*, subject to their applicable eligibility rules; or

b. the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary. Such other products or services must be provided by the *State Farm Companies* or by an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

### 2. LIABILITY COVERAGE

Insuring Agreement and Supplementary Payments are replaced by the following:

**Insuring Agreement**

1. *We* will pay damages an *insured* becomes legally liable to pay because of:

   a. *bodily injury* to others; and

   b. damage to property

   caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy.

2. *We* have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

   c. appeal any award or legal decision

   for damages payable under this policy's Liability Coverage.

**Supplementary Payments**

*We* will pay, in addition to the damages described in the Insuring Agreement of this policy's Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the Insuring Agreement of this policy's Liability Coverage;

2. Court costs awarded by the court against an *insured* and resulting from that part of the lawsuit:

   a. that seeks damages payable under this policy's Liability Coverage; and

   b. against which *we* defend an *insured* with attorneys chosen by *us*.

*We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the Insuring Agreement of this policy's Liability Coverage;

3. Interest the *insured* is legally liable to pay on damages payable under the Insuring Agreement of this policy's Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) this policy's applicable Liability Coverage limit; and

   b. after a judgment.

*We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the Insuring Agreement of this policy's Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*;

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

   a. pay for any bond with a face amount that exceeds this policy's applicable Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under the Insuring Agreement of this policy's Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*: 

   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

      (1) an arbitration;

      (2) a mediation; or

      (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

### 3. GENERAL TERMS

a. The paragraph under **Where Coverage Applies** that reads:

   Liability Coverage, Personal Injury Protection Coverage, Medical Payments Coverage, and Physical Damage Coverages also apply in Mexico within 50 miles of the United States of America border. A Physical Damage Coverage *loss* in Mexico is determined on the basis of cost at the nearest United States of America point.

   is deleted.

b. The following is added:

   **Limited Coverage in Mexico**

   This policy does not provide Mexican auto insurance and does not comply with Mexican auto insurance requirements. If *you* or any other *insured* plan to drive in Mexico, then auto insurance providing

©. Copyright, State Farm Mutual Automobile Insurance Company, 2010
6940A



©. Copyright, State Farm Mutual Automobile Insurance Company, 2010
6940A

Policy Number: 513 7895-C26-40

PLEASE ATTACH TO YOUR POLICY BOOKLET

coverage in Mexico should be purchased from a Mexican insurance company.

Subject to the above paragraph, the following coverages apply in Mexico, but only for accidents and *losses* that occur in Mexico within 50 miles of the United States of America border and only for *insureds* as defined under each of the following coverages:

a.  **Liability Coverage**

    For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Liability Coverage is changed to read:

    *We* may, in addition to the damages described in item 1. of the **Insuring Agreement** of this policy's Liability Coverage, pay or reimburse, at our option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

b.  **Personal Injury Protection Coverage**

c.  **Medical Payments Coverage**

d.  **Physical Damage Coverages**

    Any amount payable for the repair or replacement of the *covered vehicle* under the **Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage** provision of this policy will be limited to the cost to repair or replace the *covered vehicle* in the United States of America.

    *WE* HAVE NO DUTY TO PROVIDE A DEFENSE FOR *YOU* OR ANY OTHER *INSURED* IN ANY CRIMINAL, CIVIL, OR OTHER ACTION.

    *WE* HAVE NO DUTY TO PAY ANY CLAIM OR COST THAT WOULD NOT BE PAYABLE UNDER THIS POLICY IF THE ACCIDENT OR *LOSS* HAD OCCURRED IN THE STATE OF SOUTH CAROLINA IN THE UNITED STATES OF AMERICA.

    All other policy provisions not in conflict with the provisions in this **Limited Coverage in Mexico** provision of this policy apply.

    **If Other Coverage Applies**

    Any coverage provided by this **Limited Coverage in Mexico** provision is excess over any other applicable insurance.

    **Legal Action Against Us**

    Any legal action against *us* arising out of an accident or *loss* occurring in Mexico must be brought in a court that has jurisdiction in the state of South Carolina in the United States of America.

c.  Paragraph c. of 5. **Premium** is changed to read:

    c.  The premium for this policy may vary based upon:

        (1) the purchase of other products or services from the *State Farm Companies*;

        (2) the purchase of products or services from an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

        (3) an agreement, concerning the insurance provided by this policy, that the *State Farm Companies* has with an organization of which *you* are a member, employee, subscriber, licensee, or franchisee.



Please read the policy carefully. If there is an accident, contact your State Farm agent or one of our Claim Offices at once. (See "INSURED'S DUTIES" in this policy booklet.)

Georgia-South Carolina Office
11350 Johns Creek Parkway
Duluth, GA 30098-0001
Phone: (770) 418-5000

# State Farm®
# Car Policy
Booklet

South Carolina
Policy Form 9840A

# CONTENTS

THIS POLICY .......................................... 3
DEFINITIONS .......................................... 4
LIABILITY COVERAGE ......................... 6
Additional Definition ........................... 6
Insuring Agreement .............................. 7
Supplementary Payments ...................... 7
Limits .................................................... 8
Nonduplication ...................................... 8
Exclusions ............................................. 8
If Other Liability Coverage Applies .......... 10
Required Out-of-State Liability Coverage .. 11
Financial Responsibility Certification ....... 11

PERSONAL INJURY PROTECTION ..... 11
Additional Definitions ........................... 11
Insuring Agreement .............................. 12
Determining Medical Expenses ............... 13
Arbitration ............................................ 13
Limits .................................................. 13
Exclusions ........................................... 14
If Other Personal Injury Protection
Coverage or Similar Vehicle Insurance
Applies ................................................. 15
Workers' Compensation Coordination ...... 16
Our Payment Options ............................ 16

MEDICAL PAYMENTS COVERAGE .... 17
Additional Definitions ........................... 17
Insuring Agreement .............................. 18
Determining Medical Expenses ............... 18
Arbitration ............................................ 18
Limit .................................................... 19
Exclusions ........................................... 19
If Other Medical Payments Coverage or
Similar Vehicle Insurance Applies ........... 20
Our Payment Options ............................ 21

UNINSURED MOTOR VEHICLE
COVERAGE .......................................... 21
Additional Definitions ........................... 21
Insuring Agreement .............................. 22
Our Right to Defend ............................. 22

Limits .................................................. 22
Nonduplication ...................................... 22
Exclusions ........................................... 23
If Other Uninsured Motor Vehicle
Coverage Applies .................................. 23
Our Payment Options ............................ 24

UNDERINSURED MOTOR VEHICLE
COVERAGE .......................................... 25
Additional Definitions ........................... 25
Insuring Agreement .............................. 25
Our Right to Defend ............................. 25
Limits .................................................. 25
Nonduplication ...................................... 26
Exclusions ........................................... 26
If Other Underinsured Motor Vehicle
Coverage Applies .................................. 27
Our Payment Options ............................ 28

PHYSICAL DAMAGE COVERAGES .... 28
Additional Definitions ........................... 28
Insuring Agreements ............................ 29
Supplementary Payments – Comprehensive
Coverage and Collision Coverage ............ 31
Limits and Loss Settlement – Comprehen-
sive Coverage and Collision Coverage ..... 31
Limits – Car Rental and Travel Expenses
Coverage .............................................. 33
Nonduplication ...................................... 33
Exclusions ........................................... 33
If Other Physical Damage Coverage or
Similar Coverage Applies ....................... 35
Financed Vehicle .................................. 36
Our Payment Options ............................ 36

DEATH, DISMEMBERMENT AND
LOSS OF SIGHT COVERAGE ............... 37
Additional Definition ............................. 37
Insuring Agreement .............................. 37
Benefit ................................................. 37
Exclusions ........................................... 38
Our Payment Options ............................ 38

**INSURED'S DUTIES** ...................................... 39
   Notice to Us of an Accident or Loss ........ 39
   Notice to Us of a Claim or Lawsuit ......... 39
   Insured's Duty to Cooperate With Us ........ 39
   Questioning Under Oath ..................... 39
   Other Duties Under the Physical
   Damage Coverages ........................... 39
   Other Duties Under Personal Injury
   Protection Coverage, Medical Payments
   Coverage, Uninsured Motor Vehicle
   Coverage, Underinsured Motor Vehicle
   Coverage, and Death, Dismemberment
   and Loss of Sight Coverage ................. 40

**GENERAL TERMS** ...................................... 41
   When Coverage Applies ...................... 41

Where Coverage Applies ........................ 41
Newly Owned or Newly Leased Car ........... 41
Changes to This Policy ........................ 42
Premium ....................................... 43
Renewal ....................................... 43
Nonrenewal .................................... 43
Cancellation ................................... 43
Assignment .................................... 44
Bankruptcy or Insolvency of the Insured ... 44
Concealment or Fraud .......................... 44
Our Right to Recover Our Payments ......... 44
Legal Action Against Us ....................... 45
Choice of Law ................................. 45
Severability ................................... 45
Conformity to Law ............................. 45

# THIS POLICY

1. This policy consists of:

   a. the most recently issued Declarations Page;

   b. the policy booklet version shown on that Declarations Page; and

   c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds who are shown on the Declarations Page and all applicants and:

   a. *us*; and

   b. any of *our* agents.

3. *We* agree to provide insurance according to the terms of this policy:

   a. based on payment of premium for the coverages chosen; and

   b. unless otherwise stated in "EXCEPTIONS, POLICY BOOKLET, & ENDORSEMENTS" on the Declarations Page, in reliance on the following statements:

     (1) The named insured shown on the Declarations Page is the sole owner of *your car*.

     (2) Neither *you* nor any member of *your* household has, within the past three years, had:

       (a) vehicle insurance canceled or nonrenewed by an insurer; or

       (b) either:

         (i) a license to drive; or

         (ii) a vehicle registration suspended, revoked, or refused.

(3) *Your car* is used for pleasure and business.

4. All named insureds shown on the Declarations Page and all applicants agree by acceptance of this policy that:

 a. the statements in 3.b. above are made by such named insured or applicant and are true; and

 b. *we* provide this insurance on the basis those statements are true.

5. *Your* purchase of this policy may allow *you* to purchase certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other policies from the *State Farm Companies*, subject to their applicable eligibility rules.

## DEFINITIONS

*We* define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, possessive, and any other form of these words and phrases. Defined words and phrases are printed in boldface italics.

*Bodily Injury* means bodily injury to a *person* and sickness, disease, or death that results from it.

*Car* means a land motor vehicle with four or more wheels, designed for use primarily on public roads. *Car* does not include:

1. Any vehicle while located for use as a dwelling or other premises; or

2. A truck-tractor designed to pull any type of trailer.

*Car Business* means a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer.

*Financial Responsibility Act* means the Motor Vehicle Financial Responsibility Act of South Carolina.

*Fungi* means any type or form of fungus or fungi and includes:

1. Mold;

2. Mildew; and

3. Any of the following that are produced or released by fungi:

 a. Mycotoxins;

 b. Spores;

 c. Scents; or

 d. Byproducts.

*Newly Acquired Car* means a *car* newly owned by *you*. A *car* ceases to be a *newly acquired car* on the earlier of:

1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you*.

If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the *newly acquired car* is delivered to *you*.

*Non-Owned Car* means a *car* that is in the lawful possession of *you* or any *resident relative* and that neither:

4

9840A

1. is *owned by*:

   a. *you*; or

   b. any *resident relative*;

   c. any other *person* who resides primarily in *your* household; or

   d. an employer of any *person* described in a., b. or c. above; nor

2. has been operated by, rented by, or in the possession of:

   a. *you*; or

   b. any *resident relative*

   during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or *loss*.

*Occupying* means in, on, entering, or exiting.

*Our* means the Company issuing this policy as shown on the Declarations Page.

*Owned By* means:

1. owned by;

2. registered to; or

3. leased, if the lease is written for a period of 31 or more consecutive days, to.

*Pedestrian* means a *person* who is not *occupying*:

1. a motorized vehicle; or

2. a vehicle designed to be pulled by a motorized vehicle.

*Person* means a human being.

*Private Passenger Car* means:

1. a *car* of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry *persons* and their luggage; or

2. a pickup truck, van, minivan, or sport utility vehicle:

   a. that is not used for:

      (1) wholesale; or

      (2) retail

   pickup or delivery; and

   b. that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

*Resident Relative* means a *person*, other than *you*, who resides primarily with the first *person* shown as a named insured on the Declarations Page and who is:

1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or

2. a ward or a foster child of that named insured, his or her spouse, or a *person* described in 1. above.

*State Farm Companies* means one or more of the following:

1. State Farm Mutual Automobile Insurance Company;

2. State Farm Fire and Casualty Company; and

3. Subsidiaries or affiliates of either 1. or 2. above.

*Temporary Substitute Car* means a *car* that is in the lawful possession of the *person* operating it and that:

1. replaces *your car* for a short time while *your car* is out of use due to its:

   a. breakdown;

   b. repair;

   c. servicing;

   d. damage; or

   e. theft; and

2. neither *you* nor the *person* operating it own or have registered.

If a *car* qualifies as both a *non-owned car* and a *temporary substitute car*, then it is considered a *temporary substitute car* only.

*Trailer* means:

1. a trailer:

   a. designed to be pulled by a *private passenger car;*

   b. not designed to carry *persons;* and

   c. while not used as premises for office, store, or display purposes; or

2. a farm implement or farm wagon while being pulled on public roads by a *car.*

*Us* means the Company issuing this policy as shown on the Declarations Page.

*We* means the Company issuing this policy as shown on the Declarations Page.

*You* or *Your* means the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a *person,* then *"you"* or *"your"*

*(noise)*

includes the spouse of the first *person* shown as a named insured if the spouse resides primarily with that named insured.

*Your Car* means the vehicle shown under "YOUR CAR" on the Declarations Page. *Your car* does not include a vehicle that *you* no longer own or lease.

If a *car* is shown on the Declarations Page under "YOUR CAR", and *you* ask *us* to replace it with a *car* newly *owned by you,* then the *car* being replaced will continue to be considered *your car* until the earliest of:

1. the end of the 30th calendar day immediately following the date the *car* newly *owned by you* is delivered to *you;*

2. the date this policy is no longer in force; or

3. the date *you* no longer own or lease the *car* being replaced.

## LIABILITY COVERAGE

This policy provides Liability Coverage if "A" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means:

1. *you* and *resident relatives* for:

   a. the ownership, maintenance, or use of:

      (1) *your car;*

      (2) a *newly acquired car;* or

      (3) a *trailer;* and

   b. the maintenance or use of:

      (1) a *non-owned car;* or

      (2) a *temporary substitute car;*

2. the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, for the maintenance or

use of a *car* that is *owned by,* or furnished by an employer to, a *person* who resides primarily in *your* household, but only if such *car* is neither *owned by,* nor furnished by an employer to, the first *person* shown as a named insured on the Declarations Page or that *person's* spouse;

3. any other *person* for his or her use of:

   a. *your car;*

   b. a *newly acquired car;*

   c. a *temporary substitute car;* or

   d. a *trailer* while attached to a *car* described in a., b., or c. above.

   Such vehicle must be used with the expressed or implied consent of *you;* and

4. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This

6

provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

**Insuring Agreement**

1. *We* will pay:

   a. damages an *insured* becomes legally liable to pay because of:

      (1) *bodily injury* to others; and

      (2) damage to property

      caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy;

   b. attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages; and

   c. court costs charged to an *insured* and resulting from that part of a lawsuit:

      (1) that seeks damages payable under this policy's Liability Coverage; and

      (2) against which *we* defend an *insured* with attorneys chosen by *us*.

      *We* have no duty to pay attorney fees and court costs incurred after *we* deposit in court or pay the amount due under this policy's Liability Coverage.

2. *We* have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

   c. appeal any award or legal decision for damages payable under this policy's Liability Coverage.

**Supplementary Payments**

*We* will pay, in addition to the damages, fees, and costs described in the Insuring Agreement

above, the interest, premiums, costs, and expenses listed below that result from such accident:

1. Interest on damages owed by the *insured* that accrues:

   a. before a judgment, where owed by law, but only on that part of the judgment *we* pay; and

   b. after a judgment. *We* will not pay interest on damages paid or payable by a party other than the *insured* or *us*.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage;

2. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

   a. pay for bonds that exceed this policy's applicable Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage; and

3. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

      (1) an arbitration;

      (2) a mediation; or

      (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

**Limits**

1. The Liability Coverage limits for *bodily injury* are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

   a. The limit shown under "Each Person" is the most *we* will pay for all damages resulting from *bodily injury* to any one *person* injured in any one accident. "*Bodily injury* to any one *person*" includes all injury and damages to other *persons* resulting from that *bodily injury*, and all emotional distress resulting from that *bodily injury* sustained by other *persons* who do not sustain that *bodily injury*.

   b. The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages resulting from *bodily injury* to two or more *persons* injured in the same accident.

2. The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown is the most *we* will pay for all damages resulting from damage to property in any one accident.

3. These Liability Coverage limits are the most *we* will pay regardless of the number of:

   a. *insureds*;

   b. claims made;

   c. vehicles insured; or

   d. vehicles involved in the accident.

**Nonduplication**

*We* will not pay any damages or expenses under Liability Coverage that have already been paid under Uninsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. TO THE EXTENT THE LIABILITY COVERAGE LIMITS OF THIS POLICY EXCEED THE LIABILITY COVERAGE LIMITS REQUIRED BY THE *FINANCIAL RESPONSIBILITY ACT* IF SUCH *INSURED* INTENTIONALLY CAUSES *BODILY INJURY* OR DAMAGE TO PROPERTY;

2. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;

3. FOR *BODILY INJURY* TO THAT *INSURED'S* EMPLOYEE WHICH ARISES OUT OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that *insured's* household employee who is neither covered, nor required to be covered, under workers' compensation insurance;

4. FOR *BODILY INJURY* TO THAT *INSURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply to *you* and *resident relatives* who are legally liable for *bodily injury* to fellow employees;

5. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

7. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH

THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS.* This exclusion does not apply to:

a. *you;*

b. any *resident relative;* or

c. any agent, employee, or business partner of *you* or any *resident relative;* or

d. any *person* other than a *person* described in a., b., or c. above up to the liability coverage limits required by the *Financial Responsibility Act;*

while maintaining or using *your car,* a *newly acquired car,* a *temporary substitute car,* or a *trailer owned by you;*

8. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE. This exclusion does not apply up to the liability coverage limits required by the *Financial Responsibility Act* while an *insured* is valet parking *your car,* a *newly acquired car,* a *temporary substitute car,* or a *trailer owned by you;*

9. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR,* A *NEWLY ACQUIRED CAR,* A *TEMPORARY SUBSTITUTE CAR,* OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car;*

10. FOR DAMAGE TO PROPERTY WHILE IT IS:

a. *OWNED BY;*

b. RENTED TO;

c. USED BY;

d. IN THE CARE OF; OR

e. TRANSPORTED BY

*YOU,* A *RESIDENT RELATIVE,* OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to damage to a:

a. motor vehicle *owned by* the employer of *you* or any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b. residence while rented to or leased to an *insured;* or

c. private garage while rented to or leased to an *insured;*

11. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;

12. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION;

13. WHILE USING A *TRAILER* WITH A MOTOR VEHICLE IF THAT *INSURED* IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

14. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

This exclusion (14.) does not apply to *your car* up to the liability coverage limits required by the *Financial Responsibility Act;* OR

15. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**If Other Liability Coverage Applies**

1. If Liability Coverage provided by this policy and one or more other Car Policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same accident, then:

   a. the Liability Coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it.

   a. If:

      (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as primary coverage; and

      (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

      then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as primary coverage.

   b. If:

      (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Liability Coverage which applies to the accident as primary coverage; and

      (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

      then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as excess coverage; and

      (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

      then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as excess coverage.

   b. If:

      (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Liability Coverage which applies to the accident as excess coverage; and

      (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1 above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

## Required Out-of-State Liability Coverage

If:

1. an *insured is in* another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law,

as financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

## Financial Responsibility Certification

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## PERSONAL INJURY PROTECTION COVERAGE

This policy provides Personal Injury Protection Coverage if "P" with a number beside it is shown under "SYMBOLS" on the Declarations Page. "P" with a number beside it is *your* "coverage symbol".

Check *your* coverage symbol with the Schedule in the provision titled *Limits* for the choice of coverage *you* made.

### Additional Definitions

*Insured* means:

1. *you* and *resident relatives:*

    a. while *occupying* a *motor vehicle* other than a motorcycle; or

    b. if struck as a *pedestrian* by a *motor vehicle;* or

2. any other *person* while *occupying:*

    a. *your car;*

    b. a *newly acquired car;*

c. a *temporary substitute car;* or

d. a *trailer* while attached to a *car* described in a., b., or c. above.

Such vehicle must be used with the expressed or implied consent of *you.*

*Medical Expenses* mean *reasonable expenses* for *medical services.*

*Medical Services* mean treatments, procedures, products, and other services that are:

1. necessary to achieve maximum medical improvement for the *bodily injury;*

2. rendered by a healthcare provider:

    a. who is licensed as a healthcare provider if a license is required by law; and

    b. within the legally authorized scope of that healthcare provider's practice;

3. commonly and customarily recognized throughout the medical profession and

11

within the United States of America as appropriate for the treatment of the *bodily injury;*

4. primarily designed to serve a medical purpose;

5. not experimental; and

6. not for research purposes.

*Motor Vehicle* means a vehicle or trailer of a kind required to be registered under South Carolina law.

*Reasonable Expenses* mean the lowest one of the following charges:

1. The usual and customary fees charged by a majority of healthcare providers who provide similar *medical services* in the geographical area in which the charges were incurred;

2. The fee specified in any fee schedule:

   a. applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where *medical services* are provided; and

   b. as prescribed or authorized by the law of the state where *medical services* are provided; or

3. The fees agreed to by both the *insured's* healthcare provider and *us;* or

4. The fees agreed upon between the *insured's* healthcare provider and a third party when *we* have a contract with such third party.

**Insuring Agreement**

**Medical Expenses** and **Funeral Expenses** apply to all Personal Injury Protection Coverages. **Loss of Income** and **Essential Services Expenses** apply only to coverages with coverage symbol P1, P2, P3, P4, P5, P6, and P7.

1. **Medical Expenses**

   *We* will pay *medical expenses* incurred because of *bodily injury* that is sustained by an *insured* and caused by accident resulting from the maintenance or use of a *motor vehicle* as a vehicle if:

   a. that *insured* is first provided *medical services* within one year immediately following the date of the accident; and

   b. such *medical expenses* are for *medical services* that are provided within three years immediately following the date of the accident.

2. **Funeral Expenses**

   *We* will pay funeral expenses incurred for an *insured* who dies within three years immediately following the date of a *motor vehicle* accident if the death is a direct result of *bodily injury* sustained in such accident.

3. **Loss of Income**

   *We* will pay 85% of an *insured's* actual loss of earnings from work due to *bodily injury* that is sustained by an *insured* and caused by a *motor vehicle* accident. This applies only if the *insured* was receiving earnings from work at the time of the accident. The loss must be incurred within three years of the date of the accident and while the *insured* is living.

4. **Essential Services Expenses**

   *We* will pay reasonable expenses incurred for needed services the *insured* would have done for his or her family, but is unable to do because of *bodily injury* that is sustained by that *insured* and caused by a *motor vehicle* accident. This benefit applies only if the *insured* was not receiving earnings from work at the time of the accident. The expense must be incurred within three years of the date of the accident and while the *insured* is living.

**Determining Medical Expenses**

*We* have the right to:

1. obtain and use:

   a. utilization reviews;

   b. peer reviews; and

   c. medical bill reviews

   to determine if the incurred charges are *medical expenses*;

2. use a medical examination of the *insured* to determine if:

   a. the *bodily injury* was caused by a *motor vehicle* accident; and

   b. the expenses incurred are *medical expenses*; and

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Arbitration**

1. If there is a disagreement as to:

   a. whether incurred charges are *medical expenses*; or

   b. the amount due under this coverage for Funeral Expenses, Loss of Income, or Essential Services Expenses;

   then the disagreement will be resolved by arbitration upon written request of the *insured* or *us*.

2. The arbitration will take place in the county in which the *insured* resides unless the parties agree to another location.

   The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

   Each party will pay the cost of its own arbitrator, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third arbitrator.

3. The arbitrators shall only decide whether incurred charges are *medical expenses* and the amount due under this coverage for Funeral Expenses, Loss of Income, or Essential Services Expenses. Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4. A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on:

   a. *us*;

   b. the *insured*;

   c. any assignee of the *insured*; and

   d. any *person* or organization with whom the *insured* expressly, or impliedly contracts for *medical services*, funeral services, or essential services.

5. Subject to 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

6. *We* do not waive any of *our* rights by submitting to arbitration.

**Limits**

1. The most *we* will pay is the amount shown under "Aggregate Limit" in the Schedule for *your* coverage symbol. This limit is the most *we* will pay for all loss and expense combined, incurred by or on behalf of any one *insured* as a result of any one accident, regardless of the number of:

   a. insureds;

   b. claims made;

   c. vehicles insured; or

   d. vehicles involved in the accident.

2. Subject to the aggregate limit shown in the Schedule for *your* coverage symbol, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

13

3. **Schedule**

| Coverage Symbol | Medical Expenses | Funeral Expenses | Loss of Income | Essential Services Expenses | Aggregate Limit |
|---|---|---|---|---|---|
| P1 | Yes | Yes | Yes | Yes | $1,000 |
| P2 | Yes | Yes | Yes | Yes | $1,500 |
| P3 | Yes | Yes | Yes | Yes | $2,000 |
| P4 | Yes | Yes | Yes | Yes | $2,500 |
| P5 | Yes | Yes | Yes | Yes | $5,000 |
| P6 | Yes | Yes | Yes | Yes | $10,000 |
| P7 | Yes | Yes | Yes | Yes | $25,000 |
| P8 | Yes | Yes | No | No | $1,000 |
| P9 | Yes | Yes | No | No | $1,500 |
| P10 | Yes | Yes | No | No | $2,000 |
| P11 | Yes | Yes | No | No | $2,500 |
| P12 | Yes | Yes | No | No | $5,000 |
| P13 | Yes | Yes | No | No | $10,000 |
| P14 | Yes | Yes | No | No | $25,000 |

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES AN ACCIDENT WHICH RESULTS IN THAT *INSURED'S BODILY INJURY*;

2. WHILE VOLUNTARILY *OCCUPYING* A *MOTOR VEHICLE* KNOWN BY THAT *PERSON* TO BE STOLEN;

3. WHILE COMMITTING A FELONY;

4. WHILE ATTEMPTING TO ELUDE A POLICE OFFICER;

5. WHILE *OCCUPYING*, USING, OR MAINTAINING A MOTORCYCLE;

6. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE, *OWNED BY* THAT *INSURED, YOU,* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

7. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

8. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

   a. the use of a *private passenger car* on a share-the-expense basis; or

   b. an *insured* while *occupying* a *non-owned car* as a passenger;

9. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

   a. *you*;

   b. any *resident relative*; or

   c. any agent, employee, or business partner of a. or b. above,

   while maintaining or using *your car, a newly acquired car, a temporary substitute car,* or a *trailer owned by you*,

10. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

11. WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car;*

12. WHO IS EITHER *OCCUPYING*, OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:

   a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS;

   b. RUNS ON RAILS OR CRAWLER-TREADS; OR

   c. IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

13. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

14. WHOSE *BODILY INJURY* RESULTS FROM:

   a. NUCLEAR REACTION;

   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

15. WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

16. WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO *FUNGI;* OR

17. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

   a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

   b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (17.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

**If Other Personal Injury Protection Coverage or Similar Vehicle Insurance Applies**

1. An *insured* shall not recover for the same expense or loss under both this coverage and other similar vehicle insurance.

2. If Personal Injury Protection Coverage is provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury,* then:

   a. the Personal Injury Protection Coverage limits of such policies shall not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

3. The Personal Injury Protection Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car* or a *trailer* attached to it.

   If:

   (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Personal Injury Protection Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

   (2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then *we* will pay the proportion of expenses or loss payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as primary coverage.

b. If:

(1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Personal Injury Protection Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

(2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of expenses or loss payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Personal Injury Protection Coverage provided by this policy applies as excess coverage, but only in the amount by which the limits of this coverage exceed the primary coverage.

a. If:

(1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Personal Injury Protection Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

(2) personal injury protection coverage or other similar vehicle insurance

provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then *we* will pay the proportion of expenses or loss payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as excess coverage.

b. If:

(1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Personal Injury Protection Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

(2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of expenses or loss payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as excess coverage.

**Workers' Compensation Coordination**

Any Personal Injury Protection Coverage provided by this policy applies as excess over any benefits recovered under any workers' compensation law or any other similar law.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4. A *person* authorized by law to receive such payment; or

5. Any *person* or organization that provides the *medical services*, funeral services, or other services' payable under this coverage.

## MEDICAL PAYMENTS COVERAGE

This policy provides Medical Payments Coverage if "C" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you* and *resident relatives*:

   a. while *occupying*:

      (1) *your car*;

      (2) a *newly acquired car*;

      (3) a *temporary substitute car*;

      (4) a *non-owned car*; or

      (5) a *trailer* while attached to a *car* described in (1), (2), (3), or (4) above; or

   b. if struck as a *pedestrian* by a motor vehicle or any type of trailer; and

2. any other *person* while *occupying*:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a *trailer* while attached to a *car* described in a., b., or c. above.

   Such vehicle must be used with the expressed or implied consent of *you*.

*Medical Expenses* mean *reasonable expenses* for *medical services*.

*Medical Services* mean treatments, procedures, products, and other services that are:

1. necessary to achieve maximum medical improvement for the *bodily injury*;

2. rendered by a healthcare provider:

   a. who is licensed as a healthcare provider if a license is required by law; and

   b. within the legally authorized scope of that healthcare provider's practice;

3. commonly and customarily recognized throughout the medical profession and within the United States of America as appropriate for the treatment of the *bodily injury*;

4. primarily designed to serve a medical purpose;

5. not experimental; and

6. not for research purposes.

*Reasonable Expenses* mean the lowest one of the following charges:

1. The usual and customary fees charged by a majority of healthcare providers who provide similar *medical services* in the geographical area in which the charges were incurred;

2. The fee specified in any fee schedule:

   a. applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where *medical services* are provided; and

   b. as prescribed or authorized by the law of the state where *medical services* are provided;

3. The fees agreed to by both the *insured's* healthcare provider and *us*; or

4. The fees agreed upon between the *insured's* healthcare provider and a third party when *we* have a contract with such third party.

**Insuring Agreement**

*We* will pay:

1. *medical expenses* incurred because of *bodily injury* that is sustained by an *insured* and caused by accident resulting from the maintenance or use of a motor vehicle as a vehicle if:

   a. that *insured* is first provided *medical services* within one year immediately following the date of the accident; and

   b. such *medical expenses* are for *medical services* that are provided within three years immediately following the date of the accident; and

2. funeral expenses incurred for an *insured* who dies within three years immediately following the date of a motor vehicle accident if the death is a direct result of *bodily injury* sustained in such accident.

**Determining Medical Expenses**

*We* have the right to:

1. obtain and use:

   a. utilization reviews;

   b. peer reviews; and

   c. medical bill reviews

   to determine if the incurred charges are *medical expenses*;

2. use a medical examination of the *insured* to determine if:

   a. the *bodily injury* was caused by a motor vehicle accident; and

   b. the expenses incurred are *medical expenses*; and

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Arbitration**

1. If there is a disagreement as to whether incurred charges are *medical expenses*, then the disagreement will be resolved by arbitration upon written request of the *insured* or *us*.

2. The arbitration will take place in the county in which the *insured* resides unless the parties agree to another location.

   The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

   Each party will pay the cost of its own arbitrator, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third arbitrator.

3. The arbitrators shall only decide whether incurred charges are *medical expenses*. Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4. A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on:

   a. *us*;

   b. the *insured*;

   c. any assignee of the *insured*; and

   d. any *person* or organization with whom the *insured* expressly or impliedly contracts for *medical services*.

5. Subject to 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

6. *We* do not waive any of *our* rights by submitting to arbitration.

**Limit**

The Medical Payments Coverage limit is shown on the Declarations Page under "Medical Payments Coverage – Limit – Each Person". This limit is the most *we* will pay for the *medical expenses* and funeral expenses combined, incurred by or on behalf of any one *insured* as a result of any one accident, regardless of the number of:

1. *insureds*;

2. claims made;

3. vehicles insured; or

4. vehicles involved in the accident.

Subject to the limit shown on the Declarations Page, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO IS STRUCK AS A *PEDESTRIAN* BY A MOTOR VEHICLE, *OWNED BY* THAT *INSURED* OR *YOU*, IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

2. IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY INJURY*;

3. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

4. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

   a. the use of a *private passenger car* on a share-the-expense basis; or

   b. an *insured* while *occupying* a *non-owned car* as a passenger;

5. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

   a. *you*;

   b. any *resident relative*; or

   c. any agent, employee, or business partner of a. or b. above.

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car* or a *trailer owned by you*;

6. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

7. WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

8. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

9. WHO IS STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:

   a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   b. RUNS ON RAILS OR CRAWLER-TREADS;

10. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

11. WHOSE *BODILY INJURY* RESULTS FROM:

   a. NUCLEAR REACTION;

   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

12. WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIRE-ARM;

13. WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO *FUNGI*; OR

14. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

   a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

   b. ON A TRACK DESIGNED PRIMAR-ILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

**If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

1. An *insured* shall not recover for the same *medical expenses* or funeral expenses un-der both this coverage and other medical payments coverage or similar vehicle in-surance.

2. If Medical Payments Coverage provided by this policy and one or more other ve-hicle policies issued to *you* or any *resident relative* by the *State Farm Companies* ap-ply to the same *bodily injury*, then:

   a. the Medical Payments Coverage limits of such policies shall not be added to-gether to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit pro-vided by any one of the policies. *We* may choose one or more policies from which to make payment.

3. If other medical payments coverage, per-sonal injury protection coverage, or similar

vehicle insurance applies, then the Medical Payments Coverage provided by this poli-cy applies as excess coverage:

   a. If:

      (1) this is the only vehicle policy is-sued to *you* or any *resident rela-tive* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the ac-cident as excess coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

      then *we* will pay the proportion of *medical expenses* and funeral ex-penses payable as excess that *our* ap-plicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

   b. If:

      (1) more than one vehicle policy is-sued to *you* or any *resident rela-tive* by the *State Farm Companies* provides Medical Payments Cov-erage or other similar vehicle in-surance which applies to the accident as excess coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Com-panies* also applies as excess cov-erage for the same accident,

      then the *State Farm Companies* will pay the proportion of *medical ex-penses* and funeral expenses payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above

20

bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

*We* may, at our option, make payment to one or more of the following:

1. The *insured;*

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person;*

4. A *person* authorized by law to receive such payment; or

5. Any *person* or organization that provides the *medical services* or funeral services.

## UNINSURED MOTOR VEHICLE COVERAGE

This policy provides Uninsured Motor Vehicle Coverage if "U" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you;*

2. *resident relatives;*

3. any other *person* while *occupying* or using:

   a. *your car;*

   b. a *newly acquired car;* or

   c. a *temporary substitute car;*

   with the expressed or implied consent of *you;* and

4. any *person* to the extent he or she may recover damages under a state wrongful death statute because of the death of an *insured* under 1., 2., or 3. above.

*Motor Vehicle* means a self-propelled vehicle or trailer designed for use on public roads, but does not include tractor engines, road rollers, farm trailers, tractor cranes, power shovels, well drillers, or electric trolleys.

*Property Damage* means damage to property of the *insured.*

*Uninsured Motor Vehicle* means a *motor vehicle:*

1. the ownership, maintenance, and use of which is:

   a. not insured or bonded for bodily injury and property damage liability at the time of the accident; or

   b. insured or bonded for bodily injury and property damage liability at the time of the accident, but

      (1) the limits are less than required by the *Financial Responsibility Act;*

      (2) the insuring company:

         (a) denies that its policy provides liability coverage for damages that result from the accident; or

         (b) is or becomes insolvent; or

      (3) a cause of action for the *bodily injury* or *property damage* is barred by the South Carolina Tort Claims Act; or

2. the owner and driver of which remain unknown, but only if:

   a. the *bodily injury* or *property damage* was caused by physical contact with the unknown vehicle, or the accident was witnessed by someone other than the owner or driver of the insured vehicle. The witness must sign an affidavit attesting to the truth of the facts of the accident contained in the affidavit; and

21
9840A

b. the *insured* was not negligent in failing to determine the identity of the other vehicle and the driver of the other vehicle at the time of the accident.

*Uninsured Motor Vehicle* does not include a motor vehicle *owned by*:

1. a self-insurer in accordance with the applicable provisions of law; or

2. the State or any of its political subdivisions when the vehicle is operated by a *person* with proper authorization.

**Insuring Agreement**

*We* will pay damages for *bodily injury* and *property damage* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be sustained by an *insured*. The *bodily injury* and *property damage* must be caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle*.

**Our Right to Defend**

*We* have the right to appear and defend in the name of the owner and driver of the *uninsured motor vehicle* on the issues of legal liability of, and the damages owed by, such owner or driver.

**Limits**

1. The Uninsured Motor Vehicle Coverage limits for *bodily injury* are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage — Bodily Injury Limits — Each Person, Each Accident".

a. The most *we* will pay for all damages resulting from *bodily injury* to any one *person* injured in any one accident is the lesser of:

(1) the amount of all damages resulting from that *bodily injury* reduced by the sum of all payments for damages resulting from that *bodily injury* made by or on behalf of any *person* or organization who is or may be held legally liable for that *bodily injury*; or

(2) the limit shown under "Each Person".

"*Bodily injury* to any one *person*" includes all injury and damages to other *persons* resulting from that *bodily injury*, and all emotional distress resulting from that *bodily injury* sustained by other *persons* who do not sustain that *bodily injury*.

b. Subject to a. above, the most *we* will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident".

2. The Uninsured Motor Vehicle Coverage limit for *property damage* is shown on the Declarations Page under "Uninsured Motor Vehicle Coverage — Property Damage Limit — Each Accident". The most *we* will pay for *property damage* is the lesser of:

a. the amount of *property damage* reduced by the sum of all payments made by or on behalf of any *person* or organization who is or may be held legally liable for that *property damage*; or

b. the limit shown under "Each Accident".

3. These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

a. *insureds*;

b. claims made;

c. vehicles insured; or

d. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any resident relative;

2. that:

a. have already been paid;

b. could have been paid; or

c. could be paid

to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that are *property damage* paid or payable under any policy of property insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY* OR *PROPERTY DAMAGE* AND THEREBY IMPAIRS *OUR* RIGHT TO RECOVER *OUR* PAYMENTS;

2. TO THE EXTENT THE UNINSURED MOTOR VEHICLE COVERAGE LIMITS OF THIS POLICY EXCEED THE COVERAGE LIMITS REQUIRED BY THE *FINANCIAL RESPONSIBILITY ACT*:

a. FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF:

(1) THE MOTOR VEHICLE IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; AND

(2) IT WAS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT;

b. IF THE *UNINSURED MOTOR VEHICLE* IS *OWNED BY YOU* OR ANY *RESIDENT RELATIVE*; OR

c. FOR *PROPERTY DAMAGE*:

(1) TO A MOTOR VEHICLE; OR

(2) IN A MOTOR VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF THE MOTOR VEHICLE WAS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT;

3. FOR *PROPERTY DAMAGE* THAT WAS PROXIMATELY CAUSED BY THE DRIVER OF *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

4. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

5. TO THE EXTENT IT BENEFITS:

a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

c. ANY PROPERTY INSURER;

6. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION; OR

7. FOR THE FIRST $200 OF *PROPERTY DAMAGE* SUSTAINED BY EACH *INSURED* IN EACH ACCIDENT.

**If Other Uninsured Motor Vehicle Coverage Applies**

1. The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* or *property damage* while *occupying your car*.

2. Except as provided in item 1. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

3. If:

   a. *you* or any *resident relative* sustains *bodily injury* or *property damage*:

      (1) while *occupying* a motor vehicle not *owned by you* or any *resident relative*; or

      (2) while not *occupying* a motor vehicle; and

   b. Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury* or *property damage*, then

   the maximum amount that may be paid from all such policies combined is the single highest limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

4. If *you* or any *resident relative* sustains *bodily injury* or *property damage* while *occupying* a motor vehicle other than *your car* that is *owned by you* or any *resident relative*, then this coverage applies only to the extent of the uninsured motor vehicle coverage applicable to the motor vehicle that the *insured* was *occupying*.

   However, if the motor vehicle that the *insured* was *occupying* was not insured for uninsured motor vehicle coverage at the time of the accident, then the maximum amount that may be paid from all policies

   combined that are issued to *you* or any *resident relative* by the *State Farm Companies* is the minimum limits required by the *Financial Responsibility Act.. We* may choose one or more policies from which to make payment.

5. Subject to items 1., 2., 3., and 4. above, if this policy and one or more other sources provide uninsured motor vehicle coverage for the same damages on a:

   a. primary basis, then *we* will pay the proportion of damages payable as primary that the applicable limit of this coverage under this policy bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that apply as primary coverage; or

   b. excess basis, then *we* will pay the proportion of damages payable as excess that the applicable limit of this coverage under this policy bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment:

# UNDERINSURED MOTOR VEHICLE COVERAGE

This policy provides Underinsured Motor Vehicle Coverage if "W" is shown under "SYMBOLS" on the Declarations Page.

## Additional Definitions

*Insured* means:

1. *you*;

2. *resident relatives*;

3. any other *person* while *occupying* or using:

   a. *your car*;

   b. a *newly acquired car*; or

   c. a *temporary substitute car*;

   with the expressed or implied consent of *you*; and

4. any *person* to the extent he or she may recover damages under a state wrongful death statute because of the death of an *insured* under 1., 2., or 3. above.

*Motor Vehicle* means a self-propelled vehicle or trailer designed for use on public roads, but does not include tractor engines, road rollers, farm trailers, tractor cranes, power shovels, well drillers, or electric trolleys.

*Property Damage* means damage to property of the *insured*.

*Underinsured Motor Vehicle* means a *motor vehicle* the ownership, maintenance, and use of which is either:

1. insured or bonded for bodily injury and property damage liability at the time of the accident; or

2. self-insured under any motor vehicle financial responsibility law, any motor carrier law, or any similar law

in an amount that is at least equal to the amount required by the *Financial Responsibility Act* and:

1. the amount of the insurance, bonds, and self-insurance from all sources is less than the amount of the *insured's* damages; or

2. the *insured's* damages exceed any damages cap or limitation imposed by statute.

*Underinsured Motor Vehicle* does not include a motor vehicle while located for use as a dwelling or other premises.

## Insuring Agreement

*We* will pay damages for *bodily injury* and *property damage* an *insured* is legally entitled to recover from the owner or driver of an *underinsured motor vehicle*. The *bodily injury* must be sustained by an *insured*. The *bodily injury* and *property damage* must be caused by an accident that involves the operation, maintenance, or use of an *underinsured motor vehicle*.

*We* will pay only if all bodily injury and property damage liability bonds, policies, and self-insurance plans that apply to the *insured's bodily injury* or *property damage* have been:

1. used up by payment of judgments or settlements; or

2. paid to the extent required by any damages cap or limitation imposed by statute.

## Our Right to Defend

*We* have the right to appear and defend in the name of the owner and driver of the *underinsured motor vehicle* on the issues of legal liability of, and the damages owed by, such owner or driver.

## Limits

1. The Underinsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Underinsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

   a. The most *we* will pay for all damages resulting from *bodily injury* to any one *person* injured in any one accident is the lesser of:

      (1) the amount of all damages resulting from that *bodily injury* reduced by the sum of all payments for damages resulting from that

*bodily injury* made by or on behalf of any *person* or organization who is or may be held legally liable for that *bodily injury*; or

(2) the limit shown under "Each Person".

"*Bodily injury* to any one *person*" includes all injury and damages to other *persons* resulting from that *bodily injury,* and all emotional distress resulting from that *bodily injury* sustained by other *persons* who do not sustain that *bodily injury*.

b. Subject to a. above, the most *we will* pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident".

2. The Underinsured Motor Vehicle Coverage limit for *property damage* is shown on the Declarations Page under "Underinsured Motor Vehicle Coverage – Property Damage Limit – Each Accident". The most *we* will pay for *property damage* is the lesser of:

a. the amount of *property damage* reduced by the sum of all payments made by or on behalf of any *person* or organization who is or may be held legally liable for that *property damage*; or

b. the limit shown under "Each Accident".

3. These Underinsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

a. *insureds*;

b. claims made;

c. vehicles insured; or

d. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Underinsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

a. by or on behalf of any *person* or organization who is or may be held

legally liable for the *bodily injury* to the *insured*; or

b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*;

2. that:

a. have already been paid;

b. could have been paid; or

c. could be paid

to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that are *property damage* paid or payable under any policy of property insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY* OR *PROPERTY DAMAGE* AND THEREBY IMPAIRS *OUR* RIGHT TO RECOVER *OUR* PAYMENTS;

2. TO THE EXTENT THE UNDERINSURED MOTOR VEHICLE COVERAGE LIMITS OF THIS POLICY EXCEED THE COVERAGE LIMITS REQUIRED BY THE *FINANCIAL RESPONSIBILITY ACT*:

a. FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF:

(1) THE MOTOR VEHICLE IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; AND

(2) IT WAS NOT INSURED FOR UNDERINSURED MOTOR VEHICLE

26

COVERAGE AT THE TIME OF THE ACCIDENT;

b. IF THE *UNDERINSURED MOTOR VEHICLE* IS *OWNED BY YOU* OR ANY *RESIDENT RELATIVE*; OR

c. FOR *PROPERTY DAMAGE*:

(1) TO A MOTOR VEHICLE; OR

(2) IN A MOTOR VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF THE MOTOR VEHICLE WAS NOT INSURED FOR UNDERINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT;

3. FOR *PROPERTY DAMAGE* THAT WAS PROXIMATELY CAUSED BY THE DRIVER OF *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

4. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

5. TO THE EXTENT IT BENEFITS:

a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

c. ANY PROPERTY INSURER; OR

6. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION.

**If Other Underinsured Motor Vehicle Coverage Applies**

1. The Underinsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustain *bodily injury* or *property damage* while *occupying your car*.

2. Except as provided in item 1. above, the Underinsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

3. If:

a. *you* or any *resident relative* sustains *bodily injury* or *property damage*:

(1) while *occupying* a motor vehicle not *owned by you* or any *resident relative*; or

(2) while not *occupying* a motor vehicle; and

b. Underinsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury* or *property damage*, then

the maximum amount that may be paid from all such policies combined is the single highest limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

4. If *you* or any *resident relative* sustains *bodily injury* or *property damage* while *occupying* a motor vehicle other than *your car* that is *owned by you* or any *resident relative*, then this coverage applies to the extent of the underinsured motor vehicle coverage applicable to the motor vehicle that the *insured* was *occupying*.

However, if the motor vehicle that the *insured* was *occupying* was not insured for underinsured motor vehicle coverage at the time of the accident, then the maximum amount that may be paid from all policies combined that are issued to *you* or any *resident relative* by the *State Farm Companies* is the minimum limits required by the *Financial Responsibility Act*. *We* may choose one or more policies from which to make payment.

5. Subject to items 1., 2., 3., and 4. above, if this policy and one or more other sources

provide underinsured motor vehicle coverage for the same damages on a;

a. primary basis, then *we* will pay the proportion of damages payable as primary that the applicable limit of this coverage under this policy bears to the sum of such amount and the limits of all other underinsured motor vehicle coverage that apply as primary coverage; or

b. excess basis, then *we* will pay the proportion of damages payable as excess that the applicable limit of this coverage under this policy bears to the sum of such amount and the limits

of all other underinsured motor vehicle coverage that apply as excess coverage.

### Our Payment Options

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

## PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1. Comprehensive Coverage if "D";

2. Collision Coverage if "G";

3. Emergency Road Service Coverage if "H";

4. Car Rental and Travel Expenses Coverage if "R1"

is shown under "SYMBOLS" on the Declarations Page.

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

### Additional Definitions

*Covered Vehicle* means:

1. *your car*;

2. a *newly acquired car*;

3. a *temporary substitute car*;

4. a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;

5. a *non-owned car* while it is:

   a. being driven by an *insured*; or

   b. in the custody of an *insured* if at the time of the *loss* it is:

      (1) not being driven; or

      (2) being driven by a *person* other than an *insured* and being *occupied* by an *insured*;

6. a *non-owned trailer* while it is being used by an *insured*; and

7. a *non-owned camper* while it is being used by an *insured*;

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of *trailers* and

28

campers must be securely fixed as a permanent part of the *trailer* or camper.

*Daily Rental Charge* means the sum of:

1. the daily rental rate;

2. mileage charges; and

3. related taxes.

*Insured* means *you* and *resident relatives*.

*Loss* means:

1. direct, sudden, and accidental damage to; or

2. total or partial theft of

a *covered vehicle*. *Loss* does not include any reduction in the value of any *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

*Loss Caused By Collision* means a *loss* caused by:

1. a *covered vehicle* hitting or being hit by another vehicle or another object; or

2. the overturning of a *covered vehicle*.

Any *loss* caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a *Loss Caused By Collision*.

*Non-Owned Camper* means a camper designed to be mounted on a pickup truck that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

   a. an *insured*;

   b. any other *person* who resides primarily in *your* household; or

   c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

*Non-Owned Trailer* means a *trailer* that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

   a. an *insured*;

   b. any other *person* who resides primarily in *your* household; or

   c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

Insuring Agreements

1. Comprehensive Coverage

   *We* will pay:

   a. for *loss*, except *loss caused by collision*, to a *covered vehicle*; and

   b. transportation expenses incurred by an *insured* as a result of the total theft of *your car*; or a *newly acquired car*. These transportation expenses are payable:

      (1) during the period that:

         (a) starts on the date *you* report the theft to *us*; and

         (b) ends on the earliest of:

            (i) the date the vehicle is returned to *your* possession in a drivable condition;

            (ii) the date *we* offer to pay for the *loss* if the vehicle has not yet been recovered; or

            (iii) the date *we* offer to pay for the *loss* if the vehicle is recovered, but is a total loss as determined by *us*; and

      (2) during the period that:

         (a) starts on the date the vehicle is left at a repair facility if the

29
9840A

stolen vehicle is recovered, returned to *your* possession in a drivable condition, and has unrepaired damage that resulted from the total theft; and

(b) ends on the date the vehicle is repaired.

These transportation expenses must be reported to *us* before *we* will pay such incurred expenses.

2. **Collision Coverage**

*We* will pay for *loss caused by collision* to a *covered vehicle*.

3. **Emergency Road Service Coverage**

*We* will pay the fair cost incurred by an *insured* for:

a. up to one hour of labor to repair a *covered vehicle* at the place of its breakdown;

b. towing to the nearest repair facility where necessary repairs can be made if a *covered vehicle* is not drivable;

c. towing a *covered vehicle* out of a location where it is stuck if the vehicle is on or immediately next to a public road;

d. delivery of gas, oil, battery, or tire necessary to return a *covered vehicle* to driving condition. *We* do not pay the cost of the gas, oil, battery, or tire; and

e. up to one hour of labor for locksmith services to unlock a *covered vehicle* if its key is lost, stolen, or locked inside the vehicle.

4. **Car Rental and Travel Expenses Coverage**

a. **Car Rental Expense**

*We* will pay the *daily rental charge* incurred when *you* rent a *car* from a *car business* while *your car* or a *newly acquired car* is:

(1) not drivable; or

(2) being repaired

as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

*We* will pay this *daily rental charge* incurred during a period that:

(1) starts on the date:

(a) the vehicle is not drivable as a result of the *loss*; or

(b) the vehicle is left at a repair facility if the vehicle is drivable; and.

(2) ends on the earliest of:

(a) the date the vehicle has been repaired or replaced;

(b) the date *we* offer to pay for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

(c) five days after *we* offer to pay for the *loss* if the vehicle is:

(i) a total loss as determined by *us*; or

(ii) stolen and not recovered.

The amount of any such *daily rental charge* incurred by *you* must be reported to *us* before *we* will pay such amount.

b. **Travel Expenses**

*We* will pay expenses for commercial transportation, lodging, and meals if *your car* or a *newly acquired car* is not drivable as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage. The *loss* must occur more than 50 miles from *your* home. *We* will only pay these expenses if they are incurred by:

(1) an *insured* during the period that:

(a) starts after the *loss* occurs; and

(b) ends on the earlier of:

30

(i) the *insured's* arrival at his or her destination or home if the vehicle is left behind for repairs; or

(ii) the repair of the vehicle if the *insured* waits for repairs before continuing on to his or her destination or returning home; and

(2) *you,* or any *person you* choose, to travel to retrieve the vehicle and drive it to either the original destination or *your* home if the vehicle was left behind for repairs.

These expenses must be reported to *us* before *we* will pay such incurred expenses.

c. **Rental Car – Repayment of Deductible Expense**

*We* will pay the comprehensive deductible or collision deductible an *insured* is required to pay the owner of a *car* rented from a *car business*.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If the *covered vehicle* sustains *loss* for which *we* make a payment under Comprehensive Coverage or Collision Coverage, then *we* will pay reasonable expenses incurred to:

1. tow the *covered vehicle* immediately after the *loss*:

   a. for a reasonable distance from the location of the *loss* to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable; or

   b. to any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*. *We* will also pay reasonable expenses incurred to tow the *covered vehicle* for a reasonable distance from this facility to any one repair facility chosen by an

   *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable;

2. store the *covered vehicle*, if it is not drivable immediately after the *loss*, at:

   a. any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*; and

   b. any one repair facility chosen by the owner of the *covered vehicle*, and *we* determine such vehicle is a total loss.

   If the owner of the *covered vehicle* consents, then *we* may move the *covered vehicle* at *our* expense to reduce storage costs. If the owner of the *covered vehicle* does not consent, then *we* will pay only the storage costs that would have resulted if *we* had moved the damaged *covered vehicle*; and

3. clean up debris from the *covered vehicle* at the location of the *loss*. The most *we* will pay to clean up the debris is $250 for any one *loss*.

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1. *We* have the right to choose to settle with *you* or the owner of the *covered vehicle* in one of the following ways:

   a. Pay the cost to repair the *covered vehicle* minus any applicable deductible. The deductible amount does not apply to *loss* to safety glass.

   (1) *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:

   (a) The cost agreed to by both the owner of the *covered vehicle* and *us*;

   (b) A bid or repair estimate approved by *us*; or

   (c) A repair estimate that is written based upon or adjusted to:

(i) the prevailing competitive price;

(ii) the lower of paintless dent repair pricing established by an agreement we have with a third party or the paintless dent repair price that is competitive in the market; or

(iii) a combination of (i) and (ii) above.

The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a survey made by *us*. If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the *covered vehicle* to its pre-loss condition.

*You* agree with *us* that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts.

*You* also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

(2) The cost to repair the *covered vehicle* does not include any reduction in the value of the *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

(3) If the repair or replacement of a part results in betterment of that part, then *you* or the owner of the

*covered vehicle* must pay for the amount of the betterment;

b. Pay the actual cash value of the *covered vehicle* minus any applicable deductible.

(1) The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by appraisal upon written request of the owner or *us*, using the following procedures:

(a) The owner and *we* will each select a competent appraiser.

(b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or *we* may petition a court that has jurisdiction to select the third appraiser.

(c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

(d) The appraisers shall only determine the actual cash value of the *covered vehicle*. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

(e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the

owner of the *covered vehicle* and *us*.

    (f) *We* do not waive any of *our* rights by submitting to an appraisal.

  (2) The damaged *covered vehicle* must be given to *us* in exchange for *our* payment, unless *we* agree that the owner may keep it. If the owner keeps the *covered vehicle*, then *our* payment will be reduced by the value of the *covered vehicle* after the *loss*; or

  c. Return the stolen *covered vehicle* to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

2. The most *we* will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per *loss*.

3. The most *we* will pay for *loss* to a *non-owned trailer* or a *non-owned camper* is $2,500.

**Limits – Car Rental and Travel Expenses Coverage**

1. **Car Rental Expense**

  The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

  a. The limit shown under "Each Day" is the most *we* will pay for the *daily rental charge*. If:

    (1) a dollar amount is shown, then *we* will pay the *daily rental charge* up to that dollar amount;

    (2) a percentage amount is shown, then *we* will pay that percentage of the *daily rental charge*.

  b. Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

2. **Travel Expenses**

  The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

3. **Rental Car – Repayment of Deductible Expense**

  The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

**Nonduplication**

*We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the *covered vehicle* has already received payment from, or on behalf of, a party who is legally liable for the *loss* or expense.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. ANY *COVERED VEHICLE* THAT IS:

  a. INTENTIONALLY DAMAGED; OR

  b. STOLEN,

  BY OR AT THE DIRECTION OF AN *INSURED*;

2. ANY *COVERED VEHICLE* WHILE IT IS RENTED TO, OR LEASED TO, OTHERS BY AN *INSURED*;

3. ANY *COVERED VEHICLE* WHILE IT IS USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

4. ANY *COVERED VEHICLE* DUE TO:

  a. THEFT;

  b. CONVERSION;

  c. EMBEZZLEMENT; OR

  d. SECRETION

BY AN *INSURED*, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A *PERSON* WHO OBTAINS POSSESSION OF THE *COVERED VEHICLE* WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;

5. *LOSS* TO *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IF AN *INSURED* VOLUNTARILY RELINQUISHES POSSESSION OF THAT *CAR* TO A *PERSON* OR ORGANIZATION UNDER AN ACTUAL OR PRESUMED SALES AGREEMENT;

6. ANY *COVERED VEHICLE* TO THE EXTENT *OUR* PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR *LOSS* TO SUCH *COVERED VEHICLE*;

7. *LOSS* TO ANY *COVERED VEHICLE* DUE TO *FUNGI*. THIS APPLIES REGARDLESS OF WHETHER OR NOT THE *FUNGI* RESULT FROM A *LOSS* THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. *WE* WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI*, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY *COVERED VEHICLE* THAT ARE DUE TO THE EXISTENCE OF *FUNGI*;

8. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM:

   a. NUCLEAR REACTION;

   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

9. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT *COVERED*

*VEHICLE* BY ANY GOVERNMENTAL AUTHORITY;

10. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM WAR OF ANY KIND;

11. *YOUR CAR* WHILE SUBJECT TO ANY:

    a. LIEN AGREEMENT;

    b. RENTAL AGREEMENT;

    c. LEASE AGREEMENT; OR

    d. SALES AGREEMENT

    NOT SHOWN ON THE DECLARATIONS PAGE;

12. ANY *NON-OWNED CAR* WHILE IT IS:

    a. BEING MAINTAINED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*; OR

    b. USED IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS*. This exclusion (12.b.) does not apply to a *private passenger car*;

13. ANY PART OR EQUIPMENT OF A *COVERED VEHICLE* IF THAT PART OR EQUIPMENT:

    a. FAILS OR IS DEFECTIVE; OR

    b. IS DAMAGED AS A DIRECT RESULT OF:

       (1) WEAR AND TEAR;

       (2) FREEZING; OR

       (3) MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

       OF THAT PART OR EQUIPMENT.

    This exclusion does not apply if the *loss* is the result of theft of the *covered vehicle*;

14. ANY PART OR EQUIPMENT:

    a. THAT IS NOT LEGAL FOR USE IN OR ON THE *COVERED VEHICLE*

IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED; OR

b. THE USE OF WHICH IS NOT LEGAL IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE *COVERED VEHICLE*.

However, if there is a legal version of the part or equipment that is necessary for the safe operation of the *covered vehicle*, then *we* will pay the cost that *we* would otherwise have paid to repair the vehicle with the legal version of the part or equipment. *We* will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

a. *loss* is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

b. *loss caused by collision* to another part of the *covered vehicle* causes *loss* to tires;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING, BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECONSTRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

a. DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

b. *OWNED BY AN INSURED*; AND

c. NOT SHOWN ON THE DECLARATIONS PAGE; OR

19. ANY *COVERED VEHICLE* WHILE IT IS:

BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (19.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

**If Other Physical Damage Coverage or Similar Coverage Applies**

1. If the same *loss* or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that *loss* or expense applies.

2. If any of the physical damage coverages provided by this policy and one or more other policies issued to an *insured* by the *State Farm Companies* apply to the same *loss* or expense, then only one policy applies. *We* will select a policy that pays the most for the *loss* or expense.

3. The physical damage coverages provided by this policy apply as primary coverage for a *loss* to *your car*.

If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as primary that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of

35

all other similar coverage that applies as primary coverage.

4. Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as excess that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

### Financed Vehicle

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in *your car*. Coverage for the creditor's interest is only provided for a *loss* that is payable to *you*.

   However, if this policy is cancelled or nonrenewed, then *we* will provide coverage for the creditor's interest until *we* notify the creditor of the termination of such coverage. This coverage for the creditor's interest is only provided for a *loss* that would have been payable to *you* if this policy had not been cancelled or nonrenewed. The date such termination is effective will be at least 10 days after the date *we* mail or electronically transmit a notice of the termination to the creditor.

2. If *we* pay such creditor, then *we* are entitled to the creditor's right of recovery against *you* to the extent of *our* payment.

*Our* right of recovery does not impair the creditor's right to recover the full amount of its claim.

## Our Payment Options

1. **Comprehensive Coverage and Collision Coverage**

   a. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle owned by you*:

      (1) *You*;

      (2) The repairer; or

      (3) A creditor shown on the Declarations Page, to the extent of its interest.

   b. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle* not *owned by you*:

      (1) *You*;

      (2) The owner of such vehicle;

      (3) The repairer; or

      (4) A creditor, to the extent of its interest.

2. **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

   *We* may, at *our* option, make payment to one or more of the following:

   a. *You*;

   b. The *insured* who incurred the expense; or

   c. Any party that provided the service for which payment is owed.

# DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE

This policy provides Death, Dismemberment and Loss of Sight Coverage if "S" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means *a person* whose name is shown under "Death, Dismemberment and Loss of Sight Coverage – Persons Insured" on the Declarations Page.

**Insuring Agreement**

*We* will pay the highest applicable benefit shown in the following Death, Dismemberment and Loss of Sight Benefits Schedules if an *insured*:

1. dies; or
2. suffers dismemberment or permanent loss of sight; as described in the schedule.

as the direct result of an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause.

The *insured* must be *occupying* or be struck as a *pedestrian* by a land motor vehicle or any type of trailer at the time of the accident. The death, dismemberment, or permanent loss of sight must occur within 90 days immediately following the date of the accident.

**Benefit**

The applicable benefit shown in the schedule is the most *we* will pay for any one *insured* in any one accident. Any benefit paid or payable for dismemberment or permanent loss of sight reduces the death benefit.

The benefits shown in the schedules are doubled for an *insured* who at the time of the accident was *occupying* a *private passenger car* and using a seat belt in the manner recommended by the vehicle's manufacturer.

## Death, Dismemberment and Loss of Sight Benefits Schedules

If the amount shown on the Declarations Page for the *insured* is $5,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $5,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $5,000 |
| Loss of one hand or one foot; or all sight of one eye | $2,500 |
| Loss of the thumb and a finger on one hand; or any three fingers | $1,500 |
| Loss of any two fingers | $1,000 |

The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off.

If the amount shown on the Declarations Page for the *insured* is $10,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $10,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $10,000 |
| Loss of one hand or one foot; or all sight of one eye | $5,000 |
| Loss of the thumb and a finger on one hand; or any three fingers | $3,000 |
| Loss of any two fingers | $2,000 |

The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off.

**Exclusions**

DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE DOES NOT APPLY TO AN *INSURED*:

1. WHILE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN A *CAR BUSINESS*;

2. WHILE *OCCUPYING*, LOADING, OR UNLOADING:

   a. AN EMERGENCY VEHICLE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;

   b. A VEHICLE, OTHER THAN AN EMERGENCY VEHICLE, WHILE USED IN THE:

      (1) *INSURED'S* BUSINESS; OR

      (2) COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN OTHER THAN A *CAR BUSINESS*.

      This exclusion (2.b.) does not apply if the vehicle is a *private passenger car*;

   c. A MILITARY VEHICLE; OR

   d. A VEHICLE WHILE IT IS:

      (1) BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

      (2) ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (2.d.(2)) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

3. WHILE *OCCUPYING*, LOADING, UNLOADING, OR WHO IS STRUCK AS A *PEDESTRIAN* BY:

   a. A MOTOR VEHICLE THAT RUNS ON RAILS OR CRAWLER-TREADS;

   b. A MOTOR VEHICLE THAT IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   c. A MOTOR VEHICLE OR ANY TYPE OF TRAILER, EITHER OF WHICH IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES; OR

4. FOR DEATH, DISMEMBERMENT, LOSS OF SIGHT, OR *TOTAL DISABILITY* THAT RESULTS FROM:

   a. WAR OF ANY KIND;

   b. NUCLEAR REACTION, RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE, OR THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

   c. THE DISCHARGE OF A FIREARM;

   d. EXPOSURE TO *FUNGI*;

   e. SUICIDE OR ATTEMPTED SUICIDE REGARDLESS OF WHETHER THE *INSURED* WAS SANE OR INSANE; OR

   f. DISEASE except pus-forming infection due to *bodily injury* sustained in the accident.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* or organization authorized by law to receive such payment.

## INSURED'S DUTIES

1. **Notice to Us of an Accident or Loss**

   The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reasonably possible. The notice must give *us*:

   a. *your* name;

   b. the names and addresses of all *persons* involved in the accident or *loss*;

   c. the hour, date, place, and facts of the accident or *loss*; and

   d. the names and addresses of witnesses to the accident or *loss*.

2. **Notice to Us of a Claim or Lawsuit**

   a. If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.

   b. If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

3. **Insured's Duty to Cooperate With Us**

   a. The *insured* must cooperate with *us* and, when asked, assist *us* in:

      (1) making settlements;

      (2) securing and giving evidence;

      (3) attending, and getting witnesses to attend, depositions, hearings, and trials; and

      (4) preserving his or her right to recover damages from others.

   b. The *insured* must not, except at his or her own cost, voluntarily:

      (1) make any payment to others; or

      (2) assume any obligation to others unless authorized by the terms of this policy.

   c. Any *person* or organization making claim under this policy must, when *we* require, give *us* proof of loss on forms *we* furnish.

4. **Questioning Under Oath**

   Under:

   a. Liability Coverage, each *insured*;

   b. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage, each *insured*, or any other *person* or organization making claim or seeking payment; and

   c. Physical Damage Coverages, each *insured* or owner of a *covered vehicle*, or any other *person* or organization making claim or seeking payment;

   must, at *our* option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as *we* require. Such *person* or organization must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *person* or organization answering questions under oath to answer the questions with only that *person's* or organization's legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

5. **Other Duties Under the Physical Damage Coverages**

   When there is a *loss*, *you* or the owner of the *covered vehicle* must:

   a. protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

   b. make a prompt report to the police when the *loss* is the result of theft;

   c. allow *us* to:

(1) inspect any damaged property before its repair or disposal;

(2) test any part or equipment before that part or equipment is removed or repaired; and

(3) move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

d. provide *us* all:

(1) records;

(2) receipts; and

(3) invoices

that *we* request and allow *us* to make copies; and

e. not abandon the *covered vehicle* to *us*.

6. **Other Duties Under Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage**

A *person* making claim under:

a. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

(1) notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury. If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;

(2) be examined as reasonably often as *we* may require by physicians chosen and paid by *us*. A copy of the report will be sent to the *person* upon written request;

(3) provide written authorization for *us* to obtain:

(a) medical bills;

(b) medical records;

(c) wage, salary, and employment information; and

(d) any other information *we* deem necessary to substantiate the claim;

If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

(4) allow *us* to inspect the vehicle that the *insured occupied* in the accident;

b. Uninsured Motor Vehicle Coverage must report an accident involving a motor vehicle whose owner and driver remain unknown, to the police and to *us* within a reasonable period of time; and

c. Uninsured Motor Vehicle Coverage and Underinsured Motor Vehicle Coverage must:

(1) send *us* immediately a copy of all lawsuit papers if the *insured* files a lawsuit against the party liable for the accident; and

(2) if making a claim for *property damage*:

(a) allow *us* to:

(i) inspect any *property damage* before its repair or disposal;

(ii) test any part or equipment before that part or equipment is removed or repaired; and

(iii) move the damaged property at *our* expense in order to conduct such inspection or testing; and

(b) protect the damaged property from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

(c) provide *us* all;

(i) records;

(ii) receipts; and

(iii) invoices

that *we* request and allow *us* to make copies;

(d) not abandon the damaged property to *us*; and

(e) give *us* sworn proof of claim within 60 days of the accident. This proof of claim must state:

(i) who owns the property and how much they own;

(ii) the amount of any claims or liens on the property;

(iii) the value of the property at the time of the accident;

(iv) details of the accident; and

(v) details of any other insurance applicable to the property.

## GENERAL TERMS

### 1. When Coverage Applies

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

### 2. Where Coverage Applies

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur:

a. in the United States of America and its territories and possessions;

b. in Canada; and

c. while a vehicle for which coverage is provided by this policy is being

shipped between the ports of the United States of America, its territories, its possessions, and Canada.

The Liability Coverage, Personal Injury Protection Coverage, Medical Payments Coverage, and Physical Damage Coverages also apply in Mexico within 50 miles of the United States border. A Physical Damage Coverage *loss* in Mexico is determined on the basis of cost at the nearest United States point.

Death, Dismemberment and Loss of Sight Coverage applies anywhere in the world.

### 3. Newly Owned or Newly Leased Car

If *you* want to insure a *car* newly *owned by you* with the *State Farm Companies* after that *car* ceases to be a *newly acquired car*, then *you* must either:

a. request *we* replace the *car* currently shown on the Declarations Page of this policy with the *car* newly *owned by*

41

9840A

*you* and pay *us* any added amount due. If *you* make such request while this policy is in force and:

(1) before the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date the *car* newly *owned by you* is delivered to *you*. The added amount due will be calculated based on that date; or

(2) after the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date and time *you* make the request. The added amount due will be calculated based on that date; or

b. apply to the *State Farm Companies* for a separate policy to insure the *car* newly *owned by you*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

4. **Changes to This Policy**

a. **Changes in Policy Provisions**

*We* may only change the provisions of this policy by:

(1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

(2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then *we* will give *you* the broader coverage as of the date *we* make the change effective in the state of South Carolina without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

b. **Change of Interest**

(1) No change of interest in this policy is effective unless *we* consent in writing.

(2) Except under Death, Dismemberment and Loss of Sight Coverage, if a named insured shown on the Declarations Page dies, then the definition of *insured* under each of the coverages provided by this policy is changed to include:

(a) any *person* with lawful custody of *your car*, a *newly acquired car*, or a *temporary substitute car* until a legal representative is qualified; and then

(b) the legal representative of the deceased named insured.

This only applies while such *person* is maintaining or using *your car*, a *newly acquired car*, or a *temporary substitute car*.

Policy notice requirements are met by mailing the notice to the most recent policy address that *we* have on record for the deceased named insured.

c. **Joint and Individual Interests**

If *you* consists of more than one *person* or entity, then each acts for all to change or cancel the policy.

d. **Change of Policy Address**

*We* may change the named insured's policy address as shown on the Declarations Page and in *our* records to the most recent address provided to *us* by:

(1) *you*; or

(2) the United States Postal Service.

**5. Premium**

a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

c. The premium for this policy may vary based upon the purchase of other insurance from the *State Farm Companies.*

d. The premium for this policy is based upon information *we* have received from *you* or other sources. *You* must inform *us* if any information regarding the following is incorrect or incomplete, or changes during the policy period, and *you* must answer questions *we* ask regarding the following:

   (1) *Your car,* or its use, including annual mileage;

   (2) The *persons* who regularly drive *your car,* including newly licensed family members;

   (3) *Your* marital status; or

   (4) The location where *your car* is primarily garaged.

   If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to *us* when *we* ask, then *we* may decrease or increase the premium during the policy period. If *we* decrease the premium during the policy period, then *we* will provide a refund or a credit in the amount of the decrease. If *we* increase the premium during the policy period, then *you* must pay the amount of the increase.

**6. Renewal**

*We* agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless *we* mail or deliver a nonrenewal notice, or a cancellation notice as set forth in 7. and 8. below.

**7. Nonrenewal**

If *we* decide not to renew this policy, then, at least 30 days before the end of the current policy period, *we* will mail or deliver a nonrenewal notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page.

**8. Cancellation**

a. **How You May Cancel**

*You* may cancel this policy by providing to *us* advance notice of the date cancellation is effective. *We* may confirm the cancellation in writing.

b. **How and When We May Cancel**

*We* may cancel this policy by mailing or delivering a written notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page. The notice will provide the date cancellation is effective.

   (1) If *we* mail or deliver a cancellation notice:

       (a) during the first 90 days following this policy's effective date; or

       (b) because the premium is not paid when due,

       then the date cancellation is effective will be at least 15 days after the date *we* mail or deliver the cancellation notice.

43
9840A

Otherwise, the date cancellation is effective will be at least 20 days after the date *we* mail or deliver the cancellation notice.

(2) After this policy has been in force for more than 90 days, *we* will not cancel this policy before the end of the current policy period unless:

(a) the premium is not paid when due; or

(b) *you,* any *resident relative,* or any other *person* who usually drives *your car* has had his or her driver's license under suspension or revocation:

(1) during the policy period; or

(2) if the policy is a renewal, during its policy period or the 90 days immediately preceding the last anniversary of the effective date of the policy.

**c. Return of Unearned Premium**

If *you* cancel this policy, then premium may be earned on a short rate basis. If *we* cancel this policy, then premium will be earned on a pro rata basis.

Any unearned premium may be returned within a reasonable time after cancellation. Delay in the return of any unearned premium does not affect the cancellation date.

**9. Assignment**

No assignment of benefits or other transfer of rights is binding upon *us* unless approved by *us.*

**10. Bankruptcy or Insolvency of the Insured**

Bankruptcy or insolvency of the *insured* or his or her estate will not relieve *us* of *our* obligations under this policy.

**11. Concealment or Fraud**

There is no coverage under this policy if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

**12. Our Right to Recover Our Payments**

a. Personal Injury Protection Coverage, Medical Payments Coverage, Underinsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage payments are not recoverable by *us.*

b. To the extent allowed by law, under Uninsured Motor Vehicle Coverage:

(1) the right of recovery of the *insured* passes to *us,* to the extent of *our* payments;

(2) *we* will pay *our* share of the reasonable costs of any recovery. *Our* share is the percent that *our* recovery bears to the total recovery. *We* reserve the right to select an attorney to handle the recovery; and

(3) an *insured* making claim for *property damage* must assign to *us,* to the extent of *our* payments, the right to any other compensation for it. *We* do not have to make any payment until the *insured* has done this.

c. Under all other coverages, the following apply:

(1) **Subrogation**

If *we* are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, then *we* will be subrogated to that right to the extent of *our* payment.

The *person* or organization to or for whom *we* make payment must help *us* recover *our* payments by:

(a) doing nothing to impair that legal right;

44
9840A

(b) executing any documents *we* may need to assert that legal right; and

(c) taking legal action through *our* representatives when *we* ask.

(2) **Reimbursement**

If *we* make payment under this policy and the *person* or organization to or for whom *we* make payment recovers or has recovered from another *person* or organization, then the *person* or organization to or for whom *we* make payment must:

(a) hold in trust for *us* the proceeds of any recovery; and

(b) reimburse *us* to the extent of *our* payment.

13. **Legal Action Against Us**

Legal action may not be brought against *us* until there has been full compliance with all the provisions of this policy. In addition, legal action may only be brought against *us* regarding:

a. Liability Coverage after the amount of damages an *insured* is legally liable to pay has been finally determined by:

(1) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

(2) agreement between the claimant and *us*.

b. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, and Physical Damage Coverages if the legal action relating to these coverages is brought against *us* within three years immediately following the date of the accident.

c. Underinsured Motor Vehicle Coverage if copies of the pleadings in the action

establishing liability are served upon *us* in the manner provided by law.

14. **Choice of Law**

Without regard to choice of law rules, the law of the state of:

a. South Carolina will control, except as provided in b. below, in the event of any disagreement as to the interpretation and application of any provision in this policy; and

b. Illinois will control in the event of any disagreement as to the interpretation and application of this policy's:

(1) Mutual Conditions provision found on the most recently issued Declarations Page, if this policy was issued by the State Farm Mutual Automobile Insurance Company; or

(2) Participating Policy provision found on the most recently issued Declarations Page, if this policy was issued by any subsidiary or affiliate of the State Farm Mutual Automobile Insurance Company.

15. **Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a. such provision will remain in full force to the extent not held invalid or unenforceable; and

b. all other provisions of this policy will remain valid and enforceable.

16. **Conformity to Law**

The coverage provided by this policy is done so in accordance with South Carolina insurance law. If any provisions of this policy are in conflict with South Carolina statutes, the policy is amended to conform to the minimum requirements of the statutes.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2009

## Common Pleas

**Clerk : Melanie L. Lawson**
**210 W. Main Street**
**Union, SC 29379**
**Phone:(864) 429-1630  Fax:(864) 429-1715**

| | | |
|---|---|---|
| Received From: | Norris, Charles R. | Date: 7/26/2017 |
| | PO Box 1806 | Receipt #:  18141 |
| | Charleston, SC 29402 | Clerk: c44scousin |
| Paying for: | State Farm Fire And Casualty Co | |
| Transaction Type: | Payment | Reference #:  850792 |
| Payment Type: | Check          $25.00 | Comment:  Motion for Summary Judgment |
| Total Paid: | $25.00 | Non-Refundable |

Total Received:          $25.00
Change Due:              $0.00

You may check the status of your Union case at:
http://www.sccourts.org/caseSearch/

| Case # | Caption | Previous Balance | Amount Paid | Balance Due |
|---|---|---|---|---|
| 2016CP4400384 | Magie  Worthy As Pr  VS  State Farm Fire And Casualty Company | $25.00 | $25.00 | $0.00 |

| | | | | |
|---|---|---|---|---|
| **Total Cases:**   1 | | $25.00 | $25.00 | $0.00 |

ReceiptSingleCase.rpt V6.1

STATE OF SOUTH CAROLINA

COUNTY OF UNION

Magie Worthy, as Personal Representative of the Estate
of Tara Shavone Worthy, and as Assignee of Victor
Goode and Stephanie Goode,

Plaintiff,

vs.

State Farm Fire and Casualty Company and Brenda
Spearman,

Defendants.

FILED FOR RECORD
IN THE COURT OF COMMON PLEAS

2017 SEP 7  AM 10 42
Civil Action No. 2016-CP-44-384

CLERK OF COURT
UNION, SC

**MOTION AND ORDER INFORMATION
FORM AND COVER SHEET**

| Plaintiff's Counsel: | Defendant's Counsel: |
|---|---|
| William Hugh McAngus Jr. | Charles R. Norris |
| Chappell Smith & Arden | Nelson Mullins Riley & Scarborough LLP |
| 1510 Calhoun St. | 151 Meeting Street, Suite 600 |
| Columbia, SC 29201 | Charleston, SC 29401 |
| Phone: (803) 929-3600 | Phone: (843) 853-5200 |
| Email: hmcangus@csa-law.com | Fax: (843) 534-4392 |
|  | Email: charles.norris@nelsonmullins.com |

☒ **MOTION HEARING REQUESTED (attach written motion and complete SECTIONS I and III)**
☐ FORM MOTION, NO HEARING REQUESTED (complete SECTIONS II and III)
☐ PROPOSED ORDER/CONSENT ORDER (complete SECTIONS II and III)

**SECTION I: Hearing Information**

Nature of Motion:  **MOTION TO DETERMINE SUFFICIENCY OF RFA RESPONSES**
Estimated Time Needed:    15 min.                    Court Reporter Needed: ☒ Yes / ☐ No

**SECTION II: Motion Type**

☒ **Written motion attached**
☐ Form Motion—I hereby move for relief or action by the court as set forth in the attached proposed order.

_Signature of Attorney for ☐Plaintiff/☒Defendant_          September 5, 2017
                                                           _Date submitted_

**SECTION III: Motion Fee**

☒ **PAID—AMOUNT:** $25.00

☐ EXEMPT:     ☐ Rule to Show Cause in Child or Spousal Support
(check reason)  ☐ Domestic Abuse or Abuse and Neglect
              ☐ Indigent Status                          ☐ State Agency v. Indigent Party
              ☐ Sexually Violent Predator Act            ☐ Post-Conviction Relief
              ☐ Motion for Stay in Bankruptcy
              ☐ Motion for Publication                   ☐ Motion for Execution (Rule 69, SCRCP)
              ☐ Proposed order submitted at request of the court; or,
                reduced to writing from motion made in open court per judge's instructions
                Name of Court Reporter: _____
              ☐ Other:

**JUDGE'S SECTION**

☐ Motion Fee to be paid upon filing of the attached order.       JUDGE
☐ Other:
                                                               CODE: _____  Date: _____

**CLERK'S VERIFICATION**

Collected by: _Shana Causino_                              DATE FILED
              (print name)                                  9-7-17

☒ MOTION FEE COLLECTED:  $25

STATE OF SOUTH CAROLINA    )    FILED FOR RECORD

COUNTY OF UNION    )    IN THE COURT OF COMMON PLEAS
    )    2017 SEP 7    JUDICIAL CIRCUIT
    )    CLERK OF COURT
Magie Worthy, as Personal    )    Civil Action No. 2016-CP-44-384
Representative of the Estate of Tara    )    UNION, SC
Shavone Worthy, and as Assignee of    )
Victor Goode and Stephanie Goode,    )
    )
                        Plaintiff,    )    **DEFENDANTS' MOTION TO**
    )    **DETERMING SUFFICIENCY OF**
    )    **PLAINTIFF'S RESPONSES TO REQUEST**
        vs.    )    **FOR ADMISSIONS**
    )
State Farm Fire and Casualty Company    )
and Brenda Spearman,    )
    )
                        Defendant.    )

Pursuant to SCRCP 36(a) the Defendants moves to determine the sufficiency of the Plaintiff's responses to the Defendants' Request for Admissions. The Plaintiff's responses to the Defendants' Request for Admissions are attached as Exhibit A. These responses deny paragraphs 2, 3, 5 and 6 without any factual basis for denying these paragraphs. Attached as Exhibit B is a letter of August 24, 2017 to counsel for the Plaintiff which establishes the underlying facts of paragraphs 2, 3, 5 and 6 which the Plaintiff has denied. The Defendants are therefore entitled to have the Court determine the sufficiency of the Plaintiff's denial of paragraphs 2, 3, 5 and 6 of the Defendants' Request for Admissions and, if no satisfactory explanation is given for denying these paragraphs, the Defendants are entitled to an Order requiring the Plaintiff to admit these paragraphs. Pursuant SCRCP 11 counsel for the Defendants certifies that he has been unable to resolve this issue, as set forth in the letter which is attached Exhibit B.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: _____

      Charles R. Norris
      SC Bar No. 004238
      E-Mail: charles.norris@nelsonmullins.com
      151 Meeting Street / Sixth Floor
      Post Office Box 1806 (29402-1806)
      Charleston, SC  29401-2239
      (843) 853-5200

*Attorneys for Defendants*

Charleston, South Carolina

September 5, 2017

CERTIFICATE OF SERVICE

I, the undersigned Administrative Assistant of the law offices of Nelson Mullins Riley & Scarborough LLP, attorneys for Defendants, do hereby certify that I have served all counsel in this action with a copy of the pleading(s) herein below specified by mailing a copy of the same by electronic mail to the following address(es):

Pleadings:              **DEFENDANTS' MOTION TO DETERMINE SUFFICIENCY OF PLAINTIFF'S RESPONSE TO REQUEST FOR ADMISSIONS**

Counsel Served:

> W. Hugh McAngus, Jr.
> Post Office Box 12330
> Columbia, SC 29211
> hugh@csa-law.com
>
> *Attorneys for Plaintiff*

Grace Hamill
Administrative Assistant

September 5, 2017

# EXHIBIT A

STATE OF SOUTH CAROLINA )  IN THE COURT OF COMMON PLEAS
                                                    )  CASE NO.: 2016-CP-44-384
COUNTY OF UNION                     )
                                                    )
Magie Worthy, as Personal Representative of )
the Estate of Tara Shavone Worthy, and as )
Assignee of Victor Goode and Stephanie )
Goode,                                          )
                                                    )
                                                    )         **PLAINTIFF'S RESPONSES TO**
                                                    )         **DEFENDANTS' REQUEST FOR**
              Plaintiff,                       )         **ADMISSION TO PLAINTIFF**
                                                    )
       vs.                                    )
                                                    )
State Farm Fire and Casualty Company and )
Brenda Spearman,                        )
                                                    )
                                                    )
                                                    )
              Defendants.                  )
                                                    )

       1.       Admit that Stephanie Goode was deposed on June 27, 2017 and testified

that her cell phone provider was Verizon Wireless, that her cell phone number with

Verizon Wireless was (864) 466-8360 and that in 2014 Verizon Wireless was her cell

phone carrier. (Stephanie Goode Deposition pg. 27, 28)

       **RESPONSE:**

       **Admitted.**

       2.       Admit that Verizon Wireless was served with a subpoena to produce cell

phone calls, text messages or other cellular communications made by Stephanie Goode

with cell phone number (864) 466-8360 from August 2014 through December 2014.

       **RESPONSE:**

       **Denied.**

1

3.    Admit that Verizon Wireless responded to the subpoena by stating that the name Stephanie Goode and the cell phone number in the subpoena did not match a Verizon Wireless account holder.

**RESPONSE:**

**Denied.**

4.    Admit that on June 27, 2017 LaToya McBeth was deposed and testified that she had cell phone coverage with Verizon Wireless going on four years and that her cell phone number is (864) 466-8381. (LaToya McBeth Deposition pg. 7, 8)

**RESPONSE:**

**Admitted.**

5.    Admit that Verizon Wireless was served with a subpoena to produce cell phone calls, text messages or other cellular communications made by LaToya McBeth with cell phone number (864) 466-8381 from August 2014 through December 2014.

**RESPONSE:**

**Denied.**

6.    Admit that Verizon Wireless responded to the subpoena by stating that the name LaToya McBeth and the cell phone number in the subpoena did not match a Verizon Wireless account holder.

**RESPONSE:**

**Denied.**

2

Chappell, Smith & Arden, P.A.

s/W. Hugh McAngus, Jr.
W. Hugh McAngus, Jr.
Attorney for the Plaintiff
Post Office Box 12330
Columbia, South Carolina 29211
(803) 929-3600

August 24, 2017

3

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br>COUNTY OF UNION | IN THE COURT OF COMMON PLEAS<br>CIVIL ACTION NO.: 2016-CP-44-384 |
| Magie Worthy, as Personal Representative of the Estate of Tara Shavone Worthy and as Assignee of Victor Goode and Stephanie Goode, | |
| Plaintiff(s), | |
| vs. | **CERTIFICATE OF SERVICE** |
| State Farm Fire and Casualty Company and Brenda Spearman, | |
| Defendant(s). | |

Bonnie L. Sluce, being first duly sworn, says that she is the paralegal for the Plaintiff(s)' attorney of Chappell, Smith & Arden located at 2801 Devine Street, Suite 300, Columbia, South Carolina; and that on August 24, 2017 she forwarded a copy of the attached Plaintiff's Responses to Defendants' Request for Admission to Plaintiff to:

### *Via Email:*

Charles R. Norris
Nelson, Mullins, Riley
& Scarborough, LLP
P.O. Box 1806
Charleston, SC 29402


s/Bonnie L. Sluce
Bonnie L. Sluce

# EXHIBIT B

# Nelson Mullins

Nelson Mullins Riley & Scarborough LLP
Attorneys and Counselors at Law
151 Meeting Street / Sixth Floor / Charleston, SC  29401-2239
Tel: 843.853.5200  Fax: 843.720.4352
www.nelsonmullins.com

Charles R. Norris
Tel: 843.720.4303
Fax: 843.720.4352
charles.norris@nelsonmullins.com

August 24, 2017

**Via Electronic Mail**
Mr. William Hugh McAngus Jr.
Chappell Smith & Arden
2801 Devine Street, Suite 300
Columbia, SC 29205

RE:    Magie Worthy, as Personal Representative of the Estate of Tara Shavone
       Worthy, and as Assignee of Victor Goode and Stephanie Goode v. State Farm
       Fire and Casualty Company and Brenda Spearman
       Civil Action No. 2016-CP-44-0384
       Corporate File No. 2016-19779-SC
       Our File No. 00500/03456

Dear Hugh:

Your response of August 24, 2017 to State Farm's Request to Admit denies paragraphs 2, 3, 5 and 6. I do not understand the factual basis for denying these paragraphs.

Paragraph 2 of the Request to Admit asks that the Plaintiff admit Verizon Wireless was served with a subpoena to produce cell phone calls, text messages or other cellular communications made by Stephanie Goode with cell phone number (864) 466-8360 from August 2014 through December 2014. Attached is the subpoena to Verizon on which you were copied. Paragraph 2 of the Request to Admit simply repeats what was in the subpoena. I am also attaching our email to you of June 29, 2017 where we sent you a copy of the subpoena to Verizon. In light of this undisputed fact I do not understand the basis for denying paragraph 2.

I am also attaching Verizon Wireless' response to our subpoena which we marked Verizon Subpoena Response 001 to Verizon Subpoena Response 006. I am also attaching my email to you of July 6, 2017 where we sent you the six pages of Verizon's response. As stated on page 6 of Verizon's response, "the names and telephone numbers provided does not match the Verizon Wireless account holder." In light of this response I do not understand the basis for denying paragraph 3 of the Request to Admit.

*With offices in the District of Columbia, Florida, Georgia, Massachusetts, New York, North Carolina, South Carolina, Tennessee and West Virginia*

Mr. William Hugh McAngus Jr.
August 24, 2017
Page 2

This same reasoning applies to your denial of paragraph 5 that Verizon Wireless was served with a subpoena concerning LaToya McBeth and your denial of paragraph 6 concerning its response to that part of the subpoena. Indeed, given the undisputed fact that Verizon Wireless did respond to the subpoena, I do not understand the basis for your denial of paragraphs 2 and 5 that Verizon Wireless was served with a subpoena.

In short, there does not appear to be any factual basis for the Plaintiff's denial of paragraphs 2, 3, 5 and 6. By the end of next week please provide us either with an amended response which admits these paragraphs or, at the very least, with an explanation of the factual basis for denying paragraphs 2, 3, 5 and 6 of the Request to Admit. If we receive neither amended responses nor an explanation for the basis of the denial we will have no choice but to file a motion under Rule 36 to determine the sufficiency of the answers.

Very truly yours,

Charles R. Norris

CRN:ghamill
Enclosures



# Nelson Mullins

Nelson Mullins Riley & Scarborough LLP
Attorneys and Counselors at Law
151 Meeting Street / Sixth Floor / Charleston, SC  29401-2239
Tel: 843.853.5200  Fax: 843.534.4352
www.nelsonmullins.com

Charles R. Norris
Tel: 843.534.4303
Fax: 843.534.4352
charles.norris@nelsonmullins.com

June 29, 2017

<u>**Certified Mail – Return Receipt Requested**</u>
<u>**& Facsimile (325) 949-6916**</u>
Verizon Security Assistance Team
180 Washington Valley Road
Bedminster, NJ 07921

RE:    Magie Worthy, as Personal Representative of the Estate of Tara Shavone Worthy,
and as Assignee of Victor Goode and Stephanie Goode v. State Farm Fire and
Casualty Company and Brenda Spearman
Civil Action No. 2016-CP-44-0384
Corporate File No. 2016-19779-SC
Our File No. 00500/03456

Dear Sir or Madame:

Enclosed for service upon you please find a Subpoena *duces tecum* compelling you to submit
documentation to our office by July 14, 2017 in connection with the above referenced matter that
is currently pending in the Union County Court of Common Pleas. These documents must be
received by our office on or before July 14, 2017 by 5:00 p.m. as indicated on the Subpoena. We
will, of course, pay for any reasonable expense incurred in complying with our request. However,
if this expense exceeds more than One-Hundred Dollars ($100.00) please contact our office in
advance.

By copy of this correspondence, I am advising opposing counsel that these records have been
requested. This letter will serve to notify opposing counsel that once the subject documents have
been received, they will be available for review and copying at our office by appointment. Also,
Defendant State Farm Mutual Automobile Insurance Company reserves the right to utilize the
subject documents in the trial of this action.

Thank you for your anticipated cooperation and assistance. Should you have any questions
concerning the above or enclosed, please do not hesitate to contact our office at the telephone
number listed above.

*With offices in California, Colorado, District of Columbia, Florida, Georgia, Massachusetts, New York, North Carolina, South Carolina, Tennessee, and West Virginia*

Verizon Security Assistance Team
June 29, 2017
Page 2

Very truly yours,

Charles R. Norris

CRN:gh
Enclosure

cc:     W. Hugh McAngus, Jr.
        Bonnie Sluce (*all via email with enclosure*)

# Nelson Mullins

Nelson Mullins Riley & Scarborough LLP
Attorneys and Counselors at Law
151 Meeting Street / Sixth Floor / Charleston, South Carolina 29401-2239
Tel: 843.853.5200  Fax: 843.722.8700
www.nelsonmullins.com

## Facsimile Cover Sheet

TO:      Security Assistance Team          FAX No. (325) 949-6916

COMPANY:  Verizon                CITY: Bedminster

                        PHONE No. (800) 451-524

FROM:    Charles R. Norris          DID No.

RETURN TO:                  FILE No. 00500/03456

DATE/TIME:   6/29/2017 2:32 PM        PAGES: 7  including cover sheet

COMMENTS: Original to follow via Certified Mail RRR

CONFIDENTIALITY NOTICE: The information contained in this facsimile message may be attorney privileged and confidential information and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone, and return the original message to us at the above address via the U.S. Postal Service. Thank you.

*IF YOU DID NOT RECEIVE ALL PAGES, PLEASE CALL BACK AS SOON AS POSSIBLE*          FAX Page 1

P. 1

x  x  x  Communication Result Report ( Jun. 29. 2017  2:52PM ) x  x  x

Date/Time: Jun. 29. 2017  2:33PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|----------|------|-------------|-------|--------|---------------|
| 0559 | Memory TX | 813259496916 | P. 7 | OK | |

Reason for error
E. 1) Hang up or line fail          E. 2) Busy
E. 3) No answer                     E. 4) No facsimile connection
E. 5) Exceeded max. E-mail size     E. 6) Destination does not support IP-Fax

## Nelson Mullins

Facsimile Cover Sheet

TO: Security Assistance Team          FAX No. (212) 949-6916
COMPANY: Verizon                      CITY: Bedminster
                                      PHONE No. (800) 451-524

FROM: Charles R. Norris              DID No.
RETURN TO:                           FILE No. 0050003456
DATE/TIME: 6/29/2017 2:32 PM         PAGES 7 including cover sheet

COMMENTS: Original to follow via Certified Mail RRR

# STATE OF SOUTH CAROLINA

### ISSUED BY THE COMMON PLEAS COURT IN THE COUNTY OF UNION

Magie Worthy, as Personal Representative of the
Estate of Tara Shavone Worthy, and as Assignee of
Victor Goode and Stephanie Goode, Plaintiff

**v.**

SUBPOENA IN A CIVIL CASE

State Farm Fire and Casualty Company and Brenda
Spearman, Defendant

Case Number: 2016-CP-44-0384

Pending in Union County

TO:  **Verizon Security Assistance Team, 180 Washington Valley Road, Bedminster, NJ 07921**
☐ YOU ARE COMMANDED to appear in the above named court at the place, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME          AM |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects in your possession, custody or control at the place, date and time specified below (list documents of objects:

**Any and all records of telephone calls, text messages or any other cellular communications made by Stephanie Goode (Telephone No. 864-466-8360) and by LaToya McBeth (Telephone No. 864-466-8381) from August 2014 through December 2014.**

| PLACE Nelson Mullins Riley & Scarborough, LLP 151 Meeting Street, Suite 600 Charleston, SC 29401 | DATE AND TIME Friday, July 14, 2017, 5:00 PM |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME          AM |
|---|---|

ANY SUBPOENAED ORGANIZATION NOT A PARTY TO THIS IS HEREBY DIRECTED TO RULE 30(b)(6), SOUTH CAROLINA RULES OF CIVIL PROCEDURE, TO FILE A DESIGNATION WITH THE COURT SPECIFYING ONE OR MORE OFFICERS, DIRECTORS, OR MANAGING AGENTS, OR OTHER PERSONS WHO CONSENT TO TESTIFY ON ITS BEHALF, SHALL SET FORTH, FOR EACH PERSON DESIGNATED, THE MATTERS ON WHICH HE WILL TESTIFY OR PRODUCE DOCUMENTS OR THINGS. THE PERSON SO DESIGNATED TESTIFY AS TO MATTERS KNOWN OR REASONABLY AVAILABLE TO THE ORGANIZATION

I CERTIFY THAT THE SUBPOENA IS ISSUED IN COMPLIANCE WITH RULE 45(c)(1), AND THAT NOTICE AS REQUIRED BY RULE 45(b)(1) HAS BEEN GIVEN TO ALL PARTIES.

| | June 29, 2017 | Charles R. Norris |
|---|---|---|
| Attorney/Issuing Officer's Signature | Date | Print Name |

Indicate if Attorney for Plaintiff or Defendant
Attorney's Address and Telephone Number:
Attorney for Defendants, Nelson Mullins Riley & Scarborough, LLP, 151 Meeting Street, Suite 600, Charleston, SC 29401, 843-534-4303, charles.norris @nelsonmullins.com

SCCA 254 (05/2015)                    (See Rule 45, South Carolina Rules of Civil Procedure, Parts (c) & (d) on pages 2 and 3)

Clerk of Court/Issuing Officer's Signature                Date                          Print Name
Pro Se Litigant's Name, Address and Telephone Number :

## PROOF OF SERVICE

| SERVED | DATE June 29, 2017 | FEES AND MILEAGE TO BE TENDERED TO WITNESS UPON DAILY ARRIVAL |
|---|---|---|
| | PLACE    180 Washington Valley Road, Bedminster, NJ 07921 | ☐YES    ☒NO    AMOUNT $ |
| SERVED ON  Verizon Security Assistance Team | | MANNER OF SERVICE    Certified Mail – Return Receipt Requested and Facsimile to (325) 949-6916 |
| SERVED BY Grace Hamill | | TITLE  Administrative Assistant |

## DECLARATION OF SERVER

I certify that the foregoing information contained in the Proof of Service is true and correct.

Executed on June 29, 2017

SIGNATURE OF SERVER

Nelson Mullins Riley & Scarborough, LLP, 151 Meeting Street, Suite 600, Charleston, SC 29401
ADDRESS OF SERVER

Rule 45, South Carolina Rules of Civil Procedures, Parts (c) and (d):

(c) Protection of Persons Subject to Subpoenas.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial. A party or an attorney responsible for the issuance and service of a subpoena for production of books, papers and documents without a deposition shall provide to another party copies of documents so produced upon written request. The party requesting copies shall pay the reasonable costs of reproduction.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time in the court that issued the subpoena for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued, or regarding a subpoena commanding appearance at a deposition, or production or inspection directed to a non-party, the court in the county where the non-party resides, is employed or regularly transacts business in person, shall quash or modify the subpoena if it:

(i) fails to allow reasonable time for compliance; or

(ii) requires a person who is not a party nor an officer, director or managing agent of a party, nor a general partner of a partnership that is a party, to travel more than 50 miles from the county where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held; or

(iii) requires disclosure of privileged or otherwise protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena:

SCCA 254 (05/2015)                    (See Rule 45, South Carolina Rules of Civil Procedure, Parts (c) & (d) on pages 2 and 3)

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party nor an officer, director or managing agent of a party, nor a general partner of a partnership that is a party, to incur substantial expense to travel from the county where that person resides, is employed or regularly transacts business in person, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) Duties in Responding to Subpoena.

(1)(A)A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(6)(B). The court may specify conditions for the discovery.

(2)(A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, the receiving party must take reasonable steps to retrieve the information. The person who produced the information must preserve the information until the claim is resolved.

## Grace Hamill

| | |
|---|---|
| **From:** | Grace Hamill |
| **Sent:** | Thursday, June 29, 2017 2:36 PM |
| **To:** | hugh@csa-law.com; bsluce@csa-law.com |
| **Cc:** | Charles Norris |
| **Subject:** | Worthy v. State Farm |
| **Attachments:** | 2017.06.29 S-L Gary Frost Subpoena.pdf; 2017.06.29 S-L Verizon Subpoena.pdf; 2017.06.29 S-L TD Bank Subpoena.pdf |

Dear Mr. McAngus,
Please find attached State Farm's subpoena to TD Bank, Verizon and Gary T. Frost in the above-referenced matter.
Please let us know if you have any questions or concerns.
Kind regards,

# Nelson Mullins

**Grace Hamill**
Administrative Assistant
grace.hamill@nelsonmullins.com

**Nelson Mullins Riley & Scarborough LLP**
Liberty Center, Suite 600
151 Meeting Street, Charleston, SC 29401
Tel: 843.534.4870

www.nelsonmullins.com

1

## Verizon Wireless Workflow Manager

# FAX COVER PAGE

| To | Charles R. Norris |
|---|---|
| To Fax Number | 8435344352 |
| From Analyst | Jana I. |
| From Phone Number | 8004515242 |
| From Fax Number | 8886670028 |
| Case ID | 170150728 |

Comments:

## Please note, VzW fax numbers have changed to:

**Subpoenas    : 888-667-0028**
**Court Orders : 888-667-0026**
**Surveillance : 800-267-9129**
**Exigent      : 800-345-6720**

Please note that the time reflected on any call detail report or bill copy is reflective of the switch that processed the call, which may not be the same as the clock time at the cell site where the call was initiated.

The information contained in this message and any attachment may be proprietary, confidential and privileged or subject to the work product doctrine and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify me immediately by replying to this message and deleting it and all copies and backups thereof. Thank you.

Worthy - Verizon Subpoena Response - 001

# STATE OF SOUTH CAROLINA

## ISSUED BY THE COMMON PLEAS COURT IN THE COUNTY OF UNION

Magie Worthy, as Personal Representative of the
Estate of Tara Shavone Worthy, and as Assignee of
Victor Goode and Stephanie Goode, Plaintiff

v.

State Farm Fire and Casualty Company and Brenda
Spearman, Defendant

**SUBPOENA IN A CIVIL CASE**

Case Number: 2016-CP-44-0384

Pending in Union County

TO: Verizon Security Assistance Team, 180 Washington Valley Road, Bedminster, NJ 07921

☐ YOU ARE COMMANDED to appear in the above named court at the place, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME          ,          AM |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects in your possession, custody or control at the place, date and time specified below (list documents of objects:

Any and all records of telephone calls, text messages or any other cellular communications made by Stephanie Goode (Telephone No. 864-466-8360) and by LaToya McBeth (Telephone No. 864-466-8381) from August 2014 through December 2014.

| PLACE Nelson Mullins Riley & Scarborough, LLP 151 Meeting Street, Suite 600 Charleston, SC 29401 | DATE AND TIME Friday, July 14, 2017, 5:00 PM |
| --- | --- |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME          ,          AM |
| --- | --- |

ANY SUBPOENAED ORGANIZATION NOT A PARTY TO THIS IS HEREBY DIRECTED TO RULE 30(b)(6), SOUTH CAROLINA RULES OF CIVIL PROCEDURE, TO FILE A DESIGNATION WITH THE COURT SPECIFYING ONE OR MORE OFFICERS, DIRECTORS, OR MANAGING AGENTS, OR OTHER PERSONS WHO CONSENT TO TESTIFY ON ITS BEHALF, SHALL SET FORTH, FOR EACH PERSON DESIGNATED, THE MATTERS ON WHICH HE WILL TESTIFY OR PRODUCE DOCUMENTS OR THINGS. THE PERSON SO DESIGNATED TESTIFY AS TO MATTERS KNOWN OR REASONABLY AVAILABLE TO THE ORGANIZATION

I CERTIFY THAT THE SUBPOENA IS ISSUED IN COMPLIANCE WITH RULE 45(e)(1), AND THAT NOTICE AS REQUIRED BY RULE 45(b)(1) HAS BEEN GIVEN TO ALL PARTIES.

_____        June 29, 2017        Charles R. Norris
Attorney/Issuing Officer's Signature              Date              Print Name
Indicate if Attorney for Plaintiff or Defendant
Attorney's Address and Telephone Number:
Attorney for Defendants, Nelson Mullins Riley & Scarborough, LLP, 151 Meeting Street, Suite 600, Charleston, SC 29401, 843-534-
4303, charles.norris @nelsonmullins.com

SCCA 254 (05/2015)                    (See Rule 45, South Carolina Rules of Civil Procedure, Parts (u) & (d) on pages 2 and 3)

Worthy - Verizon Subpoena Response - 002

Clerk of Court/Issuing Officer's Signature                    Date                    Print Name
Pro Se Litigant's Name, Address and Telephone Number :

Worthy - Verizon Subpoena Response - 003

## PROOF OF SERVICE

| SERVED | DATE June 29, 2017 | FEES AND MILEAGE TO BE TENDERED TO WITNESS UPON DAILY ARRIVAL |
| --- | --- | --- |
| | PLACE  180 Washington Valley Road, Bedminster, NJ 07921 | ☐YES  ☒NO    AMOUNT $ |
| SERVED ON Verizon Security Assistance Team | | MANNER OF SERVICE  Certified Mail — Return Receipt Requested and Facsimile to (325) 949-6916 |
| SERVED BY Grace Hamill | | TITLE Administrative Assistant |

### DECLARATION OF SERVER

I certify that the foregoing information contained in the Proof of Service is true and correct.

Executed on June 29, 2017

SIGNATURE OF SERVER

Nelson Mullins Riley & Scarborough, LLP, 151 Meeting Street, Suite 600, Charleston, SC 29401
ADDRESS OF SERVER

---

Rule 45, South Carolina Rules of Civil Procedures, Parts (c) and (d):

(c) Protection of Persons Subject to Subpoenas.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial. A party or an attorney responsible for the issuance and service of a subpoena for production of books, papers and documents without a deposition shall provide to another party copies of documents so produced upon written request. The party requesting copies shall pay the reasonable costs of reproduction.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time in the court that issued the subpoena for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued, or regarding a subpoena commanding appearance at a deposition, or production or inspection directed to a non-party, the court in the county where the non-party resides, is employed or regularly transacts business in person, shall quash or modify the subpoena if it:

(i) fails to allow reasonable time for compliance; or

(ii) requires a person who is not a party nor an officer, director or managing agent of a party, nor a general partner of a partnership that is a party, to travel more than 50 miles from the county where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held; or

(iii) requires disclosure of privileged or otherwise protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena:

SCCA 254 (05/2015)          (See Rule 45, South Carolina Rules of Civil Procedure, Parts (c) & (d) on pages 2 and 3)

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party nor an officer, director or managing agent of a party, nor a general partner of a partnership that is a party, to incur substantial expense to travel from the county where that person resides, is employed or regularly transacts business in person, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) Duties in Responding to Subpoena.

(1)[A]A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(6)(B). The court may specify conditions for the discovery.

(2)(A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, the receiving party must take reasonable steps to retrieve the information. The person who produced the information must preserve the information until the claim is resolved.

Worthy - Verizon Subpoena Response - 005

From Verizon                    Thu 06 Jul 2017 11:37:31 AM EDT                    Page 6 of 6

Verizon Security Subpoena Compliance
180 Washington Valley Road
Bedminster, NJ 07921
PHONE: 800-451-5242 FAX: 888-667-0028

July 6, 2017

Nelson Mullins Riley & Scarborough, LLP
151 Meeting Street, Suite 600
Charleston, SC  29401

Verizon Case #: 170150728
Docket/ File #: 2016-CP-44-0384
Target: 864-466-8360 and 864-466-8381

To: Charles R. Norris:

Please note: The attached request is being returned for the following reason(s):

(X) The names and telephone numbers provided does not match the Verizon Wireless account
holder. Please review the numbers and if accurate provide a revised subpoena requesting records
by telephone numbers only, omitting names.

*Please note there is an associated processing fee of $75 per hour, plus shipping.

Sincerely,

Jana L
Verizon Subpoena Compliance Coordinator

**Grace Hamill**

| | |
|---|---|
| **From:** | Charles Norris |
| **Sent:** | Thursday, July 6, 2017 12:32 PM |
| **To:** | Hugh McAngus (Hugh@csa-law.com); Bonnie Sluce (bsluce@csa-law.com) |
| **Subject:** | FW: Worthy v. State Farm |
| **Attachments:** | Worthy Verizion Sub Resp 001 - 006.pdf |

Hugh, attached is the response of Verizon Wireless to our subpoena which we have marked Verizon Wireless Subpeona Response 001 to 006.

# Nelson Mullins

**Charles R. Norris**
Attorney at Law
charles.norris@nelsonmullins.com

### Nelson Mullins Riley & Scarborough LLP

Liberty Center, Suite 600
151 Meeting Street, Charleston, SC 29401
Tel: 843.534.4303
Fax: 843.534.4352

www.nelsonmullins.com
(View Bio)

**From:** Grace Hamill
**Sent:** Thursday, July 6, 2017 12:29 PM
**To:** Charles Norris <charles.norris@nelsonmullins.com>
**Subject:** Worthy v. State Farm

# Nelson Mullins

**Grace Hamill**
Administrative Assistant
grace.hamill@nelsonmullins.com

### Nelson Mullins Riley & Scarborough LLP

Liberty Center, Suite 600
151 Meeting Street, Charleston, SC 29401
Tel: 843.534.4870

www.nelsonmullins.com

1

# Nelson Mullins

**Nelson Mullins Riley & Scarborough LLP**
Attorneys and Counselors at Law
151 Meeting Street / Sixth Floor / Charleston, SC  29401-2239
Tel: 843.853.5200  Fax: 843.720.4352
www.nelsonmullins.com

FILED FOR RECORD

2017 SEP  7  AM 10:42  Charles R. Norris

CLERK OF COURT    Tel: 843.720.4303
Fax: 843.720.4352
UNION, SC  charles.norris@nelsonmullins.com

September 5, 2017

The Honorable June Miller
Union County Clerk of Court
210 West Main Street
Union, SC 29379

RE:    Magie Worthy, as Personal Representative of the Estate of Tara Shavone
       Worthy, and as Assignee of Victor Goode and Stephanie Goode v. State Farm
       Fire and Casualty Company and Brenda Spearman
       Civil Action No. 2016-CP-44-0384
       Corporate File No. 2016-19779-SC
       Our File No. 00500/03456

Dear Ms. Miller:

Please find enclosed for filing the original and one (1) copy of the Defendants' Motion to
Determine Sufficiency of Plaintiff's Responses to Request for Admissions in the above-
referenced matter. We would appreciate your filing the original and returning the clocked-in
copy to our office via the self-addressed, postage paid envelope provided. Please do not hesitate
to contact me should you have any questions or concerns.

By copy of this letter to counsel for the Plaintiff we are serving him with a copy of the Motion
for Summary Judgment.

Very truly yours,

*Cl R. N*

Charles R. Norris

CRN:ghamill
Enclosure

cc:    W. Hugh McAngus, Jr. (*via e-mail w/ enclosure*)

*With offices in the District of Columbia, Florida, Georgia, Massachusetts, New York, North Carolina, South Carolina, Tennessee and West Virginia*

# Common Pleas

**Clerk : Melanie L. Lawson**
**210 W. Main Street**
**Union, SC 29379**
**Phone:(864) 429-1630  Fax:(864) 429-1715**

| | | |
|---|---|---|
| Received From: | Norris, Charles R. | Date: 9/ 7/2017 |
| | PO Box 1806 | Receipt #:  18315 |
| | Charleston, SC 29402 | Clerk:  c44scousin |
| Paying for: | State Farm Fire And Casualty Cc | |
| Transaction Type: | Payment | Reference #:  854085 |
| Payment Type: | Check          $25.00 | Comment:  Motion Fee |
| Total Paid: | $25.00 | Non-Refundable |

Total Received:          $25.00
Change Due:          $0.00          You may check the status of your Union case at:
http://www.sccourts.org/caseSearch/

| Case # | Caption | Previous Balance | Amount Paid | Balance Due |
|---|---|---|---|---|
| 2016CP4400384 | Magie  Worthy As Pr  VS  State Farm Fire And Casualty Company | **$25.00** | **$25.00** | **$0.00** |



| | | | | |
|---|---|---|---|---|
| **Total Cases:** | **1** | **$25.00** | **$25.00** | **$0.00** |

ReceiptSingleCase.rpt V6.1

STATE OF SOUTH CAROLINA

COUNTY OF UNION

FILED FOR RECORD

2017 SEP 11 IN THE COURT OF COMMON PLEAS
JUDICIAL CIRCUIT
CLERK OF COURT
UNION, Civil Action No. 2016-CP-44-384

Magie Worthy, as Personal
Representative of the Estate of Tara
Shavone Worthy, and as Assignee of
Victor Goode and Stephanie Goode,

Plaintiff,

vs.

State Farm Fire and Casualty Company
and Brenda Spearman,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**DEFENDANTS' MEMORANDUM IN
SUPPORT OF MOTION FOR SUMMARY
JUDGMENT**

This lawsuit involves the question of whether an automobile insurance policy was cancelled prior to an accident. It was, and there is therefore no coverage for the accident.

## THE ACCIDENT, THE CONFESSION OF JUDGMENT AND THE ASSIGNMENT

On December 12, 2014 Victor Goode was a permissive user of a 2006 Ford Mustang. On that date Goode caused a collision which resulted in the death of Tara Worthy. (Plaintiff's Complaint, ¶ 9) After the accident Magie Worthy, the duly appointed Personal Representative of the Estate of Tara Worthy, filed suit in Union County against Victor Goode. (Civil Action No. 2015-CP-44-118) On March 2, 2016 Victor Goode confessed judgment to Magie Worthy of $2 million. (See, Judgment dated March 2, 2016 in 2015-CP-44-118) Victor Goode's mother, Stephanie Goode, was not sued by Worthy and did not confess to any judgment in favor of Worthy. Thereafter, Victor Goode and Stephanie Goode made an assignment to Worthy of the Goodes' claims against State Farm Fire and Casualty Company (State Farm). (Magie Worthy Deposition, Exhibit 11) This lawsuit ensued.

Prior to the Goodes' assignment the Plaintiff made a demand to State Farm to settle Worthy's claim against Goode for the liability limits of the policy of $25,000. (Plaintiff's Complaint, ¶ 11; Plaintiff's Complaint, Exhibit 3) This offer was declined as State Farm had previously informed the named insured Stephanie Goode that no coverage existed for the December 12, 2014 accident because the policy was not in force on the date of the loss. (Stephanie Goode Deposition, Exhibit 11)

**THE CANCELLATION OF THE POLICY**

The policy issued by State Farm to Stephanie Goode provided that State Farm could cancel the policy if the premium was not paid when due. The language of the policy concerning cancellation was:

> **b. How and When We May Cancel**
>
> *We* may cancel this policy by mailing or delivering a written notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page. The notice will provide the date cancellation is effective.
>
> **(1)** If *we* mail or deliver a cancellation notice:
>
> > **(a)** during the first 90 days following this policy's effective date; or
> >
> > **(b)** because the premium is not paid when due,
>
> then the date cancellation is effective will be at least 15 days after the date *we* mail or deliver the cancellation notice.
>
> Otherwise, the date cancellation is effective will be at least 20 days after the date *we* mail or deliver the cancellation notice.

Payments on the auto policy were made on a monthly basis through State Farm Payment Plan (SFPP). (Kelly Thomas Affidavit, ¶ 3, 5) Prior to October 2014 Stephanie Goode insured

two cars and paid for the insurance through SFPP – a 2008 Chevrolet and 2008 Honda. The account holder under SFPP was Stephanie Goode's daughter, LaToya McBeth. (Kelly Thomas Affidavit, ¶ 5, 6) On October 7, 2014 Stephanie Goode asked that a third vehicle – a 2006 Ford – be added to the SFPP account. This addition of a third insured vehicle created an additional premium of $426.98 and resulted in an amount due to SFPP for insurance on all three cars of $1,216.17. As of October 28, 2014 these payments had not been made. Accordingly, on October 28, 2014 State Farm issued a past due notice to both the named insured Stephanie Goode and to the account holder LaToya McBeth. (Kelly Thomas Affidavit, ¶ 7)

On November 20, 2014 a payment of $535 was made to State Farm, but this payment still left an amount owed on the three policies of $650.60. (Kelly Thomas Affidavit, ¶ 8, 9) Because the amount owed on the past due notice sent in late October 2014 had not been paid, State Farm issued a cancellation notice on November 21, 2014. The cancellation notice stated the policy would cancel at 12:01 a.m. on December 11, 2014 if the amount owed was not paid. The cancellation notice was sent to both LaToya McBeth and to Stephanie Goode at 130 Rowell Lane in Union, South Carolina, the address on the declarations page of the policy. (Kelly Thomas Affidavit, ¶ 10; Exhibit A) These notices were mailed with a return address. Had the cancellation notices been returned to State Farm it would have a record that the notices were returned. State Farm has no record that the cancellation notices mailed to McBeth and Goode on November 21, 2014 were returned by the U.S. Postal Service as not having been delivered. (Kelly Thomas Affidavit, ¶ 11)

From the date of the cancellation notice sent to LaToya McBeth and Stephanie Goode on November 21, 2014 to the cancellation date of 12:01 a.m. on December 11, 2014 State Farm received no further payment from either McBeth or Goode. As a result, the policies on all three

cars cancelled at 12:01 a.m. on December 11, 2014 as stated in the cancellation notices. (Kelly Thomas Affidavit, ¶ 12) On the day after the December 12, 2014 accident between Victor Goode and Tara Worthy, someone went to the State Farm agent's office and made a payment of $656.60 to the agent. SFPP applied this payment on December 15, 2014 and as a result of that payment a reinstatement notice was sent to Stephanie Goode. This notice stated there was no coverage between the date and time of cancellation on December 11, 2014 at 12:01 a.m. and the date and time of reinstatement which was December 13, 2014. Consequently, there was no coverage on the 2006 Ford on December 12, 2014. (Kelly Thomas Affidavit, ¶ 13; Exhibit B)

The details of the preparation and mailing of the notices of cancellation are set forth in the Affidavits of Arlove Perkins-Lambert and Thomas Bass. The exhibits to Lambert's Affidavit are the records of the mailing of the cancellation notice both to LaToya McBeth and to Stephanie Goode on November 21, 2014. The cancellation notices were picked up from State Farm's office by Pitney Bowes Presort Services. The notices picked up by Pitney Bowes were delivered to the U.S. Postal Service. (Thomas Bass Affidavit, ¶ 10)

### SOUTH CAROLINA LAW ON CANCELLATION OF AUTOMOBILE INSURANCE POLICIES

There is a statutory process for cancellation of automobile insurance policies. Section 38-77-123(B)(2) of the South Carolina Code provides that no insurer shall cancel a policy except for two reasons, one of which is that:

> The named insured fails to pay the premium for the policies or any installment of the premium, whether payable to the insurer or its agent either, directly or indirectly under any premium finance plan or extension of credit.

Section 38-77-120 sets forth the requirements for a notice of cancellation. Subsection 38-77-120(a) provides that no cancellation is effective unless the insurer delivers or mails to the

4

named insured at the address shown in the policy a written notice of the cancellation. The Affidavits of Kelly Thomas, Arlove Perkins-Lambert and Thomas Bass establish that a notice of cancellation was mailed to the named insured at the address shown in the policy.

A liability insurance policy can be cancelled by an insurer when the insured fails to make payment of the premium for the policy period. GEICO v. Mackey, 195 S.E. 2d 830 (S.C. 1973) Where an insurer gives proper notice of cancellation and no payment is received, the policy is terminated at the time of cancellation. State Auto Casualty v. Brannon, 426 S.E. 2d 810 (S.C. App. 1992)

It appears to be the Plaintiff's position, as assignee of Victor Goode and Stephanie Goode, that the cancellation was ineffective because Stephanie Goode claims she did not receive the notice of cancellation. However, both State Farm's policy and § 38-77-120 state that the insurer may cancel the policy by <u>mailing or</u> delivering a written notice to the most recent address on record. Where a cancellation clause provides an insurer may cancel by mailing notice to the insured's address or where it contains substantially similar language **the mere mailing is sufficient to effect cancellation.** Moore v. Palmetto Bank, 120 S.E. 2d 231 (S.C. 1961) Accordingly, the claim by Stephanie Goode that she never received the notice of cancellation does not preclude the effectiveness of the cancellation. Because the policy was cancelled at 12:01 a.m. on December 11, 2014, no policy was in place at the time of Victor Goode's accident on December 12, 2014.

In State Auto v. Brannon, 426 S.E. 2d 810 (S.C. App. 1992), the insurer issued a notice of cancellation effective at 12:01 a.m. on September 27, 1988 unless Brannon paid the premium before that date. Brannon failed to pay the premium, the policy cancelled and the Court held

there was no coverage for Brannon's accident on September 27 at 11:00 p.m. Brannon is on point with the facts of this case and requires dismissal of the Plaintiff's lawsuit.

As for the Plaintiff's claim that State Farm acted in bad faith by not accepting an offer to settle the claims against Victor Goode for the liability limits of $25,000, the requirement that an insurer not unreasonably refuse or fail to settle within the policy limits does not apply to a personal injury claim if it is not covered by the policy. Trotter v. State Farm, 377 S.E. 2d 343, 349 (S.C. App. 1988)

### THE PLAINTIFF'S CLAIM AGAINST BRENDA SPEARMAN SHOULD BE DISMISSED

The Plaintiff's Complaint alleges Brenda Spearman was an agent for State Farm. (Plaintiff's Complaint,¶ 2) It further alleges Spearman made a false representation to Stephanie Goode that the policy was in force and effect and that Goode relied on Spearman's representation. (Plaintiff's Complaint,¶ 30, 33) This theory of liability fails for two reasons. First, Stephanie Goode has no damages to assign to the Plaintiff. Second, the Plaintiff cannot prove any false representation by Brenda Spearman to Stephanie Goode or Victor Goode.

Magie Worthy as assignee stands in the shoes of the assignors, here Victor Goode and Stephanie Goode. Bank of America v. Draper, 746 S.E. 2d 478 (S.C. App. 2013) The assignee can claim no higher rights than the assignor possessed at the time of the assignment. Peterson v. West American Insurance Company, 518 S.E. 2d 608, 612 (S.C. App. 1999)

Victor Goode has no claim against Brenda Spearman because he had no discussions with the Spearman Agency. (Victor Goode Deposition, pg. 19, 34) Accordingly, Victor Goode has no claim of misrepresentation to him by Brenda Spearman which he could assign to the Plaintiff.

Victor Goode's mother, Stephanie Goode, also has no claim against Brenda Spearman because she never met Spearman and she conceded that neither Spearman nor anyone in Spearman's office told her anything false. (Stephanie Goode Deposition, pg. 73, 74; 76)

Finally, it is undisputed that Stephanie Goode was never sued by Magie Worthy and the confession of judgment to Magie Worthy was by Victor Goode, not Stephanie Goode. Because Magie Worthy never sued Stephanie Goode and no judgment was entered against Stephanie Goode (Stephanie Goode Deposition, pg. 68 – 70), Stephanie Goode has no damages to assign to the Plaintiff. The only assignee with damages to assign to the Plaintiff – Victor Goode – had no dealings whatsoever with Brenda Spearman and therefore has no claim that Spearman made a misrepresentation. For these reasons, the Plaintiff's claims against Brenda Spearman should be dismissed.

## THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE FIRST CAUSE OF ACTION ALLEGING BAD FAITH.

When an insurer has a reasonable ground for denying a claim it is entitled to summary judgment on the cause of action alleging breach of the duty of good faith and fair dealing. Helena Chemical Company v. Lexington Insurance Company, 594 S.E. 455, 462 (S.C. 2004); BMW of North America v. Complete Auto Recon Services, 731 S.E. 2d 902 (S.C. App. 2012) When there is no coverage for the claim, an insurer cannot have acted in bad faith in refusing to pay the claim. BMW of North America, Supra. Here, no coverage existed because the policy was cancelled prior to the accident and, therefore, State Farm as a matter of law had a reasonable ground for contesting the claim.

**THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE THIRD CAUSE OF ACTION ALLEGING "NEGLIGENT/PROFESSIONAL NEGLIGENCE".**

There is no duty upon an insurance agent to cancel a policy. Instead, the right to cancel and the procedures for cancellation rest solely upon the insurer. Additionally, although the third cause of action is against "all defendants" and alleges the Defendants owed Victor and Stephanie Goode the duty of good faith and fair dealing (Plaintiff's Complaint, ¶ 23), the duty of good faith and fair dealing is inapplicable to one who is not a party to the contract of insurance such as, for example, an insurance agent. St. Paul Fire and Marine v. Carolina Bank and Trust, 310 S.E. 2d 163 (S.C. App. 1983) There is also no evidence that the Defendant Brenda Spearman undertook any duty to offer advice to either Stephanie or Victor Goode because neither Victor nor Stephanie Goode had any relationship with Brenda Spearman.

## CONCLUSION

It is undisputed that State Farm mailed to the address of Stephanie Goode shown in the declarations page of the policy a notice of cancellation. It is undisputed the last payment made by LaToya McBeth or Stephanie Goode - $535 on November 24, 2014 (Stephanie Goode Deposition, pg. 83, 84) – was insufficient to carry the insurance on the insured automobiles past 12:01 a.m. on December 11, 2014. (Kelly Thomas Affidavit, ¶ 9, 10) It is undisputed that the mailing of the notice of cancellation is sufficient to effect a cancellation even if the insured denies receipt of the notice of cancellation. It is therefore undisputed that the policy cancelled prior to Victor Goode's accident on December 12, 2014 with Tara Worthy and as a result the policy was not in place to provide coverage for that accident. Under these undisputed facts the Defendants are entitled to summary judgment on all causes of action.

8

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: _____

Charles R. Norris
SC Bar No. 004238
E-Mail: charles.norris@nelsonmullins.com
151 Meeting Street / Sixth Floor
Post Office Box 1806 (29402-1806)
Charleston, SC  29401-2239
(843) 853-5200

*Attorneys for Defendants*

Charleston, South Carolina

September 7, 2017

9

# MAGIE WORTHY DEPOSITION EXHIBIT 11



## ASSIGNMENT OF CLAIMS

This Assignment of Claims ("Agreement") is entered into as of May ___, 2016 by and between Magie Worthy, as Personal Representative of the Estate of Tara Worthy ("Assignee") and Victor Goode and Stephanie Goode, as well as their successors; predecessors; and assigns; (hereinafter collectively referred to as "Assignors").

### RECITALS

Whereas Assignee has asserted personal injury and wrongful death and survivorship claims against Assignors, in which Assignee seeks damages for injuries and death sustained in an automobile collision involving a vehicle owned by Stephanie Goode and being driven by Victor Goode in which Tara Worthy suffered personal injuries and death. (hereinafter, the "Incident");

Whereas Assignors had a liability insurance policy in force and effect with State Farm Fire and Casualty Company ("State Farm") insuring the vehicle owned by Stephanie Goode and being driven by Victor Goode;

Whereas State Farm has alleged that Assignors' liability policy was cancelled prior to the date of the Incident;

Whereas Assignee and Assignors believe that the liability policy was not properly or effectively cancelled prior to the date of the Incident;

Whereas Assignee made a policy limits settlement demand to State Farm that would relieve Assignors of any personal liability for damages arising out of the Incident;

Whereas State Farm declined to accept Assignee's settlement demand;

Whereas Assignee then instituted a wrongful death and survival action claim against Victor Goode styled Magie Worthy, as Personal Representative of the Estate of Tara Shavone Worthy v. Victor W. Goode, C/A 2015-CP-44-118 (the "Lawsuit");

Whereas Victor W. Goode has confessed judgment in the Lawsuit in the amount of $2,000,000.00;

Whereas Assignors may possess rights, claims, causes of action, demands, obligations, actions, attorney's fees, expenses, and any other compensation known or unknown against State Farm arising out of its attempted cancellation of the liability policy and its refusal to pay benefits under the liability policy to the Assignee for damages arising out of the Incident;

Whereas Assignee desires to file a civil action against State Farm, or any other liable person, partnership, firm, or entity to determine if the liability policy was wrongfully or improperly cancelled;

Whereas Assignors desire to assign to the Assignee any and all rights, claims, causes of

Worthy Plaintiff's
Production 001

action, demands, obligations, actions, attorney's fees, expenses, and any other compensation known or unknown that Assignors may have against State Farm or any other person, partnership, firm, or entity arising out of the alleged cancellation of the above-referenced liability policy as well as State Farm's refusal to settle Assignee's claims arising out of the Incident.

## AGREEMENT

In consideration of the foregoing recitals and the promises, covenants, and consideration contained herein, the receipt and sufficiency of which are hereby acknowledged, Assignors and Assignee agree to the following:

### 1. Assignment

After receiving the advice of independent counsel, Assignors hereby forever, unconditionally, and irrevocably assigns, transfers, and conveys to Assignee any and all rights, claims, causes of action, demands, obligations, actions, attorney's fees, expenses, and any other compensation known or unknown that Assignors may have against State Farm, or any other person, partnership, firm, or entity arising out of the alleged cancellation of the above-referenced liability policy;

Such assignment includes, but is not limited to, all rights, claims, causes of actions, demands, obligations, actions, attorney's fees, expenses, and any other claims Assignors may have against State Farm's attempted cancellation of the above-referenced liability policy or any other policies that may provide coverage for the claims asserted by the Assignee arising out of the Incident, whether sounding in contract, tort, negligence, breach of any duty, declaratory judgment, misrepresentation, breach of contract accompanied by fraudulent act, bad faith, or any other cause of action, including for actual and punitive damages;

The parties further agree that the Assignee may pursue such assigned claims in their own names or as Assignee of Victor Goode and Stephanie Goode and Assignors expressly authorize such a lawsuit to be filed in their name, in the Assignee's name, or in the Assignee's names as Assignee of Victor Goode and Stephanie Goode, as chosen by Assignee' counsel.

In consideration of this assignment, transfer, and conveyance, Assignee agrees and covenants not to institute any further claims, lawsuits, or causes of action against Assignors, other than as needed to collect any proceeds, judgments, awards, or coverages arising out of the resolution of any lawsuits or claims filed by Assignee against State Farm or any other persons, partnerships, firms, or entities as contemplated in this Agreement.

### 2. Non-Reliance and Representation of Comprehension of Document

Assignors and Assignee represent that they have not relied on any statement, representation, omission, inducement, or promise of any other party (or any officer, agent, employee, representative, or attorney for any other party) in executing this Agreement, except as

2

Worthy Plaintiff's
Production 002

expressly provided for herein.  In entering into this Agreement, Assignors and Assignee represent that they are aware of the legal consequences of this Agreement; that they have read the terms of this Agreement and fully understand and accept all terms; that they have had the opportunity to consult with Counsel with respect to this Agreement and Counsel has explained it to their satisfaction; and that Assignors and Assignee are executing this Agreement of their own free act and deed.

### 3.  Warranty of Capacity to Execute Agreement

Assignors represent and warrant that no other person or entity has or had any interest in the claims, demands, obligations, or causes of action referred to in this Agreement.  Assignors expressly represents and warrants that they have the sole and exclusive authority to execute this Agreement and assign the claims specified in it and that Assignors have not sold, assigned, transferred, conveyed, or otherwise disposed of any of the claims, demands, obligations, or causes of action referred to in this Agreement.

### 4.  Entire Agreement and Successors in Interest

This Agreement contains the entire assignment between Assignors and Assignee with regard to the matters set forth in it and shall be binding upon the executors, administrators, heirs, successors, and assigns of Assignors and Assignee.  The parties to this Agreement understand and agree that all terms of this Agreement are contractual and not merely a recital.

### 5.  Counterparts, Facsimile, and Electronic Mail

This Agreement may be signed in counterparts. The parties further contemplate that this Agreement may be signed and transmitted via facsimile or via electronic mail.  A signature received via facsimile or electronic mail shall be deemed to be an original signature for all intents and purposes.

### 6.  Governing Law

This Agreement shall be governed in all respects in accordance with the laws of South Carolina.

### 7.  Effectiveness

This Agreement shall become effective immediately following execution by the parties listed below:

(REMAINDER OF PAGE INTENTIONALLY BLANK)

3

Worthy Plaintiff's Production 003

## ASSIGNMENT OF CLAIMS

_Victor Goode_

VICTOR · GOODE, ASSIGNOR ON
BEHALF OF HIMSELF AND HIS
EXECUTORS, HEIRS, SUCCESSORS,
AND ASSIGNS, AS WELL AS FOR ALL
OTHERS WHO MAY OR DO HAVE AN
INTEREST IN THIS MATTER

SWORN TO AND SUBSCRIBED BEFORE ME
THIS ___6th___ DAY OF _May_____ , 20_16_

_Renee C. Nicholson_

NOTARY PUBLIC
My Commission Expires: _1-11-17_

(REMAINDER OF PAGE INTENTIONALLY BLANK)

4

Worthy Plaintiff's
Production 004

## ASSIGNMENT OF CLAIMS

*Stephanie Goode*

STEPHANIE GOODE, ASSIGNOR ON
BEHALF OF HERSELF AND HER
EXECUTORS, HEIRS, SUCCESSORS,
AND ASSIGNS, AS WELL AS FOR ALL
OTHERS WHO MAY OR DO HAVE AN
INTEREST IN THIS MATTER

SWORN TO AND SUBSCRIBED BEFORE ME
THIS _____ 6th _____ DAY OF _____ May _____, 2016.

*Renee C. Nicholson*

NOTARY PUBLIC
My Commission Expires: 1-11-17

(REMAINDER OF PAGE INTENTIONALLY BLANK)

5

Worthy Plaintiff's
Production 005

## ASSIGNMENT OF CLAIMS

_Magie L. Worthy_

MAGIE WORTHY AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
TARA WORTHY

SWORN TO AND SUBSCRIBED BEFORE ME
THIS _____ DAY OF _____, 20__.

_____
NOTARY PUBLIC
My Commission Expires:

(REMAINDER OF PAGE INTENTIONALLY BLANK)

6

Worthy Plaintiff's
Production 006

STEPHANIE GOODE DEPOSITION EXHIBIT 11



Providing Insurance and Financial Services
Home Office, Bloomington, IL

**StateFarm®**

March 17, 2015

Stephanie Goode                          State Farm Claims
130 Rowell Ln                            P. O. Box 106145
Union SC  29379-8086                     Atlanta GA 30348-6145

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

RE:   Claim Number:       40-574P-112
      Date of Loss:       December 12, 2014
      Our Insured:        Stephanie Goode
      Place of Incident:  Jonesville Lockhart Hwy
      Policy Number(s):   513789540

Dear Stephanie Goode:

We have completed our investigation as to whether Policy Number 513789540 applies to the
incident that occurred on December 12, 2014 and must inform you we disclaim any and all
coverage because your policy was not in force for the date of loss..

If you have any new information pertaining to your claim that you would like us to consider, or if you
have any questions, please contact us.

Sincerely,

Thelma Long
Claim Representative

(866) 527-4120 Ext. 7704183206
Fax: (888) 870-0317

State Farm Fire and Casualty Company

Worthy SF 135

# VICTOR GOODE DEPOSITION EXCERPTS

# Deposition of:

# VICTOR GOODE

## MAGIE WORTHY
## vs.
## STATE FARM, ET AL.

## CASE NO.  2016-CP-44-384

## June 27, 2017



**Magnolia Reporting**
Magnolia Reporting
Phone: (843) 442-2753
Email: teri.sampson@gmail.com
Internet: www.MagnoliaReporting.com

VICTOR GOODE - 6/27/2017

Page 19

1    at State Farm about the policy?

2        A    No, sir.

3        Q    Have you ever had any discussions at the

4    Brenda Spearman agency?

5        A    No, sir.

6        Q    Now, you live with your mother off and on; is

7    that right?

8        A    Yes, sir.

9        Q    Has she ever had any complaints about State

10   Farm?

11       A    Yeah.

12       Q    Okay.  What has she said?

13       A    I can't remember, but I know she's been

14   complaining about it.

15       Q    What did she complain about?

16       A    About the -- about everything was paid for.

17       Q    She said she paid for everything?

18       A    Yes, sir.

19       Q    Do you of your own knowledge know whether she

20   paid for everything or not?

21       A    Yes, sir.

22       Q    You do know that?

23       A    No, sir -- well, I don't know that.

24       Q    Do you know, looking back in, say, September,

25   October, November, in the three months before your

Electronically signed by Teri Sampson (401-251-957-7637)                    5b64116c-ca0c-48f9-b3ff-2de0a6b84073

VICTOR GOODE - 6/27/2017

Page 34

1  payments that were supposed to be made were made?

2      A    I don't know.

3      Q    Have you ever discussed any of the matters

4  about insurance with either your mother or your sister

5  LaToya?

6      A    No, sir.

7      Q    Okay.  And you've never had any communications

8  with anybody from State Farm or from the Brenda

9  Spearman agency?

10     A    No, sir.

11     Q    Now, the questions we just went over, did you

12 understand those?

13     A    Yes, sir.

14     Q    Because earlier I think you indicated you were

15 a little bit confused.  Have I been able to explain the

16 questions to you so that you did understand them?

17     A    Yes, sir.

18     Q    Okay.  All right, I don't have any other

19 questions.  Thank you.  This gentleman probably is

20 going to ask you some questions.

21     A    Yes, sir.

22     Q    And if you don't understand his questions, you

23 need to tell him.

24     A    Yes, sir.

25          MR. MCANGUS:  Please do.

Electronically signed by Teri Sampson (401-251-957-7637)                    5b64116c-ca0c-48f9-b3ff-2de0a6b84073

# STEPHANIE GOODE DEPOSITION EXCERPTS

# Deposition of:

# STEPHANIE GOODE

## MAGIE WORTHY
## vs.
## STATE FARM, ET AL.

## CASE NO.  2016-CP-44-384

## June 27, 2017



## Magnolia Reporting

Magnolia Reporting
Phone: (843) 442-2753
Email: teri.sampson@gmail.com
Internet: www.MagnoliaReporting.com

STEPHANIE GOODE - 6/27/2017

Page 68

1   is that what you believe?

2        A    I don't believe it was cancelled at all.

3        Q    Okay.  And is the reason you believe it was

4   not cancelled at all is because you never received --

5   you say you never received the cancellation notice?

6        A    No, sir.  I believe I had insurance.

7        Q    Okay.  All right.  Do you know whether you

8   made all of the payments or LaToya made all of the

9   payments to keep the policy in place?

10       A    Yes.

11       Q    You think you did?

12       A    Yes.

13       Q    Now, Miss Worthy, who was the representative

14  of her daughter's estate, filed a lawsuit against

15  Victor; right?

16       A    I'm not sure.

17       Q    Do you know?

18       A    I'm not sure if it's -- who it's against.

19       Q    But you were never sued, were you?

20       A    I know there's a lawsuit.  I know there's a

21  lawsuit.  It's got my name and Victor's name down here.

22       Q    This is an assignment of claims.  Did Miss

23  Worthy ever sue you?

24       A    Not to my knowledge, no.

25       Q    She did file a lawsuit against Victor, didn't

Electronically signed by Teri Sampson (401-251-957-7637)                    9ca7f228-421f-46e4-b8f6-1e15b61554a1

STEPHANIE GOODE - 6/27/2017

Page 69

1    she?

2       A    I can't recall.

3       Q    You don't know if she sued Victor or not?

4    Well, I can ask Victor.  But let me ask you this:  To

5    your knowledge, Miss Worthy never sued you, Stephanie

6    Goode?

7       A    No.  It would probably be Victor.

8       Q    And do you know whether there was a judgment

9    entered in Union County against Victor?

10      A    No, sir, I don't know.

11      Q    I would have to ask Victor that?

12      A    He probably wouldn't know, either.

13      Q    Did Robert Frost also represent Victor

14   Goode --

15      A    Yes.

16      Q    -- in this assignment of claims?

17      A    Yes.

18      Q    But there's no judgment against you that you

19   know of, is there?

20      A    Not that I know of, no, sir.

21      Q    Okay.  All right.  As a result of not having

22   insurance, State Farm takes the position you didn't

23   have any insurance, what damages did you sustain?

24      A    Meaning?  Could you explain it?

25      Q    Okay.  You weren't sued, right, as far as you

Electronically signed by Teri Sampson (401-251-957-7637)                    9ca7f228-421f-46e4-b8f6-1e15b61554a1

STEPHANIE GOODE - 6/27/2017

Page 70

1    know?

2        A    As far as I know.

3        Q    And as far as you know, there's no judgment

4    against you, right, for this accident?

5        A    No.

6        Q    Okay.  Well, did you sustain any damages,

7    then, as a result of not having insurance, so State

8    Farm believes?

9        A    I'm not understanding what you're asking me.

10       Q    Okay.  Can you point to me any damages you

11   have sustained as a result of State Farm's denial of

12   insurance for your son's accident?

13       A    As far as myself?

14       Q    Yeah.

15       A    I went through depression and stuff like that

16   as far as a lot of stuff behind us.  Is that what he's

17   asking me?

18       Q    Okay.  Any kind of damages at all?

19       A    No, no.

20       Q    Okay.  I mean, can you point to any, say,

21   economic damages that you sustained because State Farm

22   denied coverage?

23       A    No, sir.  I'm not understanding what you're

24   asking me.

25       Q    Okay.

Electronically signed by Teri Sampson (401-251-957-7637)                    9ca7f228-421f-46e4-b8f6-1e15b61554a1

STEPHANIE GOODE - 6/27/2017

Page 73

1      Q      So you got nothing for that; right?

2      A      No.

3      Q      Okay.  If you look at the next page, is that

4   Victor's signature on page 4?

5      A      Yes, sir.

6      Q      And you and he were in Mr. Frost's office,

7   signing this document at the same time?

8      A      Yes, sir.

9      Q      Did -- now, I think, going back a little bit,

10   you've never met Brenda Spearman and talked to her,

11   have you?

12      A      No, sir.

13      Q      Has she ever made any false representation to

14   you?

15      A      Not to my knowledge.

16      Q      Did Karen ever make any false representation

17   to you?

18      A      Meaning?  When you say false representation --

19      Q      Tell you something that's untrue.

20      A      Other than me not having insurance?

21      Q      Did Karen tell you that?

22      A      No, sir.  I'm just saying as far as State Farm

23   in general.

24      Q      I'm talking about Brenda Spearman or anybody

25   in her agency.  Did Brenda Spearman ever make a false

Electronically signed by Teri Sampson (401-251-957-7637)                    9ca7f228-421f-46e4-b8f6-1e15b61554a1

STEPHANIE GOODE - 6/27/2017

Page 74

1    representation to you?

2        A    No.

3        Q    Did anybody in her agency make a false

4    representation to you?

5        A    No.

6        Q    Do you recall any information Miss Spearman or

7    anybody at her office ever gave to you?

8        A    No.

9        Q    Did she ever -- did Brenda Spearman or anybody

10   at her office ever tell you that the policy was in

11   force as of the date of Victor's accident?

12       A    No.

13       Q    Well, let me mark as Exhibit 13 a page from

14   Miss Worthy's complaint.  It's page 8.

15            (EXCERPT FROM WORTHY COMPLAINT MARKED

16            DEFENDANT'S EXHIBIT NO. 13 FOR I.D.)

17   BY MR. NORRIS:

18       Q    I'm looking at paragraph 30 of Miss Worthy's

19   complaint, in paragraph 30 at the top, and this is

20   Exhibit 13 now, and it says that "Brenda Spearman made

21   a false representation to Stephanie Goode that her

22   policy was in force and effect as of December 12th,

23   2014."  Did Brenda Spearman or anybody at her office

24   ever tell you that?

25       A    I can't recall.

MAGNOLIA REPORTING   (843) 442-2753
www.MagnoliaReporting.com

Electronically signed by Teri Sampson (401-251-957-7637)                    9ca7f228-421f-46e4-b8f6-1e15b61554a1

STEPHANIE GOODE - 6/27/2017

Page 76

1    A    Yes, that's correct.

2    Q    But what I'm talking about is, this paragraph

3    30 in Miss Worthy's complaint is talking about the

4    State Farm agent Brenda Spearman.  I'm asking you

5    whether Brenda Spearman ever told you anything that was

6    false?

7    A    No.

8    Q    Are you sure about that?

9    A    You're talking about me speaking to Brenda

10   personally?

11   Q    Yes.

12   A    I haven't spoke to Brenda.

13   Q    Well, did anybody in her office ever tell you

14   anything that was false?

15   A    Not that I can recall.

16   Q    Well, see, that's the reason I don't -- if you

17   look down at paragraph 33 of this complaint, it says,

18   "Stephanie Goode relied on Spearman's representation

19   that the policy was in force and effect as of December

20   12th, 2014."  Miss Goode, I don't understand that

21   because what you're telling me is that Brenda Spearman

22   never told you the policy was in force and effect.  Did

23   she?

24   A    In my eyes, I had insurance.  As far as me

25   speaking to Brenda Spearman, I hadn't spoke to Brenda

Electronically signed by Teri Sampson (401-251-957-7637)                    9ca7f228-421f-46e4-b8f6-1e15b61554a1

STEPHANIE GOODE - 6/27/2017

Page 83

1    with TD Ameritrade, or potentially your bank?

2        A    Yes.

3        Q    And you would make those payments by you would

4    call in and give them the authority to draft money out

5    of either yours or LaToya's bank account; is that

6    correct?

7        A    That's correct.

8        Q    And on one of the exhibits that you were

9    showed earlier, I believe it's Exhibit 4, the bank

10   exhibit, could you pull that out for me, please?

11           MR. NORRIS:  Exhibit 4?

12           MR. MCANGUS:  Yes.

13   BY MR. MCANGUS:

14       Q    Defendant's Exhibit 4, on the third page of

15   this, does that bank statement indicate that on

16   November 24th a debit card purchase was made to State

17   Farm in the amount of $535.00?

18       A    Yes, sir.

19       Q    Now, given what you've testified to about that

20   it was your habit and practice to call in to the

21   insurance agents and give them authority to make -- to

22   draft from your account, do you believe that on

23   November 24th, you would have -- you or LaToya would

24   have called and given them the authority to draft that

25   money from your bank?

MAGNOLIA REPORTING   (843) 442-2753
www.MagnoliaReporting.com

STEPHANIE GOODE - 6/27/2017

Page 84

1       A       Yes, sir.

2       Q       So based on your habit and practice, it's your

3    belief that that November 24th was the last date you

4    made a payment to State Farm before this wreck;

5    correct?

6       A       Yes, sir.

7       Q       One of the reasons you buy insurance, number

8    one, you have to.  You've got to have insurance to

9    drive a car; right?

10      A       Yes, sir.

11      Q       You also get a few things out of it.  Other

12   than just being legal to drive, one of the things you

13   get is, if you were in a wreck or someone you allow to

14   drive your car is in a wreck, you have a certain amount

15   of insurance coverage to pay the victims of that wreck;

16   correct?

17      A       That's correct.

18      Q       And your policy had $25,000.00 in coverage;

19   right?

20      A       Yes.

21      Q       One of the other benefits you get from having

22   a policy of insurance is if you or someone you let

23   drive your car causes a wreck, and then they're later

24   sued for money damages, you understand that State Farm

25   also has to provide an attorney to defend you in that

MAGNOLIA REPORTING  (843) 442-2753
www.MagnoliaReporting.com

# Nelson
# Mullins

FILED FOR RECORD·

**Nelson Mullins Riley & Scarborough LLP** 2017 SEP 11  PM 12 18
Attorneys and Counselors at Law
151 Meeting Street / Sixth Floor / Charleston, SC 29401-2239 CLERK OF COURT
Tel: 843.853.5200  Fax: 843.720.4352                        UNION, SC
www.nelsonmullins.com

Charles R. Norris
Tel: 843.720.4303
Fax: 843.720.4352
charles.norris@nelsonmullins.com

September 7, 2017

The Honorable June Miller
Union County Clerk of Court
210 West Main Street
Union, SC 29379

RE:    Magie Worthy, as Personal Representative of the Estate of Tara Shavone
       Worthy, and as Assignee of Victor Goode and Stephanie Goode v. State Farm
       Fire and Casualty Company and Brenda Spearman
       Civil Action No. 2016-CP-44-0384
       Corporate File No. 2016-19779-SC
       Our File No. 00500/03456

Dear Ms. Miller:

Please find enclosed for filing the original and one (1) copy of the Defendants' Memorandum in
Support of Motion for Summary Judgment in the above-referenced matter. We would appreciate
your filing the original and returning the clocked-in copy to our office via the self-addressed,
postage paid envelope provided. Please do not hesitate to contact me should you have any
questions or concerns.

By copy of this letter to counsel for the Plaintiff we are serving him with a copy of the
Memorandum in Support of Motion for Summary Judgment.

Very truly yours,

*CR. N*

Charles R. Norris

CRN:ghamill
Enclosure

cc:    W. Hugh McAngus, Jr. (*via e-mail w/ enclosure*)

*With offices in the District of Columbia, Florida, Georgia, Massachusetts, New York, North Carolina, South Carolina, Tennessee and West Virginia*

**FORM 4**

STATE OF SOUTH CAROLINA
COUNTY OF UNION
IN THE COURT OF COMMON PLEAS

JUDGMENT IN A CIVIL CASE
CASE NUMBER  2016CP4400384

| Magie Worthy As Pr Stephanie Goode | Tara Shavone Worthy Estate of Victor Goode | State Farm Fire And Casualty Company | Brenda Spearman |
|---|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Submitted by: | Attorney for: ☐ Plaintiff   ☐ Defendant<br>☐ Self-Represented Litigant |

## DISPOSITION TYPE (CHECK ONE)

☐ **JURY VERDICT.** This action came before the court for a trial by jury. The issues have been tried and a verdict rendered.

☐ **DECISION BY THE COURT.** This action came to trial or hearing before the court. The issues have been tried or heard and a decision rendered. ☐ See Page 2 for additional information.

☐ **ACTION DISMISSED (*CHECK REASON*):**     ☐ Rule 12(b), SCRCP;     ☐ Rule 41(a), SCRCP (Vol. Nonsuit);
☐ Rule 43(k), SCRCP (Settled);     ☐ Other: _____

☐ **ACTION STRICKEN (*CHECK REASON*):**     ☐ Rule 40(j) SCRCP;     ☐ Bankruptcy;
☐ Binding arbitration, subject to right to restore to confirm, vacate or modify arbitration award;     ☐ Other: _____

☐ **STAYED DUE TO BANKRUPTCY**

☐ **DISPOSITION OF APPEAL TO THE CIRCUIT COURT (CHECK APPLICABLE BOX):**
☐ Affirmed;     ☐ Reversed;     ☐ Remanded;     ☐ Other: _____

NOTE: ATTORNEYS ARE RESPONSIBLE FOR NOTIFYING LOWER COURT, TRIBUNAL, OR ADMINISTRATIVE AGENCY OF THE CIRCUIT COURT RULING IN THIS APPEAL.

**IT IS ORDERED AND ADJUDGED:** ☐ See attached order; (formal order to follow) ☐ Statement of Judgment by the Court:

## ORDER INFORMATION

This order ☐ ends ☑ does not end the case.
Additional Information for the Clerk:  *Motion for Summary Judgment
is DENIED. There are genuine issues
of material fact.*

## INFORMATION FOR THE JUDGMENT INDEX

Complete this section below when the judgment affects title to real or personal property or if any amount should be enrolled. If there is no judgment information, indicate "N/A" in one of the boxes below.

| Judgment in Favor of (List name(s) below) | Judgment Against (List name(s) below) | Judgment Amount To be Enrolled (List amount(s) below) |
|---|---|---|
|  |  |  |
|  |  |  |

If applicable, describe the property, including tax map information and address, referenced in the order:

The judgment information above has been provided by the submitting party. Disputes concerning the amounts contained in this form may be addressed by way of motion pursuant to the SC Rules of Civil Procedure. Amounts to be computed such as interest or additional taxable costs not available at the time the form and final order are submitted to the judge may be provided to the clerk.
**Note: Title abstractors and researchers should refer to the official court order for judgment details.**
**E-Filing Note: In E-Filing counties, the Court will electronically sign this form using a separate electronic signature page.**

CPFORM4Cm
SCCA SCRCP Form 4C  (Revised 2/17)

Circuit Court Judge

2168
Judge Code

9/18/17
Date

## For Clerk of Court Office Use Only

This judgment was entered on ___18th___ day of September, 2017, and a copy mailed first class or placed in the appropriate attorney's box on ___19th___ day of September, 2017, to attorneys of record or to parties (when appearing pro se) as follows:

**William Hugh McAngus Jr.** PO Box 12330 Suite 300 Columbia, SC 29211

**Charles R. Norris** PO Box 1806 Charleston, SC 29402

**ATTORNEY(S) FOR THE PLAINTIFF(S)**

**ATTORNEY(S) FOR THE DEFENDANT(S)**

Court Reporter  Wanda Nelson

Melanie L. Lawson - Clerk of Court

Court Reporter:

**E-Filing Note: In E-Filing counties, the date of Entry of Judgment is the same date as reflected on the Electronic File Stamp and the clerk's entering of the date of judgment above is not required in those counties. The clerk will mail a copy of the judgement to parties who are not E-Filers or who are appearing pro se. See Rule 77(d), SCRCP.**

## ADDITIONAL INFORMATION REGARDING DECISION BY THE COURT AS REFERENCED ON PAGE 1.

This action came to trial or hearing before the court. The issues have been tried or heard and a decision rendered.

CPFORM4Cm
SCCA SCRCP Form 4C (Revised 2/17)